UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION


UNITED STATES OF AMERICA,          )
                                   )
                 Government,       )
                                   )
VS.                                ) Cause:    2:13cr84
                                   )
DANIEL THOMAS ECKSTROM  ,          )
                                   )
                 Defendant.        )


        The PLEA HEARING in the above-entitled matter was commenced before Honorable  Philip P. Simon,  Chief Judge of said court,  at the Federal Building, 5400 Federal Plaza, Hammond, Indiana, on the      10TH of January, 2014 commencing at the hour of  1:10 o'clock  in the afternoon.


Sharon Boleck Mroz, CSR, RPR, CPE
Official Court Reporter
US District Court
Northern District of Indiana
Hammond Division
5400 Federal Plaza
Hammond, IN 46320
(219) 852-6728

Appearances:

Mr. Josh Kolar
Office of the United States Attorney
5400 Federal Plaza, Ste 1500
Hammond, IN 46320

On behalf of the Government;

Mr. Paul Jeffrey Schlesinger
8396 Mississippi Street Suite G
Merrillville, IN 46410

On behalf of the Defendant.

Defendant present in person.

Sharon Boleck Mroz, CSR, RPR, CPE
5400 Federal Plaza, Suite 4400
Hammond, IN 46320 (219) 852-6728

INDEX

Daniel Thomas Eckstrom

Court ----------------------------------6

EXHIBITS

(NONE)

THE CLERK: All rise.

THE COURT: You may be seated. Good afternoon everyone.

We are on the record in United States versus Daniel Eckstrom, 2:13 CR 84.

We're here for a plea hearing in the case.

Mr. Eckstrom is present with his lawyer, Jeff Schlesinger.

And Josh Kolar is here for the Government.

Thanks for filling in, Mr. Kolar. Thanks for being available, Mr. Schlesinger, under these circumstances.

So, all right.

Mr. Eckstrom, my name is Phil Simon. I'm the judge that's been assigned to your case. And I received a filing from Mr. Schlesinger that was essentially a petition to enter a change of plea, which indicated that it was your intention to plead guilty to all of the counts of the indictment in this case.

Is that what you're here to do today?

THE DEFENDANT: Yes, sir.

THE COURT: Okay.

Before we proceed with the hearing, I'm going to need to swear you in. So, I need you to stand up and raise your right hand, and this lady right here is going to swear you in.

DANIEL THOMAS ECKSTROM

Being first duly sworn to testify the truth, the whole truth, and nothing but the truth, was examined and testified as follows:

EXAMINATION BY:

THE COURT:

Q    All right.  You can be seated.  I need you to speak up so everybody in the courtroom can hear you --

A    Okay.  Sorry.

Q    All right.

Sir, do you understand that you are now under oath, and if you answer any of my questions falsely, your answers could later be used against you in another prosecution for perjury or making a false statement.

Do you understand that?

A    Yes, I understand.

Q    Okay.  Please state your full name for the record?

A    My name is Daniel Thomas Eckstrom.

Q    How old are you, sir?

A    I'm 31.

Q    How far did you go in school?

A    I got a GED.

Q    I take it you can read, write and understand the English language --

A    Yes.

Q    -- is that true?

A      Yes.

Q      Are you a United States citizen?

A      Yes, sir.

Q      Have you been treated recently for any mental illness or addiction to narcotic drugs of any kind?

A      No. I am on antidepressants, but that's --

Q      What kind of antidepressant do you take?

A      It's called Celexa.

Q      Okay. Does that -- is that kind of a mood stabilizer?

A      I'm -- I suppose so. Something -- something like that, yeah. It keeps me from -- from getting depressed, I guess, yeah.

Q      Fair enough.

Let me put it to you this way.

One of the things that I have to make sure of for purposes of this hearing is that you're clear headed?

A      Right, right. No --

Q      We can't talk over one another --

A      Okay.

Q      -- because she's taking this all down.

A      Okay.

Q      Let me finish the question.

One of the things I have to make sure is that you're clear headed such that you understand what we're doing here today. And so let me just ask you, does that medicine that you take, does it in any way interfere with your cognitive abilities, your ability

to understand what's going on around you?

A     No, sir.

Q     Okay.

Let me ask you this.

Have you and Mr. Schlesinger been able to have meaningful exchanges about your case in any way?

A     Yes.

THE COURT:  Is that true, Mr. Schlesinger?

MR. SCHLESINGER:  Yes, your Honor.

THE COURT:  All right.

Q     Let me ask you this.  Mr. Eckstrom, have you received a copy of the indictment that's pending against you.  That's the written statement of the charges that have been leveled against you.

Have you received that?

A     Yes, I have.

Q     And have you had an opportunity to fully discuss the charges that are in that indictment and the case generally with Mr. Schlesinger?

A     Yes, I have.

Q     Are you fully satisfied with the advice  and the representation and the counsel  that you've received from him in this case?

A     Yes, I am.

Q     All right.  Now, you told me a couple minutes ago that we are here today because you want to plead guilty  to the nine counts of the indictment  that are pending against you.

Is that true?

A    That's true.

Q    All right.  Let me ask you this.

Have -- has anybody made any promise to you or representation to you or done -- said anything to you as an inducement to get you to plead guilty?

A    No, sir.

Q    Has the Government in any way made any promises to you whether it be in writing or orally that have caused you to come here today and want to plead guilty?

A    No.

Q    All right.

THE COURT:  Is that true, Mr. Kolar, has there been any plea offers made to this Defendant in this case?

MR. KOLAR: My understanding based on conversations with AUSA Koster is that I believe some please were extended but none were accepted, so there are absolutely no promises at this point.

THE COURT:  Is that true, Mr. Schlesinger?

MR. SCHLESINGER:   Yes, your honor.

I'm not sure if they were rejected or may have been modified after it was extended, but in any event it was rejected.

THE COURT: Okay.

Q    So, let me ask you.  Has anyone including your own lawyer, any lawyer for the Government, any Government agent or anybody else made any promise to you at all in an effort to get you to plead

guilty?

A    No.

Q    Has anybody in any way tried to force you or to coerce you into pleading guilty?

A    No.

Q    Are you pleading guilty of your own free will because you are, in fact, guilty?

A    That I am.

Q    Do you understand that these are all felony offenses that you're pleading guilty to?

A    I understand.

Q    And that when you're found guilty of a felony, that means that you may lose valuable civil rights such as the right to vote, the right to hold public office, the right to serve on a jury, and the right to possess any kind of firearm. You may be giving those rights up.

        Do you understand that, sir?

A    Yes, I fully understand that.

Q    Now, under the Sentencing Reform Act, the United States Sentencing Commission has issued a set of rules that are known as Sentencing Guidelines.

        And they are -- the guidelines are there to assist judges in determining the appropriate sentence in any given criminal case. Do you understand that?

A    Yes, sir.

Q     Have you and Mr. Schlesinger talked about how the sentencing guidelines might apply to your case?

A     Yes, we have.

Q     And did he run through those guidelines with you to try to come up with some estimates as to where your case might fall under those guidelines?

A     Yes.

Q     Okay.  Now, I'm not going to be able to know precisely what the guideline range will be for your case until after a presentence report has been completed by somebody from the United States Probation Department.

And what will happen is they are going to sit down with you, and you'll have to be interviewed.  And Mr. Schlesinger can be present during the interview if you'd like him to be.

And they will -- the Probation Department will then conduct its own independent investigation.  And it will then put together a presentence report.

And in that presentence report, it will make findings as to what the Probation Department believes the appropriate guideline range should be in this case.

Do you understand all that?

A     Yeah, okay.  I understand.

Q     All right.  So, what I want you to understand then is that as we sit here today, no one really knows exactly what the guidelines are going to be, or how they are going to turn out to be computed.

And the sentence that's ultimately imposed upon you, it could be different than any estimate your lawyer may have given you.

Do you understand that?

A    Yes, I do.

Q    Okay.

Now, the Sentencing Guidelines are not mandatory. In other words, I'm certainly -- I certainly have to consult the sentencing guidelines when I decide what an appropriate sentence is, but I'm also free to disregard the guidelines if I think it's appropriate, and I can look to a whole host of other factors in deciding what I think an appropriate sentence will be.

And that's a long way of saying that I am free to disregard the guidelines and to give you a sentence that's either higher than what the guidelines call for or lower than what the guidelines call for.

Do you understand that?

A    Yes, I understand.

Q    So, if the sentence turns out to be more severe than you expect it to be, you're still -- do you understand you're still going to be bound by your plea, and you'll have no right to withdraw it?

A    I understand.

Q    All right. Has anyone made any promise to you at all as to precisely what your sentence will ultimately be?

A    No.

Q    All right.  One of the things I have to do is advise you of what your rights would be if this case were to go to trial.

So, let me say, do you understand you do have the right to plead not guilty to any offense charged against you and then to persist in that plea.

You would then have the right to a trial by jury.

At the trial you would be presumed innocent, and the Government would have to prove your guilt beyond a reasonable doubt.

The Government would -- you would have the right at the trial to see and to hear all of the witnesses against you, and to have them cross-examined in your defense.

You'd have the right to be defended and represented by a lawyer at the trial.

You'd have the right to the issuance of subpoenas in order to compel witnesses to come into Court to testify in your behalf.

You'd have the right to testify in your own defense, but you would also have the right to refuse to testify, and if you chose not to testify, or chose to put on no evidence at all in your defense, those facts could not be held against you.

Do you understand all those rights?

A    Yes, sir.

Q    Now, by entering a plea of guilty and if I accept the plea,

there's going to be no trial. And that means you will have waived or given up your rights to a trial as well as all the other rights associated with the trial that I just described to you.

Do you understand that?

A    Yes, sir. Yes, I do.

Q    All right.

I don't -- let me just ask you, Mr. Kolar, would you mind advising the Defendant what the maximum penalties are for each of the counts to which he is pleading guilty.

MR. KOLAR: Absolutely, Your Honor.

In the indictment, you are charging -- you are charged and pleading guilty to Counts 1 through 7 which are production of child pornography in violation of Title 18 United States Code Section 2251 A. There is a statutory mandatory minimum sentence of 15 years imprisonment, and up to a maximum of 30 years imprisonment.

Supervised release of five years to life and a fine of $250,000 for those violations.

Count 8 charges you with distribution of child pornography in violation of Title 18 United States Code, Section 2252 A 2. There is a statutory mandatory minimum sentence of five years and a maximum term of 20 years for that count.

Count 9 charges you with possession of child pornography in violation of Title 18 United States Code Section 2252 A 4. There is a maximum penalty of 10 years incarceration, five to --

five years to life of supervised release and a $250,000 fine for that count.

There is also a $100 special assessment for each count.

THE COURT: All right.

Q    Mr. Eckstrom, did you hear what counsel just said?

A    Yes, I did.

Q    And have you gone over those penalties with Mr. Schlesinger as well?

A    Yes, we have.

Q    All right. So, just to reiterate, you understand on Counts 1 through 7, there is a 15 year mandatory minimum.

In other words, that's the -- that's the lowest sentence that you can receive on each of the Counts 1 through 7, and there is a maximum term of imprisonment of 30 years on each of those counts.

Do you understand that?

A    I understand that.

Q    And you're also facing a term of supervised release of five years to life -- life term of supervised release on each of those Counts 1 through 7.

Do you fully understand that?

A    Yes, I do.

Q    All right. On Count 8, you face a mandatory minimum term of imprisonment of five years. In other words, you can't receive anything less than five years on Count 8.

And there is a maximum sentence of 20 years on Count 8. The terms of the supervised release are also five years to life.

You face a maximum fine of $250,000. That's for Count 8.

Do you understand that, sir?

A     Yes, sir.

Q     And finally, on 9, that's the possession of child pornography, you face a maximum term of imprisonment of ten years; a five to life term of supervised release; and a fine maximum of 250,000.

And on all of the counts you have to pay a $100 special assessment.

So, those are the maximum penalties on count 9. Do you fully understand that?

A     Yes, I do.

MR. SCHLESINGER:   Your Honor, if I may because I'm not sure of this myself.

Because the guideline range I don't know that we concerned ourselves with the statutory minimums too much, but do the minimums on counts 1 through 7 -- are they mandatorily consecutive.

THE COURT: I don't know the answer to that. And that's frankly one of the questions that I have as well. I really don't know the answer to that.

MR. SCHLESINGER:   Okay. I was acting under the assumption they were, but obviously not.

THE COURT:   I presume that that was the case, but I don't

know the answer and I'm little, frankly, uncomfortable just guessing on it.

Mr. Kolar, do you happen to know an answer to that?

MR. KOLAR: Your Honor, I've been looking at the code. I'm going to -- and I apologize, we were dealing with victim notification issues until slightly before the hearing. If you can give me one moment --

THE COURT: Sure.

MR. KOLAR: Your Honor, my reading of 18 USC 2251 E, any individual who violates or attempts or conspires to violation this section shall be fined under this title and imprisoned not less than 15 years nor more than 30 years.

But if such person has one prior conviction -- and it goes on to list additional --

I would believe it wouldn't be consecutive. If you look to 924 C, it doesn't use the term prior conviction in 924 C to make those, in fact, consecutive sentences.

If you'd like I could take a quick break and consult with a colleague who prosecutes these cases more often than I do. I believe they are not consecutive based on my admittedly rather quick reading of the statute and comparing that to how we know Congress has drafted 924 C to be consecutive.

However, I had not had a chance to read --

THE COURT: Do you think you would be able to do that, say, in the next half hour.

MR. KOLAR: I think I could probably do it in five minutes, your Honor,

THE COURT: Would you prefer we get that answered, Mr. Schlesinger?

MR. SCHLESINGER: Yes.

THE COURT: I certainly would.

MR. SCHLESINGER: I had looked at it earlier and just for the record, it's my understanding Mr. Eckstrom has no prior convictions either. So, it was my understanding -- right, but we kind of glossed over that in my earlier discussions.

And I'd also be curious about Counts 8 and 9 too. I don't believe they are, but --

MR. KOLAR: And, your Honor, I was speaking with Miss Koster right before this for a long period of time including right before I walked in here regarding victim notification issues, so I believe she's available on her cell phone and I can just confirm that.

THE COURT: I'm sorry to have done this to you. We did it because the Defendant happened to be here, and I didn't want to put the marshals through having --

MR. KOLAR: Judge, no problem at all. It's our job. And I was just -- I only mention that because I was -- since I was talking to Jill two minutes ago, I think she is still on her phone. I think I can get this answered very quickly.

THE COURT: I would prefer you get this answered so we

can make sure we are advising the Defendant appropriately because I -- you know, in 924 C, if you get convicted twice, they stack them. I don't know if this statute has been read the same way. And it's obviously an important consideration in -- for purposes of advising the Defendant.

So, why don't you just see what you can find out and then just report to Noel when you're ready.

MR. KOLAR: Very well, your Honor.

THE COURT: Thanks, appreciate it.

(Short recess.)

THE CLERK: All rise.

THE COURT: All right. You can be seated.

All right, Mr. Kolar.

MR. KOLAR: Your Honor, I appreciate that.

THE COURT: Thank you.

MR. KOLAR: Miss Koster has confirmed that none of these are mandatory consecutive. Obviously in the discretion of the Court they could be. I certainly think that based on the difference between how this statute is written and 924 C is written Miss Koster is more familiar with these types of cases, so, I appreciate the Court's indulgence there.

She has informed me that in her experience and based on her previous research, that none of these would be mandatory consecutive. None of the nine counts would be mandatory consecutive.

THE COURT: Okay.

Q    So, just to reiterate then, Mr. Eckstrom.  So, we've gone over what the mandatory minimum term of imprisonment is for Counts 1 through 7.  That's 15 years for each count, and the maximum sentence of 30 years on each count.

And we have gone over the maximum terms of supervised release.  That's five to life term of supervised release on Counts 1 through 7.

Do you understand all that?

A    Yes, I understand.

Q    Okay.  And then just to reiterate, Count 8.  This is a mandatory minimum of 5 years, a maximum term of imprisonment of 20. Same terms of supervised release apply, five years to life; fine of $250,000.  Do you understand that?

A    Yes, I do.

Q    And finally on count 9, it's the possession of child pornography.  It's a maximum term of imprisonment of 10 years, five to life for terms of supervised release, and a $250,000 fine.

Do you understand that?

A    Yes, sir.

Q    All right.  So, let's talk about each of these counts to which you're about to plead guilty to.

Counts 1 through 7 charge you with the crime of production of child pornography.  That's in violation of Title 18, United States Code Section  2251 A.

You understand that?

A    Yes, sir.

Q    All right. Now, the essential elements of that crime, in other words, if this case did go to trial, what would the Government have to prove in order for you to be found guilty.

They'd have to prove the following propositions.

First, that at the time identified in each count of the indictment, the person identified in each count was, in fact, under the age of 18.

So, for example in Count 1, there is an individual by the -- who has the initials C P, and so, it would have to be proven that that individual was under the age of 18.

Second, that for the purpose of producing a visual depiction of such conduct, you employed, used, persuaded, coerced that individual to take part in sexually explicit conduct, or that you had that person who's identified in the indictment assist any other person to engage in sexually explicit conduct.

And three, that you knew that -- or had reason to know that the visual depiction that was produced would be transported in interstate or foreign commerce.

That's what the Government would have to prove on Counts 1 through 7 of the indictment in this case.

Do you fully understand that?

A    Yes, sir.

Q    All right. Now, for Count 8, that's the count of distribution

of child pornography, the Government would have to prove the following propositions in order for you to be found guilty.

The Government would have to prove first, that you knowingly distributed;

Second, by means of interstate or foreign commerce;

Three, a visual depiction of an actual minor, somebody under the age of 18;

Four, who was engaged in sexually explicit conduct.

That's what the Government would have to prove on Count 8, the distribution charge in order for you to be found guilty.

Do you understand that?

A    Yes, sir.

Q    All right.  Finally, for Count 9, that's the possession of child pornography count, the Government would have to prove that:

One, you knowingly possessed;

Two, one or more matters that contained visual depictions;

Three, that those depictions had been transported in interstate or foreign commerce;

And four, that the vision depictions involved an actual minor under the age of 18 who was engaged in sexually explicit conduct.

That's the four things the Government would have to prove on the possession count in Count 9.

Do you understand that?

A    Yes.

Q    All right.  Do you now fully understand these charges that you are about to enter a plea of guilty to?

A    Yes.

Q    All right.

THE COURT:  I don't know the best way to proceed here, Mr. Schlesinger, but would it be best if you would just question your client to establish a factual basis for these offenses.

MR. SCHLESINGER:  I think it might, your Honor.

Obviously, with the assistance of the Court, perhaps Mr. Kolar -- and the other thing I -- in discussing with him this morning, we had discussed the identity of the individuals, and I think we should probably not do that on the record.

THE COURT:  I wish that you wouldn't.

MR. SCHLESINGER:  So, I think it would be easier if I asked him questions then.

THE COURT:  Sure.

EXAMINATION BY :

MR. SCHLESINGER:

Q    Your name is Daniel Eckstrom?

A    Yes.

Q    You and I have gone over this indictment on individual counts?

A    Yes, we have.

Q    Okay. Now in the first count there is an individual identified as Jane Doe One.  And you're aware of who that is, correct?

Sharon Boleck Mroz, CSR, RPR, CPE
5400 Federal Plaza, Suite 4400
Hammond, IN  46320 (219) 852-6728

Don't say the name, but --

A    Yes, I am aware.

Q    Okay.  And during the year 2009 between January and December 31, did you -- did you use, persuade, induce, entice or coerce her to engage in sexually explicit conduct?

A    Yes, I did.

Q    And you are aware of Jane Doe's age during that time?

A    Yes.

Q    And how -- what is Jane Doe's Number One's birth date?

A    Sorry.  December --

MR. KOLAR:  Your Honor, if possible can we go just to the birth year.

MR. SCHLESINGER :

Q    Okay.  Birth Year.

A    2000.

Q    2000 is the birth year?

A    2000.

Q    And you were aware of what you were doing when you did that?

A    Yes.

MR. SCHLESINGER:  Is that sufficient for the court for Count 1?

THE COURT:  I'll have Mr. Kolar put some detail into it, but --

MR. SCHLESINGER:  That's fine.

I wanted to make sure I hit the elements.

MR. SCHLESINGER:

Q    And now, Count 2 again involves Jane Doe One, the same individual as Count 1, that's your understanding?

A    Yes.

Q    And during the year 2010, did you employ, use, persuade, induce, entice or coerce her to engage in sexually explicit conduct?

A    Yes.

Q    And she would have been nine or ten years old that year, nine to ten years old, is that correct?

A    Yes.

Q    And you were aware of what you were doing when you did it?

A    Yes.

Q    Also, I'm sorry, for both those counts you were using a digital camera?

A    That's true.

Q    Okay. And you have reason to believe that that camera had traveled in interstate commerce prior to your using it; had not been manufactured in Indiana and probably shipped to Indiana?

A    Yes.

Q    You believe that to be true?

A    Yeah. Yes.

Q    Count 3 involves the same victim, Jane Doe One. Is that your understanding?

A    Yes.

Q    And Count 3 deals with the year 2011?

A    Yes.

Q    Okay.  And during that year, did you employ, use, persuade induce, entice or coerce her to engage in sexually explicit conduct?

A    Yes.

Q    And the reason for -- and again the reason for all three counts for coercing her or persuading her to engage in the conduct was to produce visual images of the conduct or visual depiction. You were aware there was a camera, and you were using a camera to photograph?

A    Yes, I was aware.

Q    And again that camera to your knowledge had been transported from somewhere outside the State of Indiana to Indiana prior to your using it?

A    Correct.

Q    And during the year 2011, Jane Doe would have been 10 to 11 years old?

A    Yes.

Q    Count 4 again involves the same victim Jane Doe One, and that refers to the year 2012.

During the year 2012, did you employ, use, persuade induce, entice or coerce the same person to engage in sexually explicit conduct?

A    Yes.

Q    And Jane Doe One would have been 11 to 12 years old during 2012?

A    Yes.

Q    And was that -- was the reason for persuading her to engage in sexually explicit conduct to produce visual depictions of the conduct?

A    Yes.

Q    And again you used a camera that you believe had been transported in interstate commerce prior to your use of the camera, correct?

A    Correct.

Q    Now, Count 5 deals with the same victim Jane Doe One, but there is only one date on that, February 9, 2013.

        And, although, you may not remember the specific date, at some time during the year 2013, did you persuade Jane Doe One to engage, employ, use, produce -- I'm sorry, persuade, induce, entice or coerce her to engage in sexually explicit conduct?

A    Yes.

Q    Okay. In February of 2013, she would have been 12 years old?

A    Yes.

Q    Okay. And although you may not remember the specific date, you would have no reason to dispute the fact that there was another depiction in February of 2013.

        And the purpose for doing that was to produce a visual depiction of the conduct?

A    Yes.

Q    And again you produced that using a camera that you believe had been transported in interstate commerce prior to your use of that?

A    That's true.

Q    Now, Count 6 involves a person identified as Jane Doe Two, and you're aware, again without saying a name, you are aware of who Jane Doe Two is?

A    Yes, sir.

Q    And would she have -- to your knowledge was she 6 to 7 years old between -- in the year 2012?

A    Yes.

Q    And during that year, did you employ, use, persuade, induce or entice her to engage in sexually explicit conduct?

A    Yes.

Q    And was the purpose for that to produce a visual depiction of the conduct?

A    Yes.

Q    Again did you use a camera that you believe to have been transported in interstate commerce prior to that time?

A    Yes.

MR. SCHLESINGER:    Your Honor, I'm going to -- with the Court's permission, I am going to do 8 and 9.  I don't believe there is any issue about the facts.

7 there is a little bit, I'd rather take some time on

that.

THE COURT:  Sure.

MR. SCHLESINGER:

Q    Count 8 indicates that between January of 2009 and May of 2013 you knowingly distributed in interstate commerce visual depictions of actual minors under the age of 18 engaging in sexually explicit conduct?

A    Yes.

Q    Did you knowingly distribute images of actual minors during that period of time?

A    Yes, I did.

Q    And were those minors engaging in sexually explicit conduct?

A    Yes.

Q    And in fact, is that count based on the depictions that have been made in Counts 1 through 7?

A    Yes.

Q    Okay. Now, Count 9 is possession of child pornography. In May of 2013, did you knowingly possess one or more matters containing visual depictions which had been mailed, shipped or transported to you including by use of a computer where there were depictions involving the use of actual minors engaged in sexually explicit conduct?

A    Yes.

Q    And someone had sent you images of other minors engaging in conduct?

Sharon Boleck Mroz, CSR, RPR, CPE
5400 Federal Plaza, Suite 4400
Hammond, IN  46320 (219) 852-6728

A     Yes.

Q     Okay. Now, to go back to Count 7.  Count 7 involves an individual identified as Jane Doe Three?

A     Yes.

Q     That's a different individual from the Jane Doe One and Two, correct?

A     Correct.

Q     Okay.  And this -- Count 7 deals with 2012 and to your knowledge would Jane Doe Three have been 9 to 10 years old during that time?

        If you know?

A     I believe so, yes.

Q     Okay.  You don't know her specific age, but you -- she certainly was under the age of 18?

A     Correct.

Q     And she -- you believe she could have been 9 to 10?

A     Yes.

Q     Okay.  If the Government were to have the evidence that was her age, you would have no reason to dispute that?

A     Correct.

Q     Okay.  Now, Jane Doe Three, you had -- you had a cam -- some recording, visual recording device installed in your shower?

A     Yes.

Q     And Jane Doe Three was captured taking a shower on that, is that, correct?

A    Yes.

Q    Now, in that depiction, her genitals are not shown, is that correct?

A    That's correct.

Q    And we are talking about a female individual?

A    Yes.

Q    Okay.  And she had no breast development in that -- in that visual depiction?

A    No.

Q    You also took pictures of her sleeping, is that correct?

A    That's correct.

Q    And she was wearing pajamas during all the depictions?

A    Yes.

Q    Was she aware of the pictures you were taking?

A    No.

Q    And in fact, in one of those images, on the images are listed in count 7, the total is 7.  The video would be the shower video, correct?

A    Correct.

Q    I'm sorry, there is a video from -- two videos from another day and one video --

Now, in one of the still images, you do expose yourself, is that correct?

A    That's correct.

Q    Was Jane Doe Three aware that you were exposing yourself in

that?

A    No, she wasn't.

Q    In fact, she was asleep at that time?

A    She was.

        MR. SCHLESINGER:   And can I ask him a question off the record.

        THE COURT:   Sure, of course.

        (Conference between counsel and client, not within hearing).

        MR. SCHLESINGER:  I don't believe I have any other questions.  I had a concern about the factual basis for Count 7. Based on my reading the statute, my research, I had talked to Miss Koster about that regarding the attempt issue, and she indicated that the -- obviously attempt is included in the statute, but without any -- and the Government may have additional evidence. I don't know.  But without any indication that he had spoken to her or in some manner attempted to employ, use, persuade, induce, entice or coerce her, I don't believe that that would meet the statutory definition.

        We are not denying the conduct, but I guess legally, that's my concern.

        THE COURT: Okay.  All right.

        Here's what I'm going to do, Mr. Eckstrom.  I'm going to ask Mr. Kolar to give us a summary of the evidence from the Government's point of view.

I want you to listen to him very closely because when he's done I'm going to ask you if you agree or disagree with his version of the events. Okay.

THE DEFENDANT: Okay.

THE COURT: All right. Mr. Kolar.

MR. KOLAR: Your Honor, if it please the Court, I am going to cover Counts 1 through 7 in essentially one factual basis with some caveats regarding all of them at the end. I think it will just go a little bit quicker.

On May 23, 2013, a warrant was obtained to search the defendant's home. That's in Lake Station, Indiana. I will leave out the exact address, but --

THE COURT: Can I ask you slow down because she's having a hard time keeping up here.

MR. KOLAR: Sorry, Your Honor. Absolutely.

The -- among others present at the execution of the search warrant was the Defendant. During the process of executing the search warrant, law enforcement interviewed the Defendant.

Prior to the search warrant, law enforcement had found a number of images with the Defendant and juvenile Victim Number 1. Those -- there is actually 11 color prints that fell into the category of what the agents believe is child pornography.

The Defendant was interviewed during the search warrant. He admitted that he knowingly received child pornography over the Internet for several years. He said he was the only user of his

computer, and that it was password protected.

He claimed that he would be quote "into child pornography for a couple of weeks and then feel bad about doing it, would then erase it."

He explained that after he began downloading material, he discovered like minded individuals on the Internet.

He was at that point shown 11 color prints of child pornography depicting himself and juvenile Victim One.

He identified each picture as one that he had taken and admitted that he is the adult male in each of the photographs, and that Juvenile Victim One is the victim depicted.

He signed the back of each one of those to indicate he had reviewed those.

He indicated that juvenile Victim One was between 8 and 9 years old when the photographs were taken. At the time of the interview, as well, those photographs were available, the juvenile Victim Number One had reached the age of 12 years.

He admitted that he had sent pictures sexual views of juvenile Number One to other individuals over the Internet. He initially claimed that he had not abused or photographed anyone besides juvenile Victim Number One, however later in the interview, identified two other female minors who he photographed, one of whom he admitted to touching in a sexual manner.

He admitted that he looked at these two minor females when they were sleeping, and would masturbate while watching them.

He stated that he could see their genital region through loose pajamas.

He claimed that in one photograph he photographed himself touching the girl. He made it look like he was penetrating her vagina but actually did not. He said this child who was approximately eight years old at the time at some point asked him to stop doing what he was doing.

He described his relationship with Juvenile Number One. He stated that he regularly provided marijuana to Juvenile Number One. He said that he used the marijuana to lure Juvenile Number One into engaging in sexual conduct. And he indicated the marijuana was marijuana that he had grown, and that is quote "pretty strong" close quote.

And, Your Honor, for Count 1, Count 1 relates to images that are set forth in the indictment.

The Government would produce those images and would introduce the case agents who recovered them. Those images would show child pornography at the time that Jane Doe One was -- who I also referred as Juvenile Victim One -- was between eight and nine years old.

The Defendant intended to or did distribute those to other individuals through the Internet.

The same is -- and those relate to pictures taken between January 1 of 2009 and December 31 of 2009.

In addition to intending to or actually transmitting them

over the Internet, the Government has not identified that particular individual yet but would produce an expert who would say no digital cameras of the type that would take these pictures are made in the State of Indiana, and therefore that was transported in interstate commerce.

Count 2, everything what the Government said is -- of Count 1 is true except it's further listed images between 2010 -- in the year 2010 and Jane Doe One was between nine and ten years old at the time.

Count 3 again is the same as Count 1 except it's for the calendar year 2011 and Jane Doe One was between 10 and 11 years old at the time.

Count 4, again is everything the Government said about Count 1 is true except it's for images taken during calendar year 2012, and Jane Doe One was between 11 and 12 years old.

Count 5, the factual basis I believe is already laid, just a separate count.

Count 6 is relating to Jane Doe Number Two. This is for calendar year 2012.

And again for Count 6, the Government would produce images including images of exposed genitalia, and that is for calendar year 2012 with Jane Doe Number Two.

And Jane Doe Number Two at the time being between 6 and 7 years old. The exact date of the images -- or the approximate date of the images being what they are, listed on the indictment.

Count 7 relates to Jane Doe Number Three. That is for calendar year 2012. Jane Doe Number Three was between 9 and 10 years old, and it has pictures including pictures of the victim sleeping with the defendant's penis in the frame.

I believe for Counts 8 and 9, the factual basis has already been laid.

If your Honor will give me one second, I just want to check off -- oh, and to be clear, your Honor, the search warrant -- when the search warrant was executed, a computer was seized and images were found including but not limited to images discussed in the indictment.

THE COURT:

Q    Okay. Mr. Eckstrom, did you hear what Mr. Kolar just said?

A    Yes, I did.

Q    Do you agree or disagree with his version of the events?

A    No, I agree.

Q    Okay. One of the things I have to have advise you of that I neglected was the indictment in this case also includes what is known as a forfeiture allegation.

And what that means is the Government is attempting to seize property from you that it believes that was used in the commission of the offenses.

And the equipment that the Government is seeking forfeiture of is the computer and computer related equipment that was used in the -- in the commission of these offenses, any cameras

or electronic storage media devices.  The Government is seeking the forfeiture of all of those items, and they are subject to forfeiture.  Do you understand that?

A    Yes, I understand.

Q    Okay.  How then do you plead to the charges in Counts 1 through 9 of the indictment in this case, guilty or not guilty?

MR. SCHLESINGER:  Your Honor, before -- has the Court made a ruling on the factual basis?

THE COURT:  I'm going to get to that in a second.

THE COURT:

Q    Let me ask you this.

How do you plead as to the charge contained in Count 1 through 7, those are the production of child pornography, guilty or not guilty?

A    Guilty your Honor.

Q    How do you plead to Count 8, the distribution of child pornography?

A    Guilty.

Q    And how do you plead as it relates to count 9, that is the possession of child pornography?

A    Guilty.

THE COURT:  All right.  It is the finding of the Court in the case of the United States versus Daniel Eckstrom that the Defendant is fully competent and capable of entering an informed plea.  He is aware of the nature of the charges and the

consequences of the pleas. The pleas guilty are knowing and voluntary pleas supported by an independent basis in fact.

So, at this the point, I am going to accept the pleas of guilty to Counts 1 through 6, and Count 8 and 9. I am going to withhold judgment on accepting the plea of guilty as to Count 7 and I'm going to give both sides an opportunity to brief the issue as it relates to Count 7.

But for now, the pleas to Count 1 through 6 and Count 8 and 9 are accepted, and the Defendant is now adjudged guilty of those offenses.

He is not yet adjudged guilty as to Count 7.

As to that count, I do have some concern as to whether or not there is a factual basis based upon what the Defendant testified to here in court as to whether or not he employed, used or induced, enticed or coerced Jane Doe Number Three to engage in sexually explicit conduct.

It seems ambiguous to me based upon the factual basis, and so, I'm going to ask that the parties within 30 days submit a memorandum to me as to why the factual basis as stated here in court amounts to an admission as to each of the elements of the charge of production of child pornography as it relates to Jane Doe Number Three in Count 7.

You understand that?

MR. KOLAR: Absolutely, Your Honor, if I could ask one -- could the Government have leave to also supplement the factual

basis -- I -- we do not currently have, for instance, the actual images here. The case AUSA who may be more familiar may want to add some factual basis. Is that okay and appropriate to do in that filing?

THE COURT: Yeah, but unfortunately we're going to have to bring the Defendant back into Court to make sure that he agrees with that. That's part of the problem here.

If the evidence is that he secreted a camera in a shower and videoed this young girl, nine or ten year old girl, I believe it's a girl, that's what the evidence was, in Count 7, if he did that, whether that amounts to using her to engage in sexually explicit conduct, I just don't know.

And also, whether if the evidence is that she was sleeping and unbeknownst to her he was exposing himself in a photograph that he then took, whether that amounts to him employing her to engage in sexually explicit conduct, I just don't know.

It probably is, but I want to be sure on it.

So, I guess you can consult with your colleague. If you feel that you need to have a more robust factual basis, then I'll just set it for another hearing and I'll get the Defendant back in here, and he can either tell me he agrees or disagrees with your additional evidence.

Does that seem like a reasonable way to proceed?

MR. SCHLESINGER: That is fine, your Honor.

MR. KOLAR: Okay.

THE COURT: Yes. Okay. Why don't we do that.

I'm going to order the preparation of a presentence report to assist me in sentencing.

Mr. Eckstrom, you're going to be -- as I mentioned to you, you'll be asked to give information for the report, and Mr. Schlesinger can be present during the interview with probation if you would like him to be.

You and your attorney will be permitted to read the presentence report and then to file objections to the report before sentencing.

Also, you and your attorney will be given an opportunity to speak on your behalf at sentencing, so, you should be prepared to do that if you would like to.

So, I do refer this Defendant to probation for the preparation of a presentence report. I have a proposed sentencing date of April the 11th at 1:00 P.M.

Is that okay with you, Mr. Schlesinger?

MR. SCHLESINGER: I'll check in a moment, Your Honor. Sorry I'm still handwriting. April --

THE COURT: April 11, 2014 at 1:00 P.M.

MR. SCHLESINGER: That's fine.

THE COURT: All right. I assume that's okay, Mr. Kolar.

MR. KOLAR: Yes, sir.

THE COURT: All right. So that be the date and time of sentencing.

All right.

So, today is January the 7th. So, by February the 7th, if you all could just file your additional filings. If you want to respond to what the other side files, you're welcome to do that within 14 days after that, but I'm not sure that will be necessary.

But if you would like to have an opportunity to respond, I'll give you 14 days after receipt of the other side's submission.

All right. Anything else then we need to talk about, Mr. Kolar?

MR. KOLAR: No, Your Honor. Just very briefly for the record regarding the Crime Victims' Rights Act, all victims were notified of yesterday's court hearing through our automated process. Without going into too much detail, both numbers were contacted for the mother, juvenile Victim Number One.

This morning slightly before the hearing we had a number that works, so that person was spoken to and understands that the hearing was going forward.

Individual's -- parents of the other juvenile victims were notified by voicemails that were left on there phones slightly before the hearing as well.

So, the Government did contact those individuals.

THE COURT: All right. Thank you.

Just for the record, yesterday, just if somebody is reviewing this some time down the road, yesterday we had a colossal storm in the area, and the temperature was well below zero. And so

the courthouse was closed. That was Monday. And so, we held the hearing today, the first day that the court has been opened. And the Defendant was already present in the area, so, we set the hearing for today, and counsel was good enough to make themselves available to handle the hearing.

So, okay. Thank you. We will see you in April.

MR. SCHLESINGER: Your Honor, excuse me. Couple points I need to make.

THE COURT: Sure.

MR. SCHLESINGER: Just for the record so Miss Koster is clear, regarding the issue -- we had discussed the explicit sexual activity, and I think even having the hidden camera could possibly make the attempt on that, even though I don't believe there was sexual activity disclosed.

However, I think my concern right now is the attempting to persuade, induce, coerce her without her being aware of any of this going on.

So, that's the issue I'm more concerned about.

Also, probation -- just because there is no probation officer here, are they supposed to wait until the memos and the determination or should they start the presentence?

THE COURT: No. They can start the presentence process.

MR. SCHLESINGER: I didn't think so, but I wanted to clarify that in case we run into a problem.

THE COURT: They need to get going on Counts 1 through 6

and 8 and 9, and I'll have a ruling out to you, so they can then augment their report.

If it means we have to move the sentencing hearing back a little bit to accommodate that, then we will do that.

MR. SCHLESINGER: That's fine.

MR. KOLAR: Thank you, Judge.

THE COURT: Thanks guys.

MR. SCHLESINGER: Thank you.

(WHICH WERE ALL THE PROCEEDINGS HAD).

C E R T I F I C A T E

I, Sharon Boleck Mroz, being a duly authorized and acting official court reporter for the United States District Court, for the Northern District of Indiana, Hammond Division, do hereby Certify that I did report in machine shorthand the foregoing proceedings, and that my shorthand notes So taken at said time and place were reduced to typewriting under my personal direction.

I further certify that the foregoing typewritten transcript constitutes a true record of said proceedings, so ordered to be transcribed.

____S/ Sharon Boleck Mroz_____

Sharon Boleck Mroz

Official Court Reporter

Dated: JANUARY 15, 2014