UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | Case No. 2:13 CR 084 PPS |
| v. | ) | |
| | ) | |
| DANIEL THOMAS ECKSTROM | ) | |

**GOVERNMENT'S MEMORANDUM IN SUPPORT OF COUNT 7**

Comes now the United States of America, by David Capp, United States Attorney for the Northern District of Indiana, through Jill Rochelle Koster, Assistant United States Attorney, to provide, at the Court's request, *see* DE # 30, information and argument in support of Count 7 of the Indictment.   For the reasons explained below, the factual basis provided during the January 10, 2014 change of plea hearing, as amended herein, is sufficient to support Defendant's conviction for attempting to produce child pornography featuring Jane Doe 3, a minor female child between the ages of 9 and 10.

I.    **Background**

The investigation in this case began on May 23, 2013, when local HSI investigators received a call from an HSI agent in Utah explaining that an offender there had been found to possess material that appeared to have been

1

produced by an individual living in Lake Station, Indiana (later identified as Defendant).   The images depict a minor (later identified as Jane Doe 1) engaging in various sexual acts with Defendant.   The identity of the producer came to light after the exif data stored within the images was examined and the camera make, model and serial number were identified and linked to non-sexually explicit images Defendant had uploaded to the website Flickr.

A warrant was obtained later that day to search Defendant's residence. Found in plain view during the search were numerous marijuana plants growing in the basement surrounded by grow lamps and other growing equipment and tools.   Also found were various items that can be seen in the background of the child pornography images found in Utah featuring Jane Doe 1.   An on-scene forensic examination of Defendant's computer was conducted and images and videos of child pornography, including many of Jane Doe 1 being caused to engage in sexual acts with Defendant, were found.

Defendant was present and, after being read his *Miranda* rights, signed a waiver agreeing to speak with law enforcement.   Defendant admitted that he had knowingly received child pornography over the internet for several years.   Defendant admitted that he didn't know "how to stop looking at [child pornography]."   Defendant explained that after he began downloading the

2

material, he discovered like-minded individuals on the internet.   Thereafter, he began chatting with those individuals and sharing child pornography. Defendant stated that his sexual attraction is to girls who have some breast development, though he admitted to looking at "plenty" of child pornography featuring younger children.   Defendant admitted that he would masturbate while looking at child pornography and that he had posed online as a minor female and chatted with others.

Defendant was shown 11 color prints of child pornography depicting himself and Jane Doe 1 and he identified each picture as one he had taken, admitting that he is the adult male depicted.   Defendant admitted that Jane Doe 1 (who was by then 12 years old) was as young as 8 or 9 when the abuse began and that he had had vaginal intercourse with her and sent sexual abuse images of her to others via the internet.   Defendant described his relationship with Jane Doe 1 as a "boyfriend/girlfriend" relationship. Defendant admitted using marijuana to "lure" Jane Doe 1 into engaging in sexual conduct with him.   He explained that he would do this by offering to share marijuana with her if she would engage in sexual acts with him. Defendant admitted that the marijuana he grows is "pretty strong" and that he had given his home grown marijuana to Jane Doe 1.

Although he initially claimed that he had not sexually abused or photographed anyone other than Jane Doe 1, later in the interview Defendant identified two other female minors whom he has photographed (Jane Doe 2 and Jane Doe 3).  Defendant admitted that he looked at these two minor females while they were sleeping and would masturbate while watching them. He stated that he could see their genital region through their loose pajamas and he became turned on by that.   He admitted to photographing both girls while they slept, and to touching one of the girls (Jane Doe 2), but he denied having sexual intercourse with them.

The full forensic examination of Defendant's computer and related equipment revealed hundreds of videos and thousands of child pornography images featuring Jane Doe 1, Jane Doe 2 and/or Jane Doe 3.   In addition, a large cache of other child pornography images and videos was found.

Defendant was charged by criminal complaint on May 24, 2013 and indicted on June 19, 2013.   DE # 1, 12.

## II.    Defendant's Change of Plea Hearing

On December 16, 2013, Defendant filed notice of his intent to change his pleas to guilty for each of Counts 1 through 9.   DE # 24.   A change of plea hearing was set for January 6, 2014, but due to a severe winter storm in the

area, the hearing was moved to January 7, 2014 at 1:00p.m.   DE # 29.   At the hearing, Defendant provided a factual basis to support each of Counts 1 through 9, but questioned whether the facts alleged were sufficient to prove the production of child pornography charge as to Jane Doe 3 in Count 7.

As to that count, in response to questioning by defense counsel, Defendant admitted that in 2012 he installed a visual recording device in his shower and captured Jane Doe 3, whom he believed to be 9 or 10 years old at the time, taking a shower.   Transcript of January 10, 2014 Hearing, p. 30. When asked if the child's genitals were captured in the resulting footage, Defendant claimed they were not.   *Id.*, p. 31.   Defendant also admitted that he took still pictures of Jane Doe 3 while she was sleeping and wearing pajamas.   *Id.*   Defendant further admitted that in one such picture, he had exposed himself.   *Id.*   When asked if Jane Doe 3 was aware that Defendant had exposed himself to her, Defendant responded that she was not because she was asleep at the time.   *Id.*

Defendant thereafter expressed doubt as to whether his conduct vis-à-vis Jane Doe 3 satisfies the elements of 18 U.S.C. § 2251(a).   *Id.*, p. 32. While acknowledging that he was charged with *attempting* to produce child pornography, Defendant specifically questioned whether the government's

evidence established that he attempted to or did, in fact, employ, use, persuade, induce, entice, or coerce Jane Doe 3 to engage in sexually explicit conduct. *Id.*; *see also id.*, p. 43.

### III.   Government Response in Support of Count 7

The government wishes to supplement the factual basis provided during the January 10, 2014 hearing as to Count 7. *See id.*, p. 40 (government counsel reserving the right to supplement its factual basis and the Court permitting the government to do so).   In addition to establishing that in 2012 Defendant took pictures and videos of then-9 or 10 year-old Jane Doe 3 here in the Northern District of Indiana using a camera manufactured outside the State of Indiana, the evidence would further establish that the depictions Defendant produced are described as follows:

> Three videos feature Jane Doe 3 bathing.   In one video, the camera is positioned across from the bathtub and shows Jane Doe 3 nude and at various points spreading her legs and touching her genitals while sitting and laying in the bathtub.   In another video, the camera appears to be on or near the shower rod and angled downward into the tub.   Although Jane Doe 3 is naked and bathing in this video as well, due to the camera angle and where the child is sitting in the tub, her genitals are not visible.   In the third video, the camera again appears to be on or near the shower rod and again angled down into the tub.   However, this time, the zoom function of the camera has been used, producing closer-up images of Jane Doe 3 naked in the bathtub.   The child's legs can be seen spread while she bathes in this video.   A portion of a song track has been added to this video.   The song is "Eraser" by Nine Inch Nails and the lyrics that can be heard while Jane Doe 3 is sliding back

and forth while sitting in the bathtub are "Need you. Dream you. Find you. Taste you. Fuck you. Use you. Scar you. Break you."

In addition to the videos showing Jane Doe 3 bathing, the government would also present photographs taken of Jane Doe 3 by Defendant.   In one such picture, Jane Doe 3 is seen smiling while leaning back and to one side on a pillow on the floor.   Although wearing a skirt and top, the child's skirt is pushed up around her waist and her bare legs are bent and spread, revealing bright pink and white underwear.   In another picture, Jane Doe 3 is seen spread out on a bed sleeping.   Although clothed in a turquoise tank top and shorts with underwear on, the tank top has been lifted above her bare chest and one of the legs of her shorts is pulled open to reveal the area where her underwear covers her vagina. In another picture, Jane Doe 3 is again seen spread out on a bed sleeping, this time wearing a lime green tank top and turquoise shorts. Visible in the foreground of this picture is Defendant's erect penis.

To convict a defendant of violating 18 U.S.C. § 2251(a), the government must prove (1) the defendant intentionally employed, used, persuaded, induced, enticed, or coerced any minor (2) to engage in sexually explicit conduct (3) for the purpose of producing any visual depiction of such conduct or for the purpose of transmitting a live visual depiction of such conduct, and (4) one of the federal jurisdictional prongs set forth in the statute has been met.

Title 18, United States Code, Section 2256(2)(A) defines "sexually explicit conduct" as "actual or simulated (i) sexual intercourse, including genital-genital, oral-genital, anal-genital, or oral-anal, whether between persons of the same or opposite sex; (ii) bestiality; (iii) masturbation; (iv)

7

sadistic or masochistic abuse; or (v) lascivious exhibition of the genitals or pubic area of any person."

The Seventh Circuit adopted a six-factor test for determining whether an image qualifies as a "lascivious exhibition of the genitals or pubic area of any person" in *United States v. Moore*, 215 F.3d 681, 686 (7th Cir. 2000). The six factors, originally set forth in *United States v. Dost*, 636 F. Supp. 828, 832 (S.D. Cal. 1986), are: (1) whether the focal point of the visual depiction is on the child's genitalia or pubic area; (2) whether the setting of the visual depiction is sexually suggestive, i.e., in a place or pose generally associated with sexual activity; (3) whether the child is depicted in an unnatural pose, or in inappropriate attire, considering the age of the child; (4) whether the child is fully or partially clothed, or nude; (5) whether the visual depiction suggests sexual coyness or a willingness to engage in sexual activity; and (6) whether the visual depiction is intended or designed to elicit a sexual response in the viewer. No one factor is determinative, but not all factors need be satisfied in finding a depiction to be lascivious. *Dost*, 636 F. Supp. at 832. As the Second Circuit recently explained, the *Dost* factors "are not definitional—nor do they purport to be. *Dost* recommends that 'the trier of fact should look to' the six enumerated factors, but noted that 'others . . . may be relevant in a

particular case.'"   *United States v. Rivera*, 546 F.3d 245, 252-53 (2d Cir. 2008) (quoting *Dost*, 636 F. Supp. at 832).

Numerous defendants have been convicted of producing child pornography based upon surreptitious recordings featuring the genitals or pubic area of minors.   *See, e.g., United States v. Johnson*, 639 F.3d 433, 440 (8th Cir. 2011); *United States v. Helton*, 302 Fed. Appx. 842, 844-49 (10th Cir. 2008); *United States v. Allison*, 447 F.3d 402, 403-07 (5th Cir. 2006); *United States v. Horn*, 187 F.3d 781, 789-90 (8th Cir. 1999); *United States v. Clark*, No. 09-33, 2010 WL 3488138, 2010 U.S. Dist. LEXIS 89468 (D. Del. Aug. 30, 2010); *United States v. Poulin*, 592 F. Supp. 2d 132, 135-36 (D. Maine 2008). In surreptitious recording cases, some of the *Dost* factors – including whether the visual depiction suggests sexual coyness or a willingness to engage in sexual activity – are not applicable because the subjects do not know they are being filmed.   *See Clark*, 2010 U.S. Dist. LEXIS 89468 at *17; *United States v. Helton*, 302 Fed. Appx. 842 (10th Cir. 2008).

The Third Circuit recently considered the issue raised by Defendant in this case and clarified that "active involvement on the part of a minor is not essential for a conviction under § 2251(a)" and that "a perpetrator can 'use' a minor to engage in sexually explicit conduct without the minor's conscious or

active participation." *United States v. Finley*, 726 F.3d 483, 495 (3rd Cir.

2013); *see also United States v. Fadl*, 498 F.3d 862,866 (8th Cir. 2007) (holding

that under 18 U.S.C. § 2251(a), the term "use" is "fully satisfied for the

purposes of the child pornography statute if a child is photographed in order

to create pornography") (quoting *United States v. Sirois*, 87 F.3d 34, 41 (2nd

Cir. 1996)).   In rejecting the argument raised by Defendant, the *Finley* court

reasoned:

> Even if the plain language of the statute could be interpreted to
> support Finley's position, the result of such an interpretation
> would be absurd and against the obvious policy of the statute.   In
> the only published opinion addressing this issue, the U.S. District
> Court for the Southern District of New York held that "[a]s a
> matter both of common sense and public policy, the statute must
> be construed to protect all children, including those who are
> unaware of what they are doing or what they are being subjected
> to, whether because they are sleeping or under the influence of
> drugs or alcohol or simply because of their age."   *United States v.
> Levy*, 594 F. Supp. 2d 427, 443 (S.D.N.Y. 2009). It would be
> absurd to suppose that Congress intended the statute to protect
> children actively involved in sexually explicit conduct, but not
> protect children who are passively involved in sexually explicit
> conduct while sleeping, when they are considerably more
> vulnerable.

*Finley*, 726 F.3d at 495; *see also United States v. Vowell*, 516 F.3d 503 (6th Cir.

2008) (upholding conviction under § 2251(a) where the material produced

featured sleeping children); *United States v. Wolf*, 890 F.2d 241 (10th Cir.

1989) (same).   The *Finley* court therefore concluded the lower court did not

10

err in instructing a jury that "[a] sleeping child can 'engage in' sexually explicit conduct within the context of § 2251(a)."   726 F.3d at 495.

In another surreptitious recording case where a weightlifting coach hid a camera to capture footage of minor females undressing to weigh themselves on a scale, the Eighth Circuit clarified:

> The fact that the young women in the videos were not acting in an obviously sexual manner, suggesting coyness or a willingness to engage in sexual activity, does not necessarily indicate that the videos themselves were not or were not intended to be lascivious. In [*United States v. Horn*, 187 F.3d 781 (8th Cir. 1999)], we explained that "lascivious exhibition" need not necessarily be "the work of the child, whose innocence is not in question, but of the producer or editor of the video." *Horn*, 187 F.3d at 790. Thus, even images of children acting innocently can be considered lascivious if they are intended to be sexual.

*Johnson*, 639 F.3d at 440; *see also Helton*, 302 Fed. Appx. at 848 ("A depiction of a child is a lascivious exhibition of the genitals when, inter alia, the image is intended to elicit a sexual response in the viewer.") (internal quotations and citations omitted); *see also id*. at 849 ("[O]ur task is simply to determine whether Helton intended the videotape he produced to elicit a sexual response in the viewer—defined as himself and like-minded individuals. Clearly, he did.").   The Ninth Circuit reached a similar conclusion in *United States v. Weigand*, 812 F.2d 1239, 1244 (9th Cir. 1987):

In the context of the statute applied to the conduct of children,

lasciviousness is not a characteristic of the child photographed but of the exhibition which the photographer sets up for an audience that consists of himself or likeminded pedophiles . . . . The picture of a child 'engaged in sexually explicit conduct' within the meaning of 18 U.S.C. §§ 2251 and 2252 . . . is a picture of a child's sex organs displayed lasciviously – that is, so presented by the photographer as to arouse or satisfy the sexual cravings of a voyeur.

The *Clark* case out of the District of Delaware involved surreptitious recordings of a minor using a bathroom.   *See* 2010 U.S. Dist. LEXIS 89468, *15-16.   In considering the *Dost* factors, the court in that case reasoned:

With respect to the second factor, a bathroom is not necessarily sexually suggestive. However, as the government points out, the bathroom is perhaps the most common room in which a person exposes his or her genitals and pubic area.   Moreover, given the placement of [the recording device] — immediately opposite the shower at a level and angle aimed at the genital and pubic areas — a jury could reasonably conclude that the second *Dost* factor is present.

*Id.; see also Helton*, 302 Fed. Appx. 842 (finding a hidden video recording of a child using the toilet lascivious because the focus was on her clothed pubic area).

The government notes that in 2011 the Fifth Circuit overturned a production of child pornography conviction after finding that the material produced did not meet the definition of sexually explicit conduct.   *See United States v. Steen,* 634 F.3d 822 (5th Cir. 2011); *see also Doe v. Chamberlain,* 299 F.3d 192, 197 (3d Cir. 2002) (in civil proceeding for damages against

12

photographer who took pictures of two children bathing nude at a public outdoor shower, finding the images not lascivious because their focal point was not the genitals of the children and there was no evidence that the photographer intended the photographs to illicit a sexual response in her audience).   In *Steen*, the defendant hid a camera in a tanning salon frequented overwhelmingly by adults and, with the exception of a 1.5 second clip of a 16 year-old nude with her genitals visible, the recording featured adults undressing and using a tanning bed.   The indictment charged Steen with knowingly producing child pornography rather than merely attempting to do so.   On appeal, the Fifth Circuit concluded that insufficient evidence had been presented in support of the charge.   *Id*. at 827-828.   The court noted that Steen had no prior criminal history, and a forensic examination of his computer revealed adult, but no child, pornography.   *Id*. at 825.   The court also noted that Steen did not upload the video of the minor to his computer, nor was there any allegation that he had distributed it.   *Id*.

The facts of this case are clearly distinguished from *Steen* and *Chamberlain*.   Here, the *only* hidden camera footage found on Defendant's computer featured minor children using a private bathroom.   The children's genitals are visible for much greater periods of time than the 1.5 second clip at

13

issue in *Steen*.   The images and videos Defendant produced of all three victims including Jane Doe 3 were found on his computer along with a cache of other child pornography.   Further, Defendant admitted to being sexually aroused by child pornography and by the victims depicted in the images and videos he produced.    Defendant also admitted to distributing child pornography featuring Jane Doe 1.   And perhaps most importantly, in this case the images and videos themselves fit within the definition of "sexually explicit conduct" in 18 U.S.C. § 2256(2)(A).

One or more of the images and videos of Jane Doe 3 constitute lascivious exhibitions of either Jane Doe 3's genitals, or those of Defendant.   *See* 18 U.S.C. § 2256(2)(A)(v); *Moore*, 215 F.3d at 686.   For example, two out of the three videos of Jane Doe 3 show her naked and occasionally spreading her legs and touching her genitals – the clear focal point of the recordings – while taking a bath.   The "Eraser" lyrics from Nine Inch Nails that can be heard during the playing of one of the videos are clearly sexually explicit and demonstrate that Defendant intended the video to elicit a sexual response in the viewer.   The pictures of Jane Doe 3 sleeping with her breasts and underwear exposed are likewise sexually suggestive.   The picture of Jane Doe 3 sleeping with Defendant's bare, erect penis in the foreground is again

sexual in nature given that Defendant's penis constitutes the focal point of the image and was captured in the image with the child to elicit a sexual response in the viewer.  Finally, the picture of Jane Doe 3 laying on a pillow on the floor looking directly at the camera while smiling and leaning back and to the side with her legs spread and her skirt pushed up to her waist revealing her underwear also meets at least four and arguably all six of the *Dost* factors. Any one of these depictions would be enough to satisfy the government's burden in this case.

But even if the Court were to disagree and find that none of the depictions Defendant produced of Jane Doe 3 are lascivious exhibitions, Defendant's plea should still be accepted because he was charged with *attempting* to produce child pornography in Count 7.  *See Johnson*, 639 F.3d 433, 440 (8th Cir. Apr. 5, 2011) (citing *United States v. Raney*, 342 F.3d 551 (7th Cir. 2003)).  To prove that a defendant attempted to produce child pornography, the government need only establish that he or she acted with the specific intent of committing the completed offense and took a substantial step toward doing so.  *See, e.g., United States v. Lee*, 603 F.3d 904, 913 (11th Cir. 2010); *United States v. Pierson*, 544 F.3d 933, 938 (8th Cir. 2008); *United States v. Musumeci*, 307 Fed. Appx. 471, 472 (2d Cir. 2008).

15

A defendant's success in obtaining his criminal objective is not necessary for an attempt conviction. *Johnson*, 639 F.3d at 440; *United States v. Buculei*, 262 F.3d 322 (4th Cir. 2001) (defendant who failed to record himself engaged in sexually explicit conduct with minor due to insufficient room on video tape nonetheless guilty of violation § 2251(a)). Courts have upheld attempted production of child pornography convictions even where completion of the offenses was factually impossible. *See, e.g., United States v. Lee*, 603 F.3d 904, 913 (11th Cir. 2010) (affirming conviction where defendant repeatedly requested sexually explicit images of fictional daughters of an undercover officer posing as their mother); *Pierson*, 544 F.3d at 938-39 (affirming jury verdict for attempted production where defendant requested webcam images of an undercover officer posing as a minor); *Musumeci*, 307 Fed. Appx. at 472 (affirming guilty verdict where defendant arranged to meet a person he mistakenly believed to be a minor for the purpose of recording sexually explicit conduct); *United States v. Moser*, No. 06-4406, 2007 WL 2301348 (4th Cir. Aug. 10, 2007) (defendant guilty of attempting to obtain custody or control over minor for purposes of producing child pornography where he traveled to meet undercover officer posing as parent to record molestation of her fictional children).

16

Here, Defendant's conduct of hiding a video camera in a private bathroom and recording video of Jane Doe 3 naked and touching herself while bathing is clear evidence of his intent to produce child pornography and constitutes, at the very least, a substantial step toward achieving that goal. Defendant saved the videos of Jane Doe 3 to his computer and even added a sexually explicit song to the soundtrack of one.   The fact that Defendant also took pictures of Jane Doe 3 sleeping and with her clothing pushed up exposing her bare breasts and her underwear lends further support that his intention was to produce child pornography.   The photo of Jane Doe 3 smiling while leaning back and to her side on the floor with her skirt hiked and her legs spread exposing her underwear likewise supports the government's theory. As do the over 2,500 images and videos found in Defendant's possession that feature Jane Doe 1 engaging in various sexual acts with Defendant including vaginal, oral and anal sex.   And the more than 75 sexually explicit images and videos he produced featuring Jane Doe 2.   The evidence presented at trial would further establish that Defendant knowingly possessed a large cache of child pornography on his computer.   "An offender's pornography and erotica collection is the single best indicator of what he wants to do." Kenneth V. Lanning, CHILD MOLESTERS: A BEHAVIORAL ANALYSIS

17

FOR PROFESSIONALS INVESTIGATING THE SEXUAL EXPLOITATION OF CHILDREN, 107 (5TH ED. 2010).

WHEREFORE, for the reasons stated herein, the government respectfully requests that the Court allow the government to supplement the factual basis previously provided to include the detailed descriptions provided herein of the child pornography Defendant produced featuring Jane Doe 3, and that the Court accept Defendant's guilty plea to Count 7 of the Indictment.

Respectfully submitted,

DAVID CAPP
United States Attorney


By:   */s/ Jill Rochelle Koster*
JILL ROCHELLE KOSTER
Assistant United States Attorney
5400 Federal Plaza, Suite 1500
Hammond, Indiana 46320
(219) 937-5500

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on February 7, 2014, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which sent notification of such filing to counsel of record.

By:    <u>*/s/ Jill Rochelle Koster*</u>
JILL ROCHELLE KOSTER
Assistant United States Attorney
5400 Federal Plaza, Suite 1500
Hammond, Indiana 46320
(219) 937-5500