UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | Case No. 2:13 CR 00084 PPS-PRC |
| v. | ) | |
| | ) | |
| DANIEL THOMAS ECKSTROM | ) | |

## GOVERNMENT SENTENCING MEMORANDUM

Comes now the United States of America, by David Capp, United States Attorney for the Northern District of Indiana, to respectfully request that the Court sentence Defendant to the maximum possible period of incarceration, followed by a lifetime term of supervised release, and in support thereof states as follows:

### I.      Summary of Offense and Relevant Conduct

Defendant Daniel Thomas Eckstrom stands before this Honorable Court for sentencing after admitting that, for a period of *five years*, he produced images and videos depicting himself sexually exploiting and abusing his own biological daughter when she was between eight and twelve years old, in violation of 18 U.S.C. § 2251(a). DE # 12 (Indictment, Counts 1-5).  Defendant's abuse of his daughter wasn't a one-time or even a once-in-a-while occurrence; Defendant sexually abused and exploited his daughter on at least 19 separate occasions in 2009, 27 in 2010, 13 in 2011, 26 in 2012, and once prior to his arrest in 2013. *Id*. Likewise, Defendant wasn't an image-per-day or video-per-day producer; Defendant took as many as 349 pornographic images and captured as many as 21 different pornographic videos per

1

day, and on most days captured a combination of images and videos. *Id.*

The depictions Defendant produced of his daughter are graphic, hard core, disgusting and heart-breaking.   Generally speaking they show: Defendant causing his daughter to lasciviously display her genitalia for the camera; Defendant performing oral sex on his daughter and causing her to perform oral sex on him; Defendant masturbating in front of his daughter and encouraging her to masturbate for the camera, including with dildos and vibrators; Defendant inserting his penis into his daughter's vagina and in some instances engaging in forcible vaginal intercourse with her even after she repeatedly asks him to "stop" because "it hurts" while trying to squirm away; Defendant penetrating his daughter's vagina with his fingers and inanimate objects including crayons, in some cases forcibly; and Defendant penetrating his daughter's anus with his penis and with a vibrator. *See* PSR ¶ 25 (providing general descriptions of conduct depicted for each date alleged in the Indictment) and ¶ 26(1), (2) and (4) (describing in detail three videos Defendant produced of Jane Doe 1); *see also* DE # 74 (Notice of Tendering Evidence for In Camera Review).[1] Further, in some of the images and videos, Jane Doe 1 looks drugged – her eyes are swollen and partially or completely shut and she appears to be barely lucid or altogether unconscious.

Jane Doe 1 describes the abuse as "absolutely horrible" and says she felt helpless and afraid that Defendant would kill her if she told anybody what was going

---

[1] The binder of images and disk of videos provided to the Court for *in camera* review will be moved into evidence under seal at sentencing.

on. DE # 70-3, p. 1.   She describes Defendant as "manipulative and evil" and recounts him assuring her the activity was "normal" and offering her "gifts" like candy and chocolate to make her compliant. *Id.*, pp. 2-3.   Jane Doe 1 has "horrible memories" of Defendant giving her marijuana,[2] which she believes damaged her brain. DE # 70-2.   Jane Doe 1 says she hates Defendant and experiences a variety of emotions due to the abuse, including feeling "hurt," "angry," "sad," "hopeless," "nervous," distrustful and "fearful of violence." DE # 70-2. The psychologist who recently conducted an evaluation of Jane Doe 1 has provided a detailed summary of the extensive trauma and harm she has suffered, and will continue to suffer, as a result of Defendant's severe and ongoing sexual abuse. *See* DE # 77-2.

To make matters worse, Defendant didn't limit the viewing of his homemade the depictions to himself for his *own* enjoyment.   He distributed electronic copies of the material to others in violation of 18 U.S.C. § 2252(a)(2). DE # 12 (Indictment, Count 8).   Jane Doe 1 *knew* Defendant was sharing the material and recalls him referring to her by an alias, talking about trading videos with others, and saying things like "be good for the audience" during the sexual abuse. DE # 70-3, p. 8. The material he produced includes depictions of his daughter holding up signs for, and passing along messages to, Defendant's various like-minded online "friends." *See*, *e.g.,* PSR ¶ 25, p. 11. The sample the government is submitting to the Court for *in*

---

[2] When interviewed, Defendant admitted using marijuana "more or less to lure [Jane Doe 1] . . . . [n]ot like to drug her to do it, but like 'Yeah hey, I'll smoke one with ya if you wanna play around'" (referring to engaging in sexual activity).

*camera* review includes a video in which Jane Doe 1 relays a message to "Alan," and others where pornographic videos of children are seen playing in the background while Defendant sexually abuses Jane Doe 1 in the foreground.   Defendant's sharing of the evidence of his sexual abuse of his daughter led to his identification and arrest and thus her rescue. *See* PSR ¶¶ 5-12. But unfortunately that same conduct has and will always magnify the harm to Jane Doe 1. *See* DE # 77-2, pp. 15-16.

When asked how she feels about other people watching her father sexually abusing her, Jane Doe 1 writes that she feels "scared to walk outside" – a feeling she anticipates having for the "rest of [her] life." DE # 70-3, p. 7.   She lives in fear that "some psycho or pedophile will see [her], and try to talk to [her], rape [her], or kidnap [her]" and she becomes sad when she considers that those watching have or "will in the future, hurt their own children or children around them." *Id.*

According to information received from the National Center for Missing and Exploited Children ("NCMEC"), which tracks the proliferation of child pornography found in the United States, 10,528 separate depictions of Jane Doe 1's abuse have been found in 77 investigations in 29 different states.

Tragically, Defendant's child abuse was not limited to his biological daughter. Defendant also exploited two other minor females, Jane Doe 2 and Jane Doe 3, who briefly lived in his residence in 2012. DE # 12 (Indictment, Counts 6 and 7). Defendant sexually abused and produced child pornography featuring six to seven year-old Jane Doe 2 on at least four occasions and exploited Jane Doe 3 on three.

4

*Id.*; *see also* PSR ¶ 26(3) (describing in detail one video taken of Jane Doe 2 while she slept). Images and videos capturing that abuse are included in the sample of Defendant's child pornography being submitted for *in camera* review by the Court prior to sentencing. That material includes: numerous photographs of Jane Doe 2 and Jane Doe 3 with parts of their bodies exposed while they sleep; a video of Jane Doe 2 being caused by Defendant to expose and lasciviously display her genitals; videos of Jane Doe 2 sitting on Defendant's lap eating a cookie or brownie while he manipulates her vagina with his fingers and digitally penetrates her; and a video of Jane Doe 3 taking a bath set to the song "Eraser" by Nine Inch Nails with the following lyrics repeated: *"Need you. Dream you. Find you. Taste you. Fuck you. Use you. Scar you. Break you."* The victims' mother reported Defendant's abuse of Jane Doe 2 one week before his arrest in this case. *See* PSR ¶ 15. And we now know Defendant distributed pornography featuring Jane Doe 2, as NCMEC has reported finding 493 such depictions in seven investigations conducted in six states.

In addition to his production and distribution of child pornography offenses, Defendant pled guilty to possessing child pornography in violation of 18 U.S.C. § 2252(a)(4). In total, law enforcement found approximately 472 videos and 6,210 images featuring Jane Does 1, 2, or 3 in Defendant's possession. PSR ¶ 25. Defendant also possessed non-homemade child pornography that he obtained from others via the Internet which depict hundreds if not thousands of other minor children being sexually abused and exploited in every way imaginable. *See, e.g., Id.* ¶

27 (providing detailed descriptions of 6 such depictions).   Defendant's total cache amounted to over 80,000 suspected child pornography images and over 600 suspected child pornography videos. *Id.*

## II.     Application of the U.S. Sentencing Guidelines

Federal law requires that Defendant receive a minimum sentence of 15 and a maximum sentence 30 years of incarceration on each of Counts 1 through 7, for a combined total maximum sentence of 210 years. 18 U.S.C. § 2251(a).   For distributing child pornography as charged in Count 8, federal law requires a sentence of between 5 and 20 years of incarceration. 18 U.S.C. § 2252(b)(1).   And finally, Count 9, Defendant's possession of child pornography charge, carries a maximum penalty of 10 years of incarceration. *See* 18 U.S.C. § 2252(b)(2).   Thus, statutorily, the Court could sentence Defendant to a total combined sentence of up to 240 years or 2,880 months.

Although the U.S. Sentencing Guidelines (hereafter "Guidelines") are advisory, the Court must nonetheless begin its sentencing analysis by properly calculating the applicable range Defendant faces under Guideline § 2G2.1. *See United States v. Booker*, 543 U.S. 220, 245 (2005).   The Supreme Court has declared, "As a matter of administration and to secure nationwide consistency, the Guidelines should be the starting point and the initial benchmark." *Gall v. United States*, 552 U.S. 38, 41 (2007). Thus, the Guidelines remain an indispensable resource for assuring appropriate and uniform punishment for federal criminal offenses.

Not surprisingly given the harsh statutory penalties called for in this case, the Guidelines, as applied by Probation, recommend that Defendant be ordered to spend the rest of his life in prison. *See* PSR ¶ 122. The Guidelines arrive at that recommendation by applying the following enhancements to Defendant's crimes:

- Four levels are added to the calculations for each count pursuant to Guideline § 2G2.1(b)(1)(A) because the offenses involved minors under the age of 12;

- Four levels are added to the calculations for Counts 1 through 5, 8 and 8 pursuant to Guideline § 2G2.1(b)(2)(B) because the offenses involved the commission of a sexual act *and* conduct described in 18 U.S.C. § 2241(a) or (b) as to Jane Doe 1 (i.e., Defendant's use of force and/or threats of force to make her compliant and his rendering her unconscious by giving her strong home-grown marijuana);

- Two levels are added to the calculations for Counts 6 and 7 pursuant to Guideline § 2G2.1(b)(2)(A) because the offenses involved Defendant's commission of a sexual act with Jane Doe 2 (which was captured in his child pornography) and Jane Doe 3 (which she informed law enforcement about after the fact);

- Two levels are added to the calculations for each count pursuant to Guideline § 2G2.1(b)(3) because the offenses involved the distribution of child pornography;

- Four levels are added to the calculations for each of Counts 1 through 6 and Counts 7 and 8 pursuant to Guideline § 2G2.1(b)(4) because the offenses involved material that portrays sadistic or masochistic conduct or other depictions of violence;

- Two levels are added to the calculations for each count pursuant to Guideline § 2G2.1(b)(5) because Defendant was Jane Doe 1's father and Jane Does 2 and 3 were in his custody, care, or supervisory control;

- Two levels are added to the calculation of Counts 6 and 7 pursuant to Guideline § 3A1.1(b)(1) because Jane Does 2 and 3 were sleeping and therefore especially vulnerable, at times when they were exploited and abused; and

- Finally, five additional levels are added pursuant to Guideline § 4B1.5(b)

7

because Defendant has been convicted of a covered sex crime *and* he engaged in a pattern of activity involving prohibited sexual conduct with three different minor children.

Defendant has raised several objections to Probation's Guideline calculation. DE # 71.   The government has responded to the objections in part already, *see id.*, but will address the new arguments made by Defendant in his supplemental sentencing memorandum, filed May 6, 2015 (DE # 75), below.   However, it should be noted that Defendant's objections ultimately boil down to an academic exercise because even if the Court sustained *all of them*, Defendant would still score out well *above Life* under the Guidelines.

### A.     Jane Does 2 and 3 Were Vulnerable Victims

First, as the Court's review of the sample of child pornography evidence being tendered by the government will show, Defendant produced pornographic depictions of Jane Does 2 and 3 while they were sleeping and therefore vulnerable.   Because they were unconscious at the time, Defendant was able to move and manipulate their clothing to expose parts of their bodies that would not otherwise have been visible. In the photographs of Jane Doe 2 sleeping, Defendant's hand is seen pushing aside her clothing and touching her bare skin and genitals.   In the photographs of Jane Doe 3 sleeping, Defendant's hand is not seen but the child's clothing is shown in unnatural positions (e.g., with her top pushed up to her neck to expose her bare chest) evidencing that Defendant was likewise able to move her clothing while she slept.   Accordingly, *United States v. Newsom*, 402 F.3d 780 (7th Cir. 2005) supports

8

application of the vulnerable victim enhancement in § 3A1.1(b)(1) to Counts 6 and 7.

**B. Defendant Used Force and Other Measures to Achieve Jane Doe 1's Compliance When Engaging in Sexual Acts**

Defendant objects to the four-level enhancement in § 2G2.1(b)(2)(B) applying to Counts 1-5, 8 and 9, all of which implicate Jane Doe 1 because Defendant produced, distributed *and* possessed depictions of her abuse.   As the Court's review of the sample of child pornography evidence being submitted *in camera* will show, Defendant used force when engaging in sexual acts with Jane Doe 1.   One video the Court will see features Jane Doe 1 telling Defendant that the sex act in which he is engaging hurts and asking him: "How would you feel, Dad?" in an attempt to evoke empathy from her father.   When he continues engaging in the sex act anyway she says "no" repeatedly, to which he responds: "Shut up. Let me do the video."   In several other videos the Court will see, Jane Doe 1 tries to wrestle her father off her and in response he pins her body and arms down and continues the abuse.   Although force alone is sufficient to support the § 2B2.1(b)(2)(B) enhancement, the government notes that the other two possible grounds supporting its application are also met here.   Jane Doe 1 has described being afraid of her father due to his past use of physical force and threats of force. DE # 70-3, p. 1 (". . . I was afraid he'd kill me if I told anybody"; ". . . . he hit me alot [sic]"); *id.*, p. 3 ("He also used threats such as telling me if I'd ever get pregnant he'd use a coat hanger to give me an abortion."); *id.*, p. 4 ("But I don't think he'd listen to me because he'd hit me with his fist if I made him upset. And he was good about it because he'd hit me in spots that would be

covered by my clothes, and if I struggled he'd hit me harder."). Further, Defendant produced depictions wherein his daughter appears to be unconscious and yet Defendant has stuck his penis into her mouth.

## C.     Defendant Produced and Possessed Sadomasochistic Material

Each of Defendant's offenses in Counts 1-5, 6, 8 and 9 involved sadomasochistic material and other depictions of violence. As the Court's review of the sample child pornography evidence will establish, Defendant vaginally and anally penetrated Jane Doe 1, including with inanimate objects, and he vaginally penetrated Jane Doe 2 with his finger and with a vibrator. *See United States v. Myers*, 335 F.3d 1040, 1043-1044 (7th Cir. 2004) (approving application of the S&M enhancement where a depiction shows vaginal penetration of a prepubescent female by an adult male). The Court's review of the sample non-homemade material will likewise establish that Defendant possessed depictions of other minors being forced to endure sadomasochistic conduct and violence. To the extent Defendant is arguing that his possession of the non-homemade material during the same time-period as his other offenses does not constitute relevant conduct to those offenses, the Seventh Circuit U.S. Court of Appeals disagrees. *See United States v. Barevich*, 445 F.3d 956, 958-959 (7th Cir. 2006); *United States v. Ellison*, 113 F. 3d 77, 78-79, 82 (7th Cir. 1997).

As for Defendant's double-counting claim regarding application of that enhancement and the more serious sexual act enhancement in § 2G2.1(b)(2)(B), the

former applies based on Defendant's vaginal/anal penetration of Jane Does 1 and 2, and the latter enhancement adds additional punishment to the charges involving Jane Doe 1 only because of Defendant's use of force, threats and engagement in sexual acts with his daughter while she laid unconscious.[3]   In any event, Guideline § 1B1.1, n. 4(A) advises that "offense level adjustments from more than one specific offense characteristic within an offense guideline are applied cumulatively (added together) *unless* the guideline specifies that only the greater (or greatest) is to be used." *See also United States v. Vizcarra*, 668 F.3d 516, 526-527 (7th Cir. 2012) (holding that double counting is permissible unless the text of the applicable guideline instructs otherwise). Accordingly, § 2G2.1(b)(4) has been properly applied.

### D.   Defendant Is a Repeat and Dangerous Sex Offender Against Minors

Defendant argues (DE # 75, p. 6) that the five-level enhancement in § 4B1.5(b)(1) should not apply because he "does not believe that the sentencing commission intended to add an additional five levels to any defendant charged with multiple [production of child pornography] counts."   Defendant's misconception is contradicted by the very text of the Guidelines. *See* Guideline § 1B1.1 n. 4(B) ("Absent an instruction to the contrary, enhancements under Chapter Two, adjustments under Chapter Three, and determinations under Chapter Four are to be

---

[3] The definition of "sexual act" in 18 U.S.C. § 2246(2) is incorporated into Guideline § 2G2.1.   *See* § 2G2.1, n. 2.   That definition includes contact between the mouth and the penis.   As noted, there are also several photographs depicting Jane Doe 1 unconscious with Defendant's penis in her mouth.

applied cumulatively.   In some cases, such enhancements, adjustments, and determinations may be triggered by the same conduct.").

Further, the Seventh Circuit has affirmed application of § 4B1.5(b) in multi-count sex abuse cases. *See, e.g., United States v. Von Loh*, 417 F.3d 710, 714-715 (7th Cir. 2005) (rejecting the argument that § 4B1.5(b)(1) should not apply on top of the Guideline calculations for multiple un-grouped hands-on offenses); *United States v. Craig*, 420 Fed. Appx. 605, 607 (7th Cir. 2011) (unpublished) (rejecting claim of double-counting when § 4B1.5(b)(1) is applied in addition to multiple un-grouped production of child pornography offenses); *United States v. Shea*, 493 Fed. Appx. 792, 794 (7th Cir. 2012) (unpublished) (approving the application of § 4B1.5(b)(1) in case with multiple production charges); *see also United States v. Dowell*, 771 F.3d 162, 170-171 (4th Cir. 2014) (rejecting double-counting claim as to application of both § 2G2.2(b)(5) and § 4B1.5(b)(1) because the Guidelines "intend the cumulative application of these enhancements" and noting that the latter provision "aims . . . to allow a district court to impose an enhanced period of incarceration because the defendant presents a continuing danger to the public"); *United States v. Broxmeyer*, 699 F.3d 265, 285-286 (2d Cir. 2012) (quoting the Sentencing Commission's background comment which explains that § 4B1.5 "is intended to identify 'repeat sex offenders,' who pose 'a continuing danger to the public'", and recognizing that in other areas of the law "two crimes can suffice to demonstrate a pattern of conduct posing a continuing danger to the public").

12

There is no doubt based on the facts of this case that Defendant is a repeat sex offender who poses a continuing danger to the public.   While "only" charged with seven counts of producing child pornography – one for each *year* he committed the crime using Jane Doe 1, and one for each *year* he committed it using Jane Does 2 and 3 – it is worth noting that Defendant *could have been charged* with 93 separate production counts. *See* DE # 12.   That is because *each episode* of the production of child pornography harms the victim in a separate and distinct fashion. *See* Guideline § 3D1.2 (specifically *excluding* production charges from the grouping rules); *see also United States v. Wise*, 447 F.3d 440 (5th Cir. 2006) ("The district court's decision to treat Wise's production counts occurring on different days as separate harms was consonant with both the plain language of § 3D1.2 and the examples in the commentary[, as well as] the circuit courts that have addressed this and closely related issues.") (citing *United States v. Searle*, 65 Fed. Appx. 343, 346 (2d Cir.2003) (unpublished) (considering multiple counts of production of child pornography involving one victim and concluding that the district court properly declined to group the counts because the child victim "was harmed separately by the conduct embodied in each count of conviction"); *United States v. Big Medicine*, 73 F.3d 994, 997 (10th Cir.1995) (holding that the defendant's seventy-five instances of sexual contact with the same minor should not be grouped)).   The Seventh Circuit reached the same conclusion in *United States v. Von Loh*, 417 F.3d 710, 714 (7th Cir. 2005), a statutory rape case in which it rejected the defendant's claims that his counts of engaging in

sexual acts with the same minor on separate dates should be grouped together. While it is true Defendant wasn't arrested or charged until *after* the commission of his 93rd production offense, that fact has no bearing on his status as a repeat and dangerous sex offender of children.

## III.  Response to Defendant's Arguments for a Below-Guideline Sentence

Despite scoring out well above life under the Guidelines, Defendant asks the Court to sentence him to 30 years in prison – the statutory maximum he would face if he had produced a single image of child pornography.   In support, Defendant cites his timely admissions of guilt and his post-offense rehabilitative efforts. *See* DE # PSR ¶ 179; 75, p. 7.   Defendant has already been given full credit for accepting responsibility, however, and should should not receive extra credit for "truthfully admitting the conduct comprising the offense(s) of conviction" or for engaging in "post-offense rehabilitative efforts." *Compare* Guideline § 3E1.1, n. 1(A) and (G) (providing acceptance credit on those bases) *with* Guideline § 5K2.0(d) (2) (listing acceptance of responsibility "which may be taken into account only under § 3E1.1" among prohibited Guideline departure grounds).

Defendant's attempt to blame his behavior on his unfortunate upbringing (*see* DE # 57, pp. 3-4; "Considering such an upbringing, it is not surprising that Mr. Eckstrom was left with a confused view of appropriate sexual practices.") is likewise undeserving of weight. *See* Guideline § 5H1.12 (listing both as "not relevant grounds in determining whether a departure is warranted") and § 5K2.0(d)(1) (prohibiting

departure on those grounds).[4]   As is the suggestion that Defendant's alcohol or drug use is to blame. *Id*. (listing drug or alcohol dependence or abuse among the prohibited departure grounds).  Although merely advisory, the Commission's stance against these departure justifications deserves weight.

Well after being caught and while arguing for a significantly below-Guideline sentence, Defendant says he feels "sincere remorse" for his crimes, suggesting that is the "most important factor for the [C]ourt to consider for a below Guideline sentence." DE # 57, p. 5; *see also* DE 75-1, p. 1 (acknowledging his "need to apologize to the victims and their families" for his criminal acts). Defendant's expressions of remorse should be viewed skeptically, however, due to his lack of remorse *prior to arrest*.   In fact, prior to his arrest, while communicating with like-minded individuals online, Defendant only expressed *concern about getting caught* and tried to cover his tracks. PSR ¶ 28.  "At one point, Defendant advised his pen-pals to delete their correspondence and to stop contacting him as he [was] going to stop sharing material to 'protect his family.'"[5] *Id*.   Defendant's goal was to protect *himself* and to *prevent the discovery* of his sexual abuse of his daughter.

Equally unavailing is Defendant's attempt to seek credit from the Court for not putting the "victims through continuing emotional distress by forcing them to testify and relive the experiences to which they were subjected." DE # 57, p. 5.   This

---

[4] Even Dr. Hillard acknowledges that "multigenerational patterns [of abuse] within a family does not imply causality."   Hillard Report, p. 9.

[5] These facts were recited with the anticipated evidence at trial, *see* DE # 64, p. 28, as well as in the PSR, and Defendant has raised no objection to them.

is a red herring.  The victims' faces and bodies, Defendant's face and body and far more child sexual abuse than any jury could possibly stomach were memorialized by Defendant for all of posterity in the thousands of lurid images and videos he produced.  As Defendant himself collected all the evidence the government needed to convict him, there would be no need or point to having the children testify at trial.

In his original sentencing memorandum, filed on September 25, 2014 (DE # 57, pp. 2-3), Defendant also took aim at Guideline § 2G2.2.  But that Guideline played no part in Probation's sentencing calculation in this case and Defendant fails to cite to a single source making similar criticisms of § 2G2.1, the section under which Defendant's calculations were performed here.  Indeed, to the contrary, the production guideline is highly regarded. *See* U.S. Sentencing Commission, Report to the Congress: Federal Child Pornography Offenses at 247 n.2 (2012) (the "Commission's 2010 survey of federal district judges revealed that the vast majority of judges surveyed stated that the guideline and statutory penalty ranges in production cases were appropriate as a general matter").

Next is Defendant's claim that a 30-year sentence is sufficient but not greater than necessary to protect the public because by the time of release, he'd be in his late 50's and his "risk of recidivism would be greatly reduced."   DE # 57, p. 5; *see also id.*, p. 4.  This claim seems to be based on the statement in Dr. Hillard's report that "recidivism for in-household (incest) sex abuse (Baur, 2010) and child pornography (Report to Congress, 2012, [C]hapter 11) is lower than other types of sex offenses."

16

Hillard Report, p. 11. But Hillman's assertion doesn't hold water.   First, Defendant's sex offenses *weren't* limited to incest as Jane Does 2 and 3 were non-relatives. Second, throughout the very chapter of the report to Congress Hillard references, the writers make clear that they are discussing recidivism rates of those sentenced under the guidelines for *non-production* offenses (i.e., § 2G2.2, *not* 2G2.1).[6]

The problem with relying on recidivism rates as an indicator of future risk is that the statistics depend on crimes being reported and successfully prosecuted. The vast majority of sex offenses against children go *unreported*, however. *See* London, Bruck, Ceci and Schuman, *Disclosure of Child Sexual Abuse:  What Does the Research Tell Us About the Ways that Children Tell?*, Journal of Psychology, Public Policy, and Law, Vol. 11, No. 1, p. 194 (2005) (reviewing numerous studies and concluding "[t]he evidence indicates that the majority of abused children do not reveal abuse during childhood.").   If the Penn State scandal taught us anything it was that even educated adults who *witness* child sexual abuse, or *hear a first-person account of it from a reputable source*, can be reticent to report the crime.

One study aimed specifically at age and sexual recidivism offered the following explanation for lower recidivism rates among much older individuals:

---

[6] Even among non-production offenders, 30% recidivated within just eight and a half years. *See* Report to Congress, Federal Child Pornography Offenses, Chapter 11 at p. 299.   And that is a "conservative measurement of actual recidivism," the Commission advised. *Id.*, p. 295.   "In evaluating any recidivism study, particularly one involving sex offenders, caution should be exercised because the known recidivism rate is lower than the actual recidivism rate." *Id.*, Chapter 12, p. 318. "It is widely accepted among researchers that sex offenses against children often go unreported or undetected." *Id.*, Chapter 11, p. 295.

> The abrupt drop in recidivism for offenders released in their 60s and 70s might then reflect new variables beginning to act. These might include loss of physical health and a significant reduction in effective time at risk due to mortality. However, some reckoning must also be made with possible changes in the reporting rate. Relatives' willingness to report offending by a grandparent is likely reduced by the thought that he will probably die soon. Additionally, sexual misbehavior by the very old (for example in nursing homes) is often treated as a health problem ("poor old man, he can't help it") rather than as something to be dealt with by the criminal justice system.

Thornton, *Age and Sexual Recidivism: A Variable Connection*, Sexual Abuse: A Journal of Research and Treatment, Vol 18, No. 2, p. 12 (2006). Thus, low recidivism numbers based upon arrests and convictions are to be expected in all sex offense cases, and *especially* those involving older offenders.

Of course, that doesn't mean older people don't recidivate; undersigned counsel, for example, has prosecuted two repeat sex offenders near age 70 in the past six years. *See United States v. Wigglesworth*, 2:09 CR 184 JTM-APR (69 year-old former Catholic priest who married a former parishioner just after she turned 18 was convicted of traveling from Indiana to Illinois to perform fellatio on a teenage boy he met online in violation of 18 U.S.C. § 2422(b); *United States v. Zondor*, 2:11 CR 183 JVB-APR (69 year-old, who had previously sexually abused at least two minor females, convicted of possessing a large quantity of child pornography in violation of U.S.C. § 2252(a)(4)(B)). Further, studies show that when compared with rapists and sexual sadists, pedophiles comprise 60% of all older offenders, indicating that pedophiles offend in their later years at *a greater rate* than other sexual offenders. *See* Ryan C.W. Hall & Richard C.W. Hall, *A Profile of Pedophilia: Definition,*

18

*Characteristics of Offenders, Recidivism, Treatment Outcomes, and Forensic Issues*, 82 Mayo Clinic Proc. 457, 458 (2007).

Even if it is true that Defendant's future self will present a low risk of sexually abusing children compared to his current-day self, in the words of the Eleventh Circuit:   "A low risk is not the same as no risk.   Adequate protection is a function of two variables: the level of risk that conduct will occur and the level of harm that will be inflicted if that conduct does occur." *United States v. Irey*, 612 F.3d 1160, 1217 (11th Cir. 2010) (en banc) (citing *United States v. Boyd*, 475 F.3d 875, 877-78 (7th Cir. 2007) (upholding a sentencing determination that the defendant's acts created a substantial risk of bodily injury to another person in part because "[d]angerousness is a function of the magnitude of the harm that will occur if danger materializes and the probability that it will materialize")).

As Judge Posner has explained:

> Statistical analysis of sex crimes has shown that *the best predictor of recidivism is not deportment at an interview but sexual interest in children.*   R. Karl Hanson, Kelley E. Morton & Andrew J.R. Harris, "Sexual Offender Recidivism Risk: What We Know and What We Need to Know," 989 Annals of the N.Y. Academy of Sciences 154, 157 (2003) (tab.1).

*United States v. Garthus*, 652 F.3d 715, 720 (7th Cir. 2011) (emphasis added).   Dr. Hillard's Report and the record in this case remove any doubt that Defendant is sexually attracted to and aroused by children.   Dr. Hillard diagnosed Defendant with "Pedophilic Disorder" with a sexual attraction to minor females.   Hillard Report, p. 9; *see also id*., pp. 6-7 ("Referring to himself as 'sick,' Mr. Eckstrom

described a shift in his sexual preference. Prior to the escalation of his sexual abuse of his daughter, [he] had maintained interest in and experienced sexual satisfaction with adult females. However, due to his preoccupation with child pornography and sexual involvement with his daughter, he began experiencing difficulty having sex with adult females . . . . [and] could not become erect.").   Importantly, Dr. Hillard also describes Defendant as **"one of the most serious pedophilic offenders [he has] evaluated."**  *Id.*, p. 10 (Emphasis added).

Dr. Hillard's conclusions are supported by Defendant's admissions. *See, e.g.,* PSR ¶ 21 ("Eckstrom stated that his sexual attraction is to girls who have some breast development, though he admitted to looking at 'plenty' of child pornography featuring younger children. Eckstrom admitted that he would masturbate while looking at child pornography."); *Id.* ¶ 23 ("Eckstrom admitted that he looked at Jane Doe 2 and Jane Doe 3 while they were sleeping and would masturbate while watching them.").   The child pornography Defendant produced and the commercial child pornography he received and possessed likewise reflect his stated preference for prepubescent girls.   "An offender's pornography and erotica collection is the single best indicator of what he wants to do." Kenneth V. Lanning, CHILD MOLESTERS: A BEHAVIORAL ANALYSIS FOR PROFESSIONALS INVESTIGATING THE SEXUAL EXPLOITATION OF CHILDREN, 107 (5TH ED. 2010).

But perhaps most troubling is Defendant's *inability to control* his urge to view and produce child pornography. *See, e.g.,* PSR ¶ 21 ("Eckstrom admitted that he

20

didn't know how to stop looking at [child pornography]."); *id.* ¶ 178 ("Although unable to completely stop his conduct, Mr. Eckstrom . . . attempted to stop."); Hillard Report, p. 4 ("Describing himself as 'sick,' he said he was addicted to child pornography, alcohol, and marijuana, and stayed home [from work] to view, organize, and exchange child pornography on the Internet."); *id.*, p. 6 ("He said he became anxious that he was going to escalate abuse of [Jane Does 2 and 3] and consequently, asked [their mother] to move out."); *id.*, p. 8 ("Due to marijuana and alcohol abuse and his compulsion to view child pornography, Mr. Eckstrom began to miss work.").

Once this Court witnesses a sampling of Defendant's crimes, it will be uniquely positioned to appreciate and weigh the factors set forth in 18 U.S.C. § 3553(a), particularly those assessing the nature and seriousness of the offenses, and the need to promote respect for the law and to provide just punishment, as well as specific and general deterrence. The government submits that no amount of jailhouse certificates, no record of employment, and no character letter can overshadow the images and videos of Defendant engaging in sex act after sex act with his own daughter and sexually abusing and exploiting Jane Does 2 and 3. This is one case where neither the seriousness of the offense conduct, nor the risk of danger the defendant poses to society, can be overstated.

> [T]he more serious the criminal conduct is the greater the need for retribution and the longer the sentence should be. The seriousness of a crime varies directly with the harm it causes or threatens. It follows that the greater the harm the more serious the crime, and the longer the sentence should be for the punishment to fit the crime. As we have stated before, "[c]hild sex crimes are among the most egregious and

21

> despicable of societal and criminal offenses."   *United States v. Sarras*, 575 F.3d 1191, 1220 (11th Cir. 2009) (affirming as reasonable a 100-year sentence for an offender with no criminal history who sexually abused a 13-year-old girl and took photos of it).

*Irey,* 612 F.3d at 1206.   "[T]he deterrence objective of sentencing is 'particularly compelling in the child pornography context'" because "imposing a lighter sentence . . . 'tends to undermine the purpose of general deterrence and, in turn, tends to increase (in some palpable if unmeasurable way) the child pornography market.'" *Id.* at 1211 (quoting *United States v. Pugh*, 515 F.3d 1179 (11th Cir. 2008)).

The Seventh Circuit has urged district courts "to give respectful attention to Congress' view that child pornography offenses are serious offenses deserving serious sanctions." *United States v. Grigg*, 442 F.3d 560, 564-565 (7th Cir. 2006). The Seventh Circuit has consistently upheld "lengthy sentences for defendants involved in producing child pornography, even where the victims were not molested in the process." *United States v. Klug*, 670 F.3d 797, 800 (7th Cir. 2012).   In *United States v. Noel*, 581 F.3d 490 (7th Cir. 2009), the court upheld an 80-year sentence where a defendant, while babysitting his stepbrother's child, abused his position of trust and took nude photos of the child while he slept. *See also United States v. Boroczk*, 705 F.3d 616, 622-623 (7th Cir. 2013) (affirming 70-year sentence in production case where the defendant will be first eligible for release from prison when he is 93 years old) (noting that the district court implicitly rejected the defendant's claim that "the risk of re-offending decreases with advancing age").

And life or *de facto* life sentences have been upheld in this Circuit when

22

hands-on sexual abuse is proven. *See, e.g., United States v. Jines,* 597 Fed. Appx. 886, 888 (7th Cir. 2015) (finding life-equivalent sentence reasonable for defendant who sexually assaulted and videotaped his daughter between the ages of 8 and 13); *United States v. Hodge,* 729 F.3d 717 (7th Cir. 2013) (finding reasonable 1,380-month sentence for production and other child pornography crimes, including the abuse of a 9 year-old girl); *United States v. Chapman*, 694 F.3d 908, 916 (7th Cir. 2012) (life equivalent sentence was "consistent with the gravity of [the defendant's] conduct" where he lured 12 to 16 year-old minors with drugs and alcohol and filmed them engaging in sexual acts with one another); *United States v. Metzger,* 411 Fed. Appx. 1 (7th Cir. 2010) (affirming 235-year sentence for offender who possessed a large quantity of child pornography and sexually abused and exploited three victims aged eight to 11 by sexually touching them, videotaping them using vibrators, and encouraging them to engage in sexual contact with each other and him).

Other federal circuit courts have likewise upheld lengthy sentences in similar cases. *See e.g., United States v. Goodale,* 2013 WL 6847032 (8th Cir. Dec. 30, 2013) (life sentence); *United State v. Hamilton,* 548 Fed. Appx. 728 (2d Cir. 2013) (unpublished) (1,800-month sentence); *United States v. Herrick*, 512 Fed. Appx. (6th Cir. 2013) (unpublished) (1,140-month sentence); *Sarras,* 575 F.3d 1191 (100-year sentence); *United States v. Paton*, 535 F.3d 829 (8th Cir. 2008) (life sentence); *United States v. Betcher*, 534 F.3d 820, 827-28 (8th Cir. 2008) (750-year sentence); *United States v. Paton*, 535 F.3d 829, 837-38 (8th Cir. 2008) (life sentence); *United States v.*

*Johnson*, 451 F.3d 1239, 1244 (11th Cir. 2006) (140-year sentence).

For years prosecutors and law enforcement have been warning Congress, the courts and the public that the content of the child pornography material available online is growing more explicit, the sexual acts more violent, and the children depicted younger and more vulnerable.   This case, as shocking as it is, is simply one of many across the country.   As the Hon. John R. Adams explained in *United States v. Cunningham*, 680 F.Supp.2d 844, 847 (N.D. Ohio, 2010), quoting Nelson Mandela: "There can be no keener revelation of a society's soul than the way in which it treats its children."   Judge Adams continued: "[g]iven the recent statistics surrounding child pornography, we are living in a country that is losing its soul."   *Id*.

## CONCLUSION

WHEREFORE, for the reasons explained herein and in Probation's Presentence Report, the government respectfully suggests that the only sentence sufficient but not greater than necessary to adequately address the factors set forth in 18 U.S.C. § 3553(a) is a lifetime equivalent term of incarceration, followed by lifetime supervised release.   That sentence is appropriate based upon the nature and circumstances of Defendant's offense conduct and the seriousness of his crimes; it is necessary to promote respect for the law and just punishment for the offenses; it will afford adequate deterrence to future criminal conduct of this nature and protect the public from further crimes of Defendant; and it will avoid unwarranted sentence disparities with defendants with similar records found guilty of similar conduct.

24

Respectfully submitted,

DAVID CAPP
United States Attorney

By:     _/ S /   Jill Rochelle Koster_____
JILL ROCHELLE KOSTER
Assistant United States Attorney
5400 Federal Plaza, Suite 1500
Hammond, Indiana 46320
(219) 937-5500

---

## CERTIFICATE OF SERVICE

I hereby certify that on May 7, 2015, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which sent notification of such filing to defense counsel of record.

By:     _/ S /   Jill Rochelle Koster_____
JILL ROCHELLE KOSTER
Assistant United States Attorney
5400 Federal Plaza, Suite 1500
Hammond, Indiana 46320
(219) 937-5500