# In The Matter Of:

*USA v.*
*DANIEL THOMAS ECKSTROM*

---

*2:13-CR-84*
*May 12, 2015*
*AMENDED TRANSCRIPT AS OF 7/29/15*

---

*BOSS REPORTERS*
*Gary \* Merrillville \* Valparaiso, Indiana*
*3893 East Lincoln Highway (Rt. 30)*
*Merrillville, Indiana 46410*
*(219) 769-9090*



Original File 05-12-15 USA v ECKSTROM AMENDED.txt
Min-U-Script® with Word Index

```
 1              IN THE UNITED STATES DISTRICT COURT
             FOR THE NORTHERN DISTRICT OF INDIANA
 2                     HAMMOND DIVISION

 3   UNITED STATES OF AMERICA,   )
                                 )
 4          Plaintiff,           )
                                 )  Cause No.
 5       vs.                     )  2:13-CR-84
                                 )  May 12, 2015
 6   DANIEL THOMAS ECKSTROM,     )  10:20 a.m.
                                 )
 7          Defendant.           )

 8        AMENDED TRANSCRIPT OF PROCEEDINGS - Sentencing
             BEFORE THE HONORABLE PHILIP P. SIMON
 9
     APPEARANCES:
10
     For the Plaintiff:          JILL ROCHELLE KOSTER, AUSA
11                               & ABIZER ZANZI, AUSA
                                 U. S. Attorney's Office
12                               5400 Federal Plaza, Suite 1500
                                 Hammond, Indiana  46320
13

14   For the Defendant:         PAUL JEFFREY SCHLESINGER, ESQ.
                                 8396 Mississippi Street,
15                               Suite G
                                 Merrillville, Indiana  46410
16
     Also Present:              MS. HASTI BARAHMAND, ESQ.
17                              MS. JOAN AKALAONU, ESQ.
                                 Loyola Civitas Childlaw Clinic
18

19   Court Reporter:            BOSS Reporters
                                 By: Pamela S. Owen, CSR, RPR
20                               650 S. Lake Street, Suite D
                                 Gary, Indiana  46403
21                               (219) 769-9090
                                 Scheduling@bossporters.com
22

23

24

25
```

1                    I N D E X

2

3               E X H I B I T S

4    NUMBER                          ADMITTED

5    Gov. 1, 2 & 3................................43                          1

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1

2      (In open court.)

3                         * * * * *

4           THE COURT:  You can be seated.  Morning, everyone.

5   All right.  We're on the record in Cause No. 2:13-CR-84,

6   "United States v. Daniel Eckstrom."  We're here for the

7   sentencing of the defendant.  Mr. Eckstrom is present with his

8   lawyer, Jeff Schlesinger; and Jill Koster is here for the

9   government.  Also Abizer Zanzi is here for the government, as

10  well.  Can you introduce who you have there, as well?

11          MS. KOSTER:  Yes, Your Honor.  Here on behalf of the

12  victim are two of her attorneys, Hasti Barahmand from the

13  Chicago --

14          MS. BARAHMAND:  Yes, good morning, Your Honor.  I'm

15  with the Loyola Civitas Childlaw Clinic on behalf of the minor

16  victim identified as Jane Doe 1.

17          THE COURT:  Okay.

18          MS. KOSTER:  And with her is Joan Akalaonu, who's a

19  student at the school there and -- and licensed attorney in

20  Illinois.

21          THE COURT:  Okay.  Good to see you all.  Welcome.

22              All right.  Mr. Eckstrom appeared before me back

23  on January 7th of last year and pled guilty to nine counts of

24  the nine-count indictment; Counts I through VII charging him

25  with production of child pornography, Count VIII charging him

1  with distribution of child pornography, and Count IX charging

2  him with possession of child pornography.

3             I adjudged the defendant guilty on that plea

4  back on that date and I ordered the preparation of a

5  Presentence Report.  I've received the Presentence Report and

6  a whole host of other information.  So I'm going to try to

7  delineate on the record what I believe I have before me, and

8  you can correct me if I'm wrong.

9             But in preparation for the sentencing, I, of

10  course, have reviewed the Presentence Report.  The first

11  addendum to the Presentence Report, where there's several

12  objections that are laid out in that.  I also have a -- there

13  was a second addendum to the Presentence Report.  That was

14  Document No. 77.  I'll talk a little bit more about that in a

15  second.

16             Attached to the Presentence Report there were a

17  number of documents filed.  There's Document No. 70-1

18  through -- then there's a 70-2.  That's the Victim Impact

19  Statement from Jane Doe No. 1.  There's 70-3, which is another

20  sort of a question-and-answer victim impact statement from

21  Jane Doe No. 1.  There's Document 70-4.  That's a letter

22  written to me by the victim -- the mother of Jane Doe No. 1,

23  the victim's mom.  70-5 is a report from Smith Economics

24  Group.  70-6 is a report from the University of Utah relating

25  to another victim, who goes by the name of Andrew or Andy.

1  That's one of the victims on the possession counts, as I

2  understand it.  70-7 is a Curriculum Vitae of the person who

3  had prepared that report in 70-6.

4           So let me just at the outset -- I know there's

5  other stuff I'm going to get to here in a minute, but let me

6  just ask you at the outset, Miss Koster, has Andy, who I'm

7  referencing in Docket Entry 70-6, I believe it was, has he, in

8  fact, withdrawn his request for restitution?  You had made a

9  reference to that somewhere along the way here.

10      MS. KOSTER:  I did, Judge.  Approximately a week ago

11  I emailed the Court to inform the Court that at this time the

12  court need not review 70-5, 6 or 7, those related to Andy

13  because I anticipated that Andy's attorneys, once they

14  understand the nature of this case and the fact that the

15  victim in this case is seeking restitution, that should be

16  paid out first and foremost.  I think they'll agree to that.

17  I think that they will withdraw the request for restitution.

18           I've left multiple voicemails for Andy's

19  attorneys.  I have not yet received a return callback.  Their

20  voicemail says it can take up to a week to receive a return

21  call.  I anticipate that they will withdraw that request for

22  restitution.  What I would ask the Court today is pursuant to

23  18 U.S.C. 3664(d)(5), if you would leave open the restitution

24  request as to Andy for the 90-day period that Congress

25  permits, and I will -- if Andy decides to pursue restitution

1  in this case, over my objection and request that they

2  withdraw, then I will file something with the Court, and then

3  we can pursue that matter separately.

4          THE COURT:  Tell me that -- I don't want to have to

5  look it up.  Tell me again the citation.  It's 3663(d) what?

6          MS. KOSTER:  3664(d)(5).

7          THE COURT:  4(d)(5).  Okay.  Let me ask you another

8  question:  Am I correct that other than this question about

9  Andy, Jane Doe No. 2 and Jane Doe No. 3 have not filed a

10 request for restitution; is that correct?

11         MS. KOSTER:  That is correct.

12         THE COURT:  Okay.

13         MS. KOSTER:  And, Your Honor, before we move on, may

14 we inquire whether the defense objects to Andy receiving the

15 90-day extension?

16         THE COURT:  I was just going to do that.

17             Mr. Schlesinger, do you have any objection to

18 that?

19         MR. SCHLESINGER:  I was unaware that they had not

20 responded prior to this time.  I know Miss Koster had told you

21 that she was asking them.  My only concern -- I guess from

22 what I've been hearing, my concern with that report, which was

23 submitted well before Jane Doe 1's, was they did apportion the

24 damages to very -- everyone they had found in possession or

25 had been charged.  And so the restitution amount is only

1  $25,000.

2          My problem is that the costs of preparing the

3  request were $30,000, which was included in the request, and I

4  think it's because they asked for all the costs --

5          THE COURT:  In each case?

6          MR. SCHLESINGER:  Each case, right.  But apportioned

7  the restitution.  Given the circumstances in the case, it's

8  not going to make any difference, in my opinion, but --

9          THE COURT:  So can we defer this issue for 90 days?

10          MR. SCHLESINGER:  Yeah.  That's fine.

11          THE COURT:  And then hope that Andy, quote, unquote,

12  with no disrespect to that victim, withdraws his restitution.

13  If he doesn't, then we'll -- I'll allow supplemental briefing

14  on the issue, and then I can amend the restitution order if I

15  believe it to be appropriate.

16          MR. SCHLESINGER:  I just didn't want it to be an

17  automatic, and that's my only concern about the order.

18          THE COURT:  Okay.  So it does sound like you all are

19  in agreement that we can delay that issue pending what Andy's

20  decision ultimately is.

21          MR. SCHLESINGER:  I will not object to the extension

22  for that purpose.

23          THE COURT:  Okay.

24          MS. KOSTER:  Thank you, Your Honor.

25          THE COURT:  Okay.  So let me just continue to just

1  delineate, for the record, what I have reviewed.

2          So as I mentioned, there was a second addendum

3  to the Presentence Report and that was Document 77.  And

4  attached to that was Document No. 77-1.  That was the report

5  from the economist about the loss -- the potential loss that

6  the victim in our case, Jane Doe No. 1, would sustain for the

7  duration of her life.  I've reviewed that report.

8          In addition, there's 77-2.  That's the

9  psychological evaluation that was prepared by Dr. Clark, who's

10  a PsyD.  I've reviewed that report.  It's a report on the

11  psychological condition of Jane Doe No. 1.  So that is what

12  was encompassed in the second addendum to the Presentence

13  Report, which I have reviewed.

14          But the government had also filed a notice

15  asking the Court to do an in camera review of a selected

16  sampling of some of the material involved in this case.  I did

17  do that review yesterday in my chambers.  An agent from

18  Homeland Security brought up a secured computer, and I did a

19  review of the material that the government requested that I

20  review.

21          In addition to that, I have received a series of

22  sentencing memoranda.  So let me just state on the record what

23  I believe I've received, and you can correct me if I'm wrong.

24          Back when we were going to sentence the

25  defendant last September, Mr. Schlesinger filed a Sentencing

1  Memorandum.  That was Document No. 57.  Then he filed

2  Supplemental Sentencing Memorandum a week ago or so.  That's

3  Document 75.

4          The government filed its own Sentencing

5  Memorandum on May 7th.  That's Document 78.

6          And then there was a sub -- Second Supplemental

7  Sentencing Memorandum filed last night by the defendant.  And

8  I don't have that in front of me, so I don't have the docket

9  number.  That was the brief one that dealt with the Eighth

10 Amendment Issue.  You understand what I'm saying?

11         MR. SCHLESINGER:  Right.

12         THE COURT:  And then the government filed,

13 essentially, a response to that, which they termed,

14 "Supplemental government Sentencing Memorandum."  That's

15 Document No. 80.  So everything that's attached to everything

16 that I just referenced:  Including letters, information from

17 the jail where Mr. Eckstrom is being held, all of that

18 material I have reviewed in advance of the hearing today.

19         So do both sides agree that that is sort of the

20 universe of information that I now have before me?

21         MR. SCHLESINGER:  Yes.

22         THE COURT:  Miss Koster?

23         MS. KOSTER:  In addition to the PSR, yes.

24         THE COURT:  I think I referenced that.

25         MS. KOSTER:  Okay.

1          THE COURT:  Yeah.

2              Mr. Schlesinger, you agree with that?

3          MR. SCHLESINGER:  Yes, sir.  I've sent attachments to

4  my memorandum, the letters and the --

5          THE COURT:  Yeah.  That's what I was referencing

6  earlier when I mentioned that -- all attachments to everything

7  I identified on the record, I've also reviewed.  So --

8          MR. SCHLESINGER:  I did not see the Government's

9  response to my last sentencing memo filed yesterday.  I don't

10  know if you want to direct -- I don't think it's going to be

11  an issue the Court really needs to even consider today.

12         THE COURT:  Well, I'll give you an opportunity to

13  review that.

14         MS. KOSTER:  I have a copy, Your Honor.

15         THE COURT:  If you would, Miss Koster, just give

16  Mr. Schlesinger a copy.

17         MS. KOSTER:  (Counsel complying).

18         THE COURT:  Okay.  So Mr. Schlesinger, do you want to

19  take a moment just to review that?

20         MR. SCHLESINGER:  I don't believe I -- I see a number

21  of cases cited here.  I'm not going to be able to read them

22  all, obviously, today.  I think, just looking at the first

23  page, it seems to say exactly what I did (sic) concede, but

24  there is no -- Eighth Amendment Challenge has been sustained.

25  Again, reviewing the cases in the Government's memo, it was

1 addressed pretty regularly and denied.  So I just didn't want

2 to waive the constitutional issues is my concern.

3        THE COURT:  Understood.  Well, let me ask this,

4 Mr. Schlesinger:  Did both you and your client receive a copy

5 of the Presentence Report and the addenda -- both addenda

6 before the hearing today?

7        MR. SCHLESINGER:  Yes.

8        THE COURT:  Mr. Eckstrom, did you have a chance to

9 review the Presentence Report and go over its contents and the

10 addendum with your lawyer, Mr. Schlesinger?

11        THE DEFENDANT:  Yes, Your Honor.

12        THE COURT:  All right.  Miss Koster, I assume the

13 government also received the report and the addendum sometime

14 before today's hearing.

15        MS. KOSTER:  We did, Your Honor.

16        THE COURT:  All right.  The Presentence Report and

17 the addenda are placed in the record under seal.  It's

18 directed that if an appeal is taken, counsel, on appeal, shall

19 be permitted access to the sealed report.

20            It's further directed that counsel, on appeal,

21 are not permitted access to the recommendation section of that

22 report.

23            The addenda to the Presentence Report sets forth

24 the objections that counsel has raised that need to be

25 resolved at the hearing.  In addition to the addendum having

1   some objections, some additional objections are set forth in

2   the Sentencing Memoranda.  So between those two documents,

3   does that sort of identify everything that is in dispute?

4            Mr. Schlesinger?

5            MR. SCHLESINGER:  Yes.

6            THE COURT:  Miss Koster?

7            MS. KOSTER:  Yes, Your Honor.

8            THE COURT:  All right.  Would both of you agree that

9   the factual statements contained in the Presentence Report,

10  other than what's identified in either the addenda or in the

11  Sentencing Memorandum, is everything else materially accurate?

12           Miss Koster?

13           MS. KOSTER:  Yes, Your Honor.

14           THE COURT:  Mr. Schlesinger?

15           MR. SCHLESINGER:  Yes, Your Honor.

16           THE COURT:  All right.  So before we kind of launch

17  into this, I guess let me talk to you first, Miss Koster.  Can

18  you give me a preview of what you're intending to do today,

19  and you, as well, Mr. Schlesinger, so I can get a lay of the

20  land here?

21           MS. KOSTER:  My intention is to play a brief

22  PowerPoint, which will illustrate for the Court the

23  proliferation of the child pornography that the defendant

24  produced and distributed.  Proliferation being across the

25  United States to other individuals after he distributed it.

1  And I think that's relevant to the harm to the victim in this

2  case and also to the seriousness of the offense.

3            And then I plan to turn over the presentation to

4  the counsel for the victims -- excuse me, counsel for the

5  Victim, Jane Doe 1, who is going to give about a 10- or

6  15-minute presentation to the Court regarding the harm to

7  Jane Doe 1.

8            Unless there are new arguments made in support

9  of the objections to the Presentence Report, I don't plan on

10 arguing further on those.  I stand on my filing.  Again, if

11 arguments are made, I will address those.

12      THE COURT:  Okay.  I'll probably go through each of

13 them, and I'll ask for your position just so that I can get

14 some context here.

15            Mr. Schlesinger, how about from your point of

16 view?

17      MR. SCHLESINGER:  Your Honor, I went through the

18 Sentencing Memoranda last night and the Presentence Report.  I

19 believe there's still four areas of objections that we want to

20 make and argue.  And they have kind of evolved because the

21 Presentence Report has been changed to a factual basis where

22 some of the enhancements, the government has suggested

23 possible additional theories, too.  So I think the Court needs

24 to make a determination.  We can see that even if all of our

25 objections are granted, the guidelines confer a life sentence.

1  I have some --

2        THE COURT:  Even if you're correct on all of your

3  guideline computations that the -- your belief is that the

4  offense level, the final offense level, would be 51; is that

5  correct?  I believe that's --

6        MR. SCHLESINGER:  Well, but it's reduced to 43, I

7  think?  We're both above 43.

8        THE COURT:  It would be 51, and theirs is 58, I

9  believe.

10        MR. SCHLESINGER:  Right.

11        THE COURT:  So 43, of course, being the maximum.  And

12  so this is, in some way, an academic discussion.  But I do

13  think that I still need to properly compute the guidelines for

14  the record purposes.

15              Okay.  So why don't we start through that

16  process?  And then I'll hear, you know, whatever you want to

17  present by way of victim impact information, Miss Koster.  And

18  then I'll give both sides a chance to do their allocation.

19  All right?  Does that seem like a reasonable way to proceed

20  here?

21        MR. SCHLESINGER:  Yes.

22        THE COURT:  Okay.  So let's look to the objections to

23  the Presentence Report that have been raised by the defendant.

24              Okay.  So let's focus on the addendum first, and

25  then the Sentencing Memorandum has a whole host of additional

1  objections.

2          So the addendum to the Presentence Report, this

3  is Document 71.  Mr. Schlesinger, you object to Paragraphs 41,

4  51, 61, 71, 89, and 100.  And all of these objections relate

5  to the enhancement under 2G2.1(b)(4).  That's the enhancement

6  that relates to the offense involved material that portrays

7  sadistic or masochistic conduct or other depictions of

8  violence increased by four levels.  So I'll hear from you on

9  anything that you want to present as it relates to those

10  enhancements.

11          MR. SCHLESINGER:  Your Honor, sorry.  It's not the

12  first thing on my list, but I do have it.

13          The problem with those enhancements is that they

14  may be based upon the same conduct as another enhancement

15  pursuant to 2G2.1(b)(2)(A).  Section 2 has two potential

16  enhancements, two levels for a sexual act or sexual contact.

17          Section B has the commission of a sexual act and

18  conduct described in 18 U.S.C 2241(a) or (b), which provides

19  for a four-level enhancement.  I believe that in all cases a

20  four-level enhancement was applied; and then in addition,

21  there was another four levels for sadistic or masochistic

22  conduct.

23          Now, our objection is based upon the fact that

24  the same conduct was used to establish either the commission

25  of sexual act or the conduct described in 18 U.S.C 2241 was

1 the same basis.

2          I did cite the Court to the Vizcarra case,

3 Vizcarra case, I believe, in 7th Circuit, which does hold that

4 multiple enhancements are permissible if they're not

5 specifically prohibited by the guidelines.  However, our

6 contention is that the guidelines do specifically prohibit

7 that because these are the same subsection and -- the -- you

8 know, notes to -- I have trouble finding it now.  Oh, I'm

9 sorry.  The comments to U.S.-- the sentencing guideline 1B1.1

10 specifically state that within each specific offense

11 characteristic subsection -- and these would be within the

12 same subsection -- offense level adjustments are alternate.

13 Only the one that best describes the conduct is used.

14          So in some cases, the Probation Office -- well

15 they're -- some cases they applied the enhancement for vaginal

16 or anal penetration.  But that is the same basis as the sexual

17 conduct, which was the basis for the enhancement under

18 2G2.1(b)(1) or (2), and that is the sexual contact.

19          They did also specify -- and there is -- there

20 is a case cited by the government, Newsom, I believe -- no,

21 I'm sorry.  I am confusing --

22          THE COURT:  That's the Gall (sic)--

23          MR. SCHLESINGER:  That's the Gall (sic) agreement

24 one.  Yeah.  I'm sorry, but the --

25          THE COURT:  Can I stop you for a second?

1        MR. SCHLESINGER:  Sure.

2        THE COURT:  I'm not understanding what you're saying

3  about you can only apply one in a subsection of the

4  guidelines.  So under that theory, you're telling me, for

5  example, you couldn't apply (b)(1) and (b)(5)?  (b)(1) is --

6  if the offense involved a minor who was, say, less than 12

7  years of age; and (b)(5) is if it was a parent who did the

8  harm.  Under your theory, you couldn't apply both of those

9  subsections.  Is that what you're telling me?

10       MR. SCHLESINGER:  No.  That one I think would

11  qualify.  Again, the Court has to interpret the note in 1B1,

12  but what it says is, "within each specific offense

13  characteristic subsection."  I'm not sure --

14       THE COURT:  The subsection would be -- for example,

15  under (b)(2), you can only apply (A) or (B).

16       MR. SCHLESINGER:  Right.  Okay.  Well, if that's the

17  Court's interpretation, then I am incorrect, and the Court

18  could apply both subsections.

19            We would still maintain our objection based on

20  the fact that the same conduct which has been permitted by the

21  7th Circuit is the basis for the enhancement under (b)(1) or

22  (2) and Section 4.

23       THE COURT:  Miss Koster, do you want to be heard at

24  all on that?

25       MS. KOSTER:  I agree with Your Honor's interpretation

1  of 1B1.1, Note (4)(a), and I think it's specified.  You can

2  see in 2G2.1(b)(2) it says, "apply the greater," referring to

3  the two subsections within that specific offense

4  characteristic.  And I think that's specifically what the

5  Sentencing Commission was referencing when they say, "the

6  offense level adjustments are alternative; only the one that

7  best describes is to be used."

8          THE COURT:  That's in 1B1.10?  Is that what you were

9  just reading from?

10         MS. KOSTER:  1B1.1, Application Notes (4)(A).  It's

11  the second sentence.

12         THE COURT:  Okay.  Yeah.

13         MS. KOSTER:  The first sentence in that application

14  note says, "The offense level adjustments from more than one

15  specific offense characteristic," which would refer to what

16  the Court was referencing; for example, (b)(2) -- I'm sorry,

17  (b)(1) and (b)(5).  Those are two separate specific offense

18  characteristics.  "The offense levels (sic) from more than one

19  specific offense characteristic within an offense guideline

20  are applied cumulatively (added together) unless the guideline

21  specifies that only the greater is to be used."  That's not

22  the case with regard to the S&M enhancement in (b)(4) and the

23  application of the sex act, multiple enhancements set forth in

24  (b)(2).  And so there is no double-counting issue for both of

25  them to be applied.  Further in Vizcarra, the 7th Circuit

1 confirmed this, that these both can be applied.

2       I would also note, alternatively, that if we

3 were talking about any one specific count that was based on

4 one image of child pornography that showed both a sex act and

5 satisfied the S&M definition, perhaps factually, not legally,

6 but factually, he would have a point. But none of the charges

7 brought in this case rely on a single image of child

8 pornography. There are, for every count in the indictment,

9 numerous images that would satisfy the S&M enhancement and

10 images that would satisfy the sex act enhancements in Section

11 2G2.1 (b)(2), either (A) or (B). So for example, with respect

12 to Jane Doe 2, there are images of the defendant engaging in a

13 sex act with a child; that is, images, video, Your Honor saw

14 of the defendant touching her vagina while she sits and eats a

15 brownie on his lap.

16       There are also, separately, images that depict

17 the defendant engaging in S&M conduct with Jane Doe 2;

18 specifically, photographs that show him putting a vibrator

19 into her vagina, or up against her vagina, penetrating the

20 vagina based on the legal definition of that term.

21       So even as a factual matter, we are not double

22 counting the same image, same conduct for two different

23 enhancements.

24      THE COURT: Mr. Schlesinger, anything else?

25      MR. SCHLESINGER: I think the Court needs to

1  identify, because the Presentence Report, I think, excludes

2  certain conduct is qualified under the sadistic and

3  masochistic conduct.  The government suggested possible other

4  conduct.  The Court needs to identify that for purposes of

5  appeal so that we can raise the potential double-counting

6  issue.

7          THE COURT:  Okay.  I'm going to overrule the

8  objection.  I believe that 2G2.1(b)(4) applies in this case,

9  that the material that I reviewed yesterday portrays sadistic

10 or masochistic conduct.  In addition, I will note that (b)(4)

11 can also be achieved or applied if there's depictions of

12 violence.  And from what I saw in the video yesterday, there

13 were numerous instances where the Victim Jane Doe was in very

14 much discomfort -- that understates it -- was essentially

15 crying and yelling and wanting this to stop, and there's

16 points where the defendant is wrestling with Jane Doe No. 1

17 while he is having sex with her.  This is, in my view, the

18 quintessence of the depiction of violence.

19          And so whether it's characterized as sadistic or

20 masochistic conduct, for -- the examples that Miss Koster

21 pointed out, the use of vibrators and dildos and Crayons and

22 all sorts of other awful things, I believe the sadistic or

23 masochistic conduct application applies; but in addition to

24 that, I believe the material is -- depicts violence, as well,

25 such that the four-level increase is appropriate.  So those

1  objections are overruled.

2             Okay.  I believe that the second objection --

3  well, no.  So the second objection in the addendum to the

4  Presentence Report relates to Paragraphs 102 and 111.  These

5  are enhancements that were given for vulnerable victim under

6  3A1.1(b)(1), and these were applied to Victim Jane Doe No. 2

7  or Jane Doe No. 3, if I'm remembering correctly.  So the

8  defendant has objected to the application of that enhancement,

9  and it's in Paragraphs 102 and 111.

10            So Mr. Schlesinger, I'll hear from you on that

11 objection.

12            MR. SCHLESINGER:  Your Honor, we do wish to raise an

13 objection based upon the fact that any minor will -- is

14 already categorically a vulnerable victim by definition of law

15 and so in position -- this enhancement would constitute double

16 counting.  They also would apply in every case of child

17 pornography.  The --

18            THE COURT:  I think the point here is that they're

19 sleeping at the time, and so that makes them especially

20 vulnerable because they can't even sort of try to run away or

21 protect themselves in some way.

22            MR. SCHLESINGER:  Right.  But there are --

23            THE COURT:  Can you address that?

24            MR. SCHLESINGER:  Well, they're already categorically

25 vulnerable.  And I guess the question is how much more

1  vulnerable can they be?  In the Newsom case, they did address

2  that.  And Newsom dealt with sleeping victims and the --

3  specifically what the Court found was that because the

4  defendant had moved the clothing to expose, I believe, the

5  genitals on one of the victims, that he had some --

6  manipulated; and therefore, the District Court's determination

7  was appropriate.  But the Court did caution that -- they were

8  troubled by the District Court's findings that any victim

9  sleeping would be vulnerable.

10            Now, in review of the materials, which I had an

11 opportunity to see Thursday, I do believe that if the Court

12 follows Newsom, Jane Doe 2 would qualify as a vulnerable

13 victim because the defendant, Mr. Eckstrom, clearly does move

14 her clothing.  You can see that in the pictures.

15            In Jane Doe 3, there is a picture of her

16 sleeping, I believe, with her top pushed up, but I don't think

17 there's any indication that that was done by Mr. Eckstrom.  So

18 we would further object to that.  But basically, our objection

19 is that it would be illogical to assume that the

20 Sentencing Commission would impose enhancements that would

21 apply in every case.  There's no reason for enhancement in the

22 statutory definition.

23       THE COURT:  Well, that's why the vulnerable victim

24 enhancement wasn't applied to the Jane Doe No. 1 situation.

25 Am I right about that?  Is that correct?

1        MS. KOSTER:  Yes, Your Honor.

2        THE COURT:  Yeah.  So it's not applicable in all

3   situations.  There's a unique circumstance here.

4            But, Miss Koster, do you want to be heard at all

5   on this?

6        MS. KOSTER:  Just briefly.

7            The vulnerable victim enhancement is not being

8   applied based on the age of the victims.  That's clear from

9   the PSR.  It's being applied because they're sleeping.  And in

10  Application Note 2 to Guidelines Section 3A1.1, the Commission

11  specifically states that this enhancement can apply to a

12  victim "who is unusually vulnerable due to," and they list

13  age, but also "physical or mental condition...otherwise

14  particularly susceptible to the criminal conduct."  As in

15  Newsom, sleeping, Jane Does 2 and 3 were unusually --

16  particularly susceptible to the criminal conduct in this case

17  because they weren't able to know or defend themselves from

18  what the defendant was doing.  And although defense counsel is

19  right, you cannot see, in the photographs of Jane Doe 3

20  sleeping, the defendant's hand pushing her top up, you do see

21  a series of photographs where the girl's top is normal, she's

22  laying under a blanket, she's fully clothed and covered; and

23  then as the photos progress, you see that her clothing has

24  been pushed up to expose her naked body and to expose her

25  underwear.  And I would submit to Your Honor that based on all

1  the facts and evidence that we have in this case, including

2  the defendant's own confession, that he would watch Jane Does

3  2 and 3 while they were sleeping, he would become sexually

4  aroused by looking at them, he would masturbate while looking

5  at them while they were sleeping, that we can infer that it

6  was the defendant who pushed Jane Doe 3's top up so he could

7  expose her naked body and photograph it while she was

8  sleeping.  And for those reasons, we believe the vulnerable

9  victim enhancements properly apply.

10         THE COURT:  Let me ask you a question.  One of the

11  allegations in the case, and I believe I saw evidence of it

12  yesterday, is that there was a camera secreted in a bathroom

13  and showed one of the victims bathing.

14         MS. KOSTER:  That's correct.

15         THE COURT:  Which victim was that?

16         MS. KOSTER:  Jane Doe 3.

17         THE COURT:  Does that provide another basis?  To me,

18  that -- that strikes me as another basis of vulnerable victim.

19         MS. KOSTER:  I think it would, Your Honor.  I think

20  it would support the application of that enhancement because

21  the child is, by virtue of what she's doing, naked, and she's

22  in a closed room.  You can tell from the video that the door

23  to the room -- in one of the videos, the door is open, but

24  she's able to close the shower curtain.  And based on the

25  placement of the video camera in a closed room, the victim was

1  unaware, obviously, that she was being videotaped, and she was

2  especially vulnerable because of the nature of the activity

3  depicted.  So I would agree that that would present an

4  alternative basis for applying the same enhancement.

5          THE COURT:  Mr. Schlesinger, you'll probably be the

6  last word on this issue.

7          MR. SCHLESINGER:  I guess I would agree with the

8  Court's assessment, but that demonstrates somewhat the problem

9  of applying the vulnerable -- about the shower situation or

10  bath situation that demonstrates somewhat the problem with the

11  vulnerable victim.  We do wish to maintain an objection and

12  just -- one other -- in the Vizcarra situation, which I

13  believe would permit this, whether -- because it would be

14  cumulative, unless it's specifically prohibited.  But in the

15  commentary of the Guidelines 1B.1, Subsection (B), Appendix

16  (sic) Note 4, they use the example of shooting a police

17  officer justifying a double enhancement; one, because it's

18  serious bodily injury, and the other because it's a police

19  officer, which is logical, but the logic, to me, does not fit

20  in this situation because -- well, I guess there are two

21  applications, but the -- again, because the victims are

22  vulnerable to start out with and they're -- the original

23  guideline considers that, that there seems to be no purpose in

24  adding another vulnerable victim.

25          THE COURT:  I'm going to overrule the objection.  I

1  think the vulnerable victim enhancement in Paragraphs 102 and

2  111 are appropriately applied in this case.  Vulnerable victim

3  is under 3A1.1(b)(1), and what that provision states is that

4  if the defendant knew or should have known that the victim of

5  the offense was a vulnerable victim, increase by two levels.

6  And in the Application Notes, No. 2 states that a vulnerable

7  victim means somebody who is unusually vulnerable due to age,

8  physical, or mental condition, or who is otherwise

9  particularly susceptible to the criminal conduct.  And I think

10  under the Newsom analysis, that a child who is sleeping is

11  somebody who's particularly susceptible to criminal conduct.

12          I would also -- I also believe and find that

13  when somebody is taking a bath in a bathroom, believing that

14  they're in the privacy of that room, and unbeknownst to them,

15  they're being videotaped, that makes them especially,

16  particularly susceptible in my way of thinking.  And so I do

17  believe that the application of the vulnerable victim

18  enhancement, as delineated in Paragraphs 102 and 111, is

19  appropriate here.  And I would just note for the record that

20  what distinguishes Jane Doe No. 2 and 3 from Jane Doe No. 1,

21  we see from the Presentence Report and my findings that the

22  vulnerable victim enhancement isn't applying to Jane Doe No. 1

23  but is applying, for the reasons I've stated, to Jane Does

24  No. 2 and 3.

25          And so the vulnerable victim doesn't always

1  apply when the victim is a minor.  It just depends on the

2  circumstances.  And under the circumstances of this case, for

3  the reasons I've stated, I believe it's appropriately given in

4  this case in Paragraphs, again, 102 and 111.

5           Okay.  The last objection deals -- at least in

6  addendum, deals with Paragraph 119.  This is the enhancement

7  pursuant to 4B1.5 of the guidelines.

8           Mr. Schlesinger?

9      MR. SCHLESINGER:  That's regarding the five-level

10 enhancement for pattern sexual activity?

11     THE COURT:  Yeah.  There's a Guideline Section in

12 4B1.5 that says "Repeat and Dangerous Sex Offender Against

13 Minors."

14     MR. SCHLESINGER:  The original presentence did

15 indicate that Mr. Eckstrom had a prior conviction for a sex

16 offense, which was incorrect, and then we objected to that.

17 They did modify it to the other subsection under 4B1.5.

18     THE COURT:  That's Subsection B; correct?

19     MR. SCHLESINGER:  Yes, pattern of sexual activity.

20 And our objection to this is based on the fact -- and I think,

21 frankly, I would admit that Vizcarra would indicate that this

22 enhancement should be applied because it's clearly a different

23 section than the other one, the -- well, the basic counting

24 for the other offenses.  However, our objection is just based

25 on the fact that this would apply in every case of multiple

1  counts, then, if, uh, they would always demonstrate a pattern.

2  And I acknowledge that Mr. Eckstrom's case is among the most

3  serious and the most repeated conducts, but each count -- he

4  admitted each count that the government has evidence on, and

5  he -- though -- each of those counts was incorporated in his

6  initial guideline calculation.  So it appears contrary to

7  logic that the Commission would not only provide for a method

8  of counting each count, but also count at a five-level

9  enhancement because, in this case, there are multiple counts

10 so there was a pattern of sexual activity, if, in fact, the

11 fact -- facts he's charged with constitute a pattern of sexual

12 activity.

13          There are cases -- I know Von Loh is one of

14 them -- that approves of both -- in Von Loh -- however, I

15 think every case has other sexual activities either not

16 charged, not counted.  I think Von Loh had five instances of

17 contact, and he only pled to one.  So I'm not sure how the

18 Presentence Report was done in that case.  The Court did apply

19 that five-level enhancement based upon the charged counts that

20 he did not plead guilty to.  So there is case authority for --

21 contrary to our position.

22          THE COURT:  Yeah.  I'm going to overrule the

23 objection.  I think we have to step back for a second when

24 we're considering the application of 4B1.5(b) and consider

25 that what we're looking at in Chapter 4 of the guidelines is

1  career offenders.  That's what's being punished.

2           Now, the Sentencing Commission has essentially

3  carved out an exception and created an enhancement for

4  somebody who's a repeat sexual offender engaging in prohibited

5  sexual conduct, even if they haven't been previously convicted

6  of that conduct.  And that precisely fits what -- this

7  situation with Mr. Eckstrom.  The record in this case is

8  overwhelming, of course, that he, over a period of five years,

9  repeatedly sexually molested or raped, or whatever term you

10 want to use, Jane Doe No. 1 and also Jane Doe No. 2 and 3; and

11 that repeated conduct amounts to a pattern of activity

12 involving prohibited sexual conduct such that he's being

13 treated as a career offender, in essence.  And that's why the

14 Commission increases the offense level by five.  If he does

15 not, in fact, have a prior conviction, they treat him as if he

16 does.

17          And so I think it's rather straightforward that

18 4B1.5(b) applies, and the defendant is assessed a five-level

19 enhancement for a pattern of activity involving prohibited

20 sexual conduct.

21          Miss Koster, is there anything you wish to add

22 to that?

23     MS. KOSTER:  Just that Your Honor's ruling is

24 consistent with Application Note 4 to 4B1.5, Subsection B,

25 double i, which says that "An occasion of prohibited sexual

 1  conduct may be considered for purposes of Subsection B without

 2  regard to whether the occasion occurred during the course of

 3  the instant offense or resulted in a conviction for the

 4  conduct that occurred on that occasion."  So whether it's part

 5  of his conviction, any one of his convictions, or not, it

 6  counts.

 7          THE COURT:  Okay.  So that's my ruling.  So that's, I

 8  believe, all of the objections that were raised in the

 9  addendum.

10              Now, there were additional objections, I

11  believe, that were raised in the Supplemental Sentencing

12  Memorandum, but maybe we've already covered them.  But I'll

13  give you the opportunity -- Mr. Schlesinger, if I missed any

14  of them, I'll give you the opportunity to argue whatever else

15  you are objecting to by way of the guidelines.  For example, I

16  believe we did not cover Paragraph 39.

17          MR. SCHLESINGER:  Right.

18          THE COURT:  So I'll hear from you on --

19          MR. SCHLESINGER:  I think that's the only -- when I

20  did the supplement, because things had changed, when I did the

21  supplemental memo, I went through it issue by issue and tried

22  to address each one.  That was a -- well, in the -- even the

23  revised Presentence Report still has an enhancement pursuant

24  to 2G2.1(b)(2)(B), which it says is based upon threats of

25  violence and marijuana to lure the minor into commission of a

1  sexual act.  And let me see here.  That, I believe, is the

2  subsection that references United States Statute 22 --

3  18 U.S.C 2241.  Obviously, the threat of violence or marijuana

4  is not -- would not apply under Subsection 1, which is

5  commission of sexual act.  So it must be 2, which is the

6  commission of sexual act, which we concede, and conduct

7  described.  And the conduct described in 2241 is:  "By using

8  force against that other person or by threatening or placing

9  that other person in fear that any person would be subject to

10  death, serious bodily injury, or kidnapping."  Again, various

11  theories have been suggested.  I don't believe the probation

12  officer's application of threat of violence and marijuana

13  meets the definition under 2241; however, I will -- the

14  Court's already addressed the use of force, which was -- I had

15  not seen those videos until, I think, Thursday morning; and I

16  would agree with the Court's assessment that there was force

17  used regarding this count.  I believe this enhancement does

18  apply to Jane Doe 1, so I think it could be applied based on

19  force.

20            THE COURT:  Okay.  Do you wish to say anything,

21  Miss Koster?

22            MS. KOSTER:  No, Your Honor.  He's conceded the

23  point.

24            THE COURT:  Okay.  Sounds like the defendant has

25  conceded the point that this enhancement is at least

1  appropriate because it involves the use of force or the

2  threatened use of force or putting a minor in fear, one or the

3  other.  And so I believe that Paragraph 39 -- it does

4  appropriately enhance the offense level by four because of

5  those threats of violence and the use of force.  So that

6  objection is overruled.

7       MR. SCHLESINGER:  Your Honor, if I -- I think the

8  Court misstated -- my concession is based on the use of force.

9  The Court also said, "threats of violence."  The second

10  subsection is, "threats or placing another person in fear that

11  any person will be subjected to death, serious bodily injury,

12  or kidnapping."  So I don't know the threat of violence.  I

13  just want to clarify that point.

14       THE COURT:  Okay.  I'm still going to rely on both,

15  because in the Victim's Impact Statement, she recounts -- I

16  believe she says it would happen at least three times a week

17  where the defendant would punch her if she got out of line.

18  And I'm going to credit that, and I do believe that -- that

19  subjecting a little girl to that would certainly place the

20  minor in fear that if she doesn't submit, she could be

21  subjected to serious bodily injury.  So whether it's a use of

22  force against the minor, which I'm taking the defendant to

23  concede, or it's the second category of 2241(a) or (b), the

24  threatening or placing a minor in fear, I believe the record

25  supports either of those bases to assess the defendant to

1 four-level enhancement under 2G2.1(b)(2)(B).  So that is

2 overruled.

3              All right.  The objection to 41, I've already

4 ruled on.

5              The next one is an objection to 49, which I

6 believe I've just ruled on, as well.  Is that right,

7 Mr. Schlesinger?

8         MR. SCHLESINGER:  Yes, Your Honor.

9         THE COURT:  Because it's the same objection, just

10 relating to a new -- a new count.  Is that right?

11        MR. SCHLESINGER:  Right.

12        THE COURT:  Okay.  So the objection to 49 is

13 overruled.

14              I've already ruled on objection to Paragraph 51.

15 That is overruled.

16              Paragraph -- the objection to Paragraph 59

17 I've -- I believe I've already given my ruling on that.  Do

18 you agree with that, Mr. Schlesinger?

19        MR. SCHLESINGER:  I think that was the same -- let me

20 take a look at 59.

21        THE COURT:  It deals with 2G2.1(b)(2)(B).  It's the

22 issue we just had a discussion about.

23        MR. SCHLESINGER:  Yeah, I think so.  Yeah.

24        THE COURT:  So that is overruled.

25              Paragraph 61 is the sadistic or masochistic

1  conduct or other depictions of violence, which I believe I've

2  already ruled on, and that is overruled.

3           I want you to stop me here if you want to be

4  heard on any of these.  Okay, Mr. Schlesinger?

5      MR. SCHLESINGER:  Yes.

6      THE COURT:  Paragraph 69 deals with, again, the same

7  issue.  We're now talking about Count III, but it's pursuant

8  to 2G2.1(b)(2)(B) and whether the sexual act involved conduct

9  described in 18 U.S.C 2241(a) or (b).  I believe I've already

10 ruled on that issue.

11          You agree with that, Mr. Schlesinger?

12     MR. SCHLESINGER:  Yes.

13     THE COURT:  Okay.  So that's overruled.

14          Paragraph 71, again, deals with the sadistic or

15 masochistic conduct enhancement, which I believe I've already

16 ruled on.

17          Do you agree with that?

18     MR. SCHLESINGER:  Yes.

19     THE COURT:  So I'm going to overrule Paragraph 71 for

20 the reasons I've already stated.

21          Paragraph 79 and 81, again, involve the same two

22 enhancements.  And I'm going to rely on the record, as I've

23 already stated, and overrule both of those objections.

24          Paragraph 89, again, relates to the

25 2G2.1(b)(2)(B) enhancement.  This is for Count V.  I'm going

 1  to overrule that objection for the reasons that I've

 2  previously stated.

 3              Paragraphs 98 and 100 relate to the enhancement

 4  of -- there was a two-level enhancement under 2G2.1(b)(2)(A).

 5  This relates to the production of child pornography for

 6  Jane Doe No. 2.  There's only a two-level enhancement in that

 7  situation.  For the reasons I've previously stated, I'm going

 8  overrule the objections and adopt the Presentence Report.

 9              And Paragraph 100 is the same issue dealing with

10  sadistic or masochistic conduct.  And this, again, relates to

11  Jane Doe No. 2, and there was evidence that the defendant

12  penetrated the victim vaginally with a vibrator.  I viewed the

13  videos of that behavior.  I believe that that applies.  So

14  unless the defendant wishes to be heard on that --

15              MR. SCHLESINGER:  Your Honor, the -- I don't recall a

16  video of that.  I believe there were still photographs.

17              THE COURT:  I believe that's correct.  I apologize

18  for that.

19              MR. SCHLESINGER:  That's okay.  The vibrator being

20  held close to the vic-- Jane Doe 2's vagina -- I was not able

21  to tell whether it was actually touching her vagina.  I know

22  the government -- or actually, the correct law is that the

23  slightest penetration does constitute penetration.  In my view

24  of the still photograph, you could not determine whether there

25  was penetration.

1          THE COURT:  Okay.  I disagree with that.  My review

2     of the photograph suggests to me that more likely than not,

3     there was penetration as the law defines that, and so I'm

4     going to overrule the objection.  So that's Paragraph 100.

5               I believe I've already discussed the objections

6     to Paragraph 102 and 111.  That's the victim-related

7     adjustment under 3A1.1.  We had an extended discussion on it a

8     few minutes ago.

9               You agree with that, Mr. Schlesinger?

10          MR. SCHLESINGER:  Yes.

11          THE COURT:  So I'm going to overrule those objections

12     for the reasons I previously stated.

13               And again, if there's an objection, I'm now on

14     Page 6 of Document 75.  That's the objection to Paragraph 119.

15     And for the reasons I've previously stated, I believe that the

16     five-level enhancement called for by -- under Chapter 4 of the

17     guidelines applies.

18               And again, I believe we've already had a

19     discussion on that; is that right?

20          MR. SCHLESINGER:  Yes, sir.

21          THE COURT:  Okay.  So for the reasons I've previously

22     stated, that objection is overruled.

23               All right.  Mr. Schlesinger, does that now

24     address all of your guideline objections that you have raised?

25          MR. SCHLESINGER:  Your Honor, I do believe I need

1   to -- an additional objection regarding the 2241 factors, use

2   of force.  And I know the Court did cite to Jane Doe 1's

3   comments about being struck by the defendant.  That is --

4   there are different counts based upon her age, and I guess

5   there are six counts -- or five counts for each year of age

6   she was.  There was no indication when -- I was not able to

7   tell how old she was in the videos where we were conceding

8   force was used.  I guess I would just want to interpose the

9   objection that without knowing how old she was, that -- that

10  enhancement is applied in each of those counts; and even in

11  her statement, I don't think she indicates when that activity

12  occurred.  So we would object to it for that basis, as well.

13          THE COURT:  All right.  Just so I'm making a complete

14  record, what I was referencing was Document No. 77-2.  This is

15  the interview of Jane Doe No. 1, and there's a subheading

16  there about "Abuse History."  And in that, what Jane Doe No. 1

17  recounted was -- Jane noted -- and I'm quoting now, "Jane

18  noted that the abuse happened three or five times a week,

19  nearly daily."  So I think she's saying three or four or five

20  times a week or nearly daily.  "And that the episodes would

21  last an hour maybe."  She described her father forcing her to

22  dress up, tell her what to do and say, gagging her with a

23  ball, and using objects like ties, dildos, a butt plug, and

24  other things.

25              She then goes on to say in the next paragraph,

1   "Jane recalled that her father would punch her over and over

2   again everywhere but her face.  She stated, 'You never knew if

3   he was possibly going to kill you that time or not.'  The

4   physical abuse happened approximately three times a week."

5               So that's what I was getting at when I was

6   referencing the fear that the defendant placed her in and why,

7   in Application Note 2, 2G2.1, "Conduct described in 18 U.S.C

8   2241(a) or (b) is Subpart 2, "threatening or placing the minor

9   in fear, that any person will be subject to death, serious

10  bodily injury," and I think that that conduct is captured in

11  that application note.  So that's the reason for my ruling.

12              All right.  So have I ruled on all of the

13  guideline objections that you have raised, Mr. Schlesinger?

14       MR. SCHLESINGER:  Yes.

15       THE COURT:  All right.  I now adopt the Presentence

16  Report, the Factual Statements in the Presentence Report,

17  and -- to which there were no objections, and I've made my

18  rulings as to the objections to the guideline computations.

19              And so let me now state the guidelines as

20  follows:  There's a total offense level in this case of 43,

21  and the Criminal History Category is 1.  The actual offense

22  level, when you total it all up, based on the rulings that

23  I've just made, is an offense level of 55.  So the initial

24  offense level was 58.  That's under Paragraph 119.  Three

25  points are subtracted for acceptance of responsibility.  But,

1  of course, the guidelines cap the total offense level at 43.

2  So the actual total offense level becomes 43.

3            The Criminal History Category is 1.  So the

4  range -- the guideline provisions call for a life sentence;

5  however, the statutory provisions, Counts I through VII call

6  for a sentence of 15 to 30 years on -- again, on Counts I

7  through VII.  On Count VIII, it's 5 to 20 years.  Count IX,

8  it's zero to ten years.  Supervised release range is five to

9  life on each of the counts.  And the fine range is 25,000 to

10  250,000.

11            So far, is that all accurate?  Miss Koster?

12        MS. KOSTER:  Yes, Your Honor.

13        THE COURT:  Based on my rulings, is that accurate?

14  Mr. Schlesinger?

15        MR. SCHLESINGER:  Yes, Your Honor.

16        THE COURT:  All right.  Let's talk about restitution

17  for a moment.  I was in receipt of a motion filed by the

18  government.  Just give me one second.  I have so much stuff up

19  here.

20            Well, gosh, I can't find it, but I know that

21  there was a motion filed relating to restitution.  Do you

22  happen to know the docket number, just for the record?

23        MS. KOSTER:  Seventy-three, Your Honor.

24        THE COURT:  Okay.  So would you talk to me about what

25  you all have agreed to as it relates to restitution in this

1  case?

2       MS. KOSTER:  Yes, Your Honor.  Essentially, even

3  though the victim has millions of dollars' worth of future

4  losses that she can anticipate as a result of the defendant's

5  conduct and the conduct of other defendants across the country

6  who distributed and received her images of child pornography,

7  it is the victim's prerogative to agree to a settlement amount

8  and especially if the defendant is going to agree to pay that

9  amount.  In this case, the victim and defendant have agreed to

10  a settlement of $250,000 to compensate her for the harm caused

11  by this defendant specifically.

12       The defendant has agreed to pay that amount

13  forthwith; however, I think everybody in the courtroom is

14  aware that the defendant probably doesn't have the means and

15  won't have the means to pay anything close to the amount of

16  restitution he's agreed to pay.  Nonetheless, that's the

17  settlement of the parties, the victim, and the defendant, and

18  the government is satisfied with that result.

19       THE COURT:  Okay.  Mr. Schlesinger, is that true?  Is

20  that the agreement that you've reached with the government as

21  it relates to restitution?

22       MR. SCHLESINGER:  It is, Your Honor.

23       THE COURT:  And Miss Barahmand?

24       MS. BARAHMAND:  Yes, Your Honor.

25       THE COURT:  Are you in agreement with this on behalf

1  of the victim?

2         MS. BARAHMAND:  Yes, Your Honor, we are.

3         THE COURT:  Okay.  All right.  So with that decision,

4  with the people being in agreement on that and accepting that,

5  then the restitution in this case is agreed to, $250,000.  The

6  special assessment total is $900.  That's $100 on each of the

7  nine counts to which the defendant has pled guilty.

8              All right.  Without repeating any of the

9  previously expressed objections, is what I've just stated

10  accurate.  Miss Koster?

11         MS. KOSTER:  Yes, Your Honor.

12         THE COURT:  Mr. Schlesinger?

13         MR. SCHLESINGER:  Yes, Your Honor.

14         THE COURT:  All right.  So let's transition now to

15  the second phase of the sentencing, and I'll hear from either

16  side as to what they wish to present to me as it relates to

17  the 3553(a) factors or anything else that they wish me to

18  consider.

19              So Miss Koster, I'll allow you to go first.

20         MS. KOSTER:  Okay, Your Honor.  My presentation for

21  the time being will be focused on the proliferation of the

22  material due to the defendant's distribution of his homemade

23  videos and images of Jane Does 1 and 2.  I'd like to play a

24  short PowerPoint presentation for the Court.

25         THE COURT:  Fair enough.

1          MS. KOSTER:  So this presentation is in two sections.

2    The first section addresses Jane Doe 2.  She is the young,

3    six-to-seven-year-old victim that is addressed in Count VI of

4    the indictment.

5               The defendant distributed images and videos of

6    Jane Doe 2 to other people.  We know that now because they've

7    been found in investigations elsewhere in the country, and

8    this PowerPoint presentation will show the Court where and

9    when those images have been found.

10   (PowerPoint presentation commences.)

11          THE COURT:  While this is playing, Miss Koster, are

12   you intending to offer this as part of the record?

13          MS. KOSTER:  I can, Your Honor.  I will bring -- I

14   didn't bring with me today, but I will bring color printouts

15   of each slide, and I will mark them, cumulatively,

16   Government's Exhibit 3.

17               Government's Exhibits 1 and 2 will be filed

18   under seal.  They are the child pornography, the binder and

19   the disc, that Court reviewed prior to sentencing.

20          THE COURT:  All right.  Any objection to any of those

21   exhibits?

22          MR. SCHLESINGER:  Not for sentencing purposes,

23   Your Honor.

24          THE COURT:  Okay.  Then 1, 2, and 3 will be admitted.

25   (Government's Exhibit Nos. 1, 2, & 3 admitted.)

1          MS. KOSTER:  And the next series of slides,

2     Your Honor, addresses the proliferation of images and videos

3     depicting Jane Doe 1 since the defendant distributed those

4     images.

5          (PowerPoint presentation commences.)

6          MS. KOSTER:  I want to be clear that the dates that

7     you saw on the slides are the date that the National Center

8     for Missing and Exploited Children received from a law

9     enforcement officer an image or video depicting Jane Doe 1

10    that was recovered from a defendant's computer or other

11    electronic device prior to the date of submission.  So this is

12    not, by any means, to suggest that only 10,528 images of

13    Jane Doe 1 exist in 29 different states in the United States.

14    These are the images and videos that have been recovered to

15    date by law enforcement.

16         THE COURT:  Just so I'm clear, these are images that

17    current defendants in the federal or state system, for that

18    matter, have possessed?

19         MS. KOSTER:  Have been found, yes, to possess.  So

20    they have been recovered.  And as you can see when you watch

21    the slides, the dates become closer and closer in time to one

22    another of when the material has been found and that's because

23    over time, as the material proliferates, more and more

24    defendants who collect this material are likely to possess

25    these images.

1              I don't think it would be a stretch to say that

2   there's probably a person in every single United States who

3   has a photograph or a video of Jane Doe 1 being sexually

4   abused by the defendant and probably in every country across

5   the world, as well.

6              At any given point in time, Your Honor, there

7   are thousands of people on peer-to-peer programs just in the

8   state of Indiana trading child pornography, and we are able to

9   catch and prosecute a very small percentage of those

10  individuals.

11         THE COURT:  Okay.  All right.  Miss Koster, is there

12  anything else that you wish to present by way of evidence

13  or -- you'll have a chance to make your argument, but anything

14  else that you wish to present before I turn it over to the

15  victims' lawyers?

16         MS. KOSTER:  No, Your Honor.

17         THE COURT:  All right.  I'm going to take about a

18  10-minute break at this time to give the court reporter a

19  break.  We'll pick back up, let's say -- let's say a quarter

20  to till 12:00 we'll pick back up.

21     (A brief recess was taken from 11:32 to 11:45.)

22         THE COURT:  We're on the record "United States v.

23  Daniel Eckstrom," 2:13-CR-84.  We're continuing with the

24  sentencing hearing of defendant.  When we left off, I was

25  about to turn the floor over to Miss Barahmand.  So, ma'am.

1      MS. BARAHMAND:  Judge, Miss Akalaonu will present.

2      THE COURT:  Oh, okay.  Fair enough.

3      MS. AKALAONU:  Good morning, Your Honor.  My name is

4  Joan Akalaonu, and I'm a graduating law student at the Loyola

5  University Chicago School of Law and an intern in the Loyola

6  Civitas Childlaw Clinic.  Our office represents Jane Doe 1,

7  the victim in the case before you today.

8           Over the last several months, we have worked

9  closely with Jane and her mother to better understand the

10  physical, psychological, and life-long harms that Jane will

11  experience as a result of the cruel, sexual, and emotional

12  abuse she has suffered at the hands of this defendant.

13           Jane and her mother both want their voices to be

14  heard today, but they were unable to bear the emotional trauma

15  of having to be in the same room as this defendant because of

16  the unimaginable abuse that he inflicted on his daughter.  So

17  I am here to make a statement on their behalf.

18           Today Mr. Eckstrom is being sentenced for

19  producing, distributing, and possessing child pornography

20  involving our client, Jane.  Producing.  Distributing.

21  Possessing.  Such technical terms.  But what do those words

22  mean to Jane and what she experienced?  For Jane, those words

23  mean that her father, a man she should have been able to trust

24  to care for her, and keep her safe was actually her abuser.

25  The person who sexually abused and exploited her for years,

1  all the while taking thousands of pictures and videos of her

2  child sexual abuse and sharing them on the Internet.

3              Starting when she was just eight years old, this

4  defendant, Jane's father, raped her.  Week after week, year

5  after year, he forced her to endure oral and anal sex and

6  countless other sexual acts with him.  Over and over again

7  this defendant sexually abused Jane, forcing her to smile at

8  the camera and telling her to be good for the audience, not

9  only for his own sexual and deviant pleasure, no, all the

10 while he was abusing her, this defendant was taking pictures

11 and recording videos of the abuse, pictures and videos that he

12 then shared with others online and by placing online, made her

13 abuse viewable for literally the world to see.

14        MR. SCHLESINGER:  Your Honor, excuse me.  I'm

15 concerned about confidentiality and the references to the

16 victim.  This hearings's not sealed or anything.  I have not

17 previewed this presentation, but there are references that

18 appear to indicate the identity of the victim.

19        THE COURT:  I didn't believe counsel disclosed the

20 identity.

21        MR. SCHLESINGER:  Not the -- well, should we approach

22 or --

23        THE COURT:  Sure.  I guess I not sure what you're

24 referencing, so why don't you come forward?  Ma'am, if you

25 want to come forward, too.  And Miss Koster.

1      (Sidebar conference held as follows:)

2          MR. SCHLESINGER:  I believe the Court (sic) had

3  referenced the familial relationship.

4          THE COURT:  I didn't.

5          MR. SCHLESINGER:  But the Court's reference is kind

6  of -- Miss Koster just referred to her as Jane Doe No. 1, not

7  the daughter.

8          MS. KOSTER:  This is a sentencing --

9          MR. SCHLESINGER:  Okay.

10          THE COURT:  Yeah, I don't think that's any secret.

11  Okay.

12      (Sidebar conference concluded.)

13          THE COURT:  Go ahead.  Sorry.

14          MS. AKALAONU:  This defendant violated her trust, her

15  body, and her privacy.  He damaged her physically,

16  emotionally, and psychologically, and he did this over a

17  period of years so often that she was left feeling that there

18  was nothing in her life other than this abuse.

19              Rather than providing Jane with a good home

20  where she could feel safe and protected, this defendant,

21  through his constant abuse, made Jane's home life with him a

22  prison, a place where she says she regretted being every day

23  because of the sexual abuse that she endured for years,

24  because of how scared and helpless this defendant made her

25  feel.  Jane said, "I even felt like killing myself because of

1  him.  My life will never be the same thanks to what he did."

2          And her life hasn't been the same since this

3  defendant violated her.  Jane said, "He is still causing me

4  pain.  It is still affecting me.  I have a lot of anger.  I

5  didn't use to be like this.  I used to be shy and calm.  Now I

6  have intense emotions.  I feel angry or sad and it is hard to

7  calm down."

8          Just last month Jane wrote, "But my emotions

9  have been wild.  I sometimes feel like hurting someone, but

10  most the time I feel like dying.  I'm just hoping that the

11  pain will stop.  I'm so tired of gasping for air and

12  suffocating under the pressure of myself."

13          Because of the sexual abuse she endured that

14  allowed this defendant to produce child pornography, Jane

15  frequently struggles and cries, with feelings of anger and

16  irritation, distress, and anxiety whenever she encounters

17  anything that reminds her of the abuse.  This could be a name,

18  a color, a smell.

19          Her mother is distraught about how Jane can get

20  so angry now about the smallest things, a full rage in one

21  moment while struggling not to break down and cry.

22          Jane also struggles with feelings of

23  hopelessness and talks about how she feels like nothing is

24  going to get better because of what she endured repeatedly for

25  years at the hand of this defendant.  She and her mom talk

1  about how Jane constantly has nightmares about her abuse, how

2  she still feels scared and cautious walking around, even in

3  her new home, and how Jane frequently worries that the

4  defendant will send someone to grab her.

5              Jane's mom worries about how Jane has started

6  writing horror and gore stories where the plots recreate parts

7  of her abuse or her reaction to it.  For Jane, she cannot

8  escape the memories of the abuse she suffered from this

9  defendant; they will be with her forever.

10             And Jane can't escape.  She can't escape because

11  of this defendant, because this defendant not only sexually

12  abused her, he put images and videos of that abuse online for

13  anyone and everyone in the world to be able to access and see.

14  And Jane knew.  She knew that this defendant was taking

15  pictures and videos of her abuse.  And she knows that those

16  pictures and videos are online and that they are, as she says,

17  "probably everywhere now."

18             Because of this defendant, images of Jane's

19  abuse have been distributed so widely that there's a very good

20  chance someone will be watching her being victimized just in

21  the time it takes for Your Honor to decide what sentence to

22  give here today.  And if this sentence hearing were held

23  tomorrow, or the next day, or the next, the same statement

24  would still be true.  Knowing people are always going to be

25  watching her be abused and violated fills Jane with anxiety,

1  sadness, and anger.  It disgusts her.

2           Because of this defendant, Jane says she's

3  fearful of the world.  She always feels like something bad is

4  going to happen and that she knows her abuse is never going to

5  stop.  Because of this defendant, Jane is scared to walk

6  outside, afraid of running into someone who has seen pictures

7  or videos of her abuse who will recognize her or want to talk

8  to her or abuse her.  Because of this defendant, Jane wants to

9  hide herself constantly, and she knows she will feel like this

10  for the rest of her life.

11           She talks about how she wouldn't be as fearful

12  if those pictures and images had never been put online by this

13  defendant.

14           Because of this defendant and his abusive

15  actions, rather than enjoying making new friends at school,

16  Jane struggles to form relationships, to become close to

17  anyone.  Every person she meets, whether it is a peer or

18  otherwise, Jane is constantly worrying about whether they have

19  seen the images of her abuse.  With smart phones, iPads,

20  Kindles, and computers at school and in people's homes, Jane

21  can never just relax and enjoy spending time with her peers.

22  She knows that she is just one click away from being

23  recognized, ridiculed, shamed, or humiliated by someone who

24  has looked at a picture or video of her being sexually abused

25  by this defendant.

1             Jane talks about feeling lonely and isolated

2   because of what the defendant did to her.  Her diary is filled

3   with entries that say, "I just want to die.  There is no place

4   left for me in this world.  I don't have friends.  I don't

5   have a chance at any relationship out there.  I can't get

6   along with people."

7             Jane's mother worries about the few friends that

8   Jane has managed to make at school, as these friends have

9   similarly tried to take advantage of her or victimize her.

10             Jane's struggles are not something that are in

11  her past or something that she can attempt to put behind her

12  or move forward from.  No.  Because of this defendant, because

13  he violated her in the most brutal, humiliating, and hurtful

14  way; because he put thousands of images and videos of her

15  abuse online to be viewed and shared endlessly by others, Jane

16  will continually and repeatedly be victimized throughout her

17  life, never being able to regain any sense of safety or

18  control that is so that vital to recovery.

19             Jane will need long-term therapy throughout her

20  life for the rest of her life to try and cope with the dark

21  reality this defendant has given her.

22             As her access and use of the Internet increases,

23  Jane's struggles will only continue to grow.  Every time she

24  has to research a school project or assignment online, when

25  she gets a cell phone or a computer of her own, if she has to

1  use a computer at work, the Internet, so commonplace in our

2  society and especially among our youth, will always be a

3  trigger for Jane, a constant reminder that her abuse is never

4  going to go away, that it is being replayed over and over

5  again in homes, offices, and phones throughout world.

6           Jane struggles to trust others, to build healthy

7  relationships, will also continue throughout the rest of her

8  life because of this defendant's actions.  Every relationship

9  that she has in life will be defined by this four-year period

10  of intense abuse and cruelty that she experienced at the hands

11  of this defendant.  As she experiences various life stages and

12  phases; dating, getting a job, perhaps marriage, or even

13  motherhood, rather than meeting them with excitement and

14  curiosity, each stage and phase will be fraught in fear,

15  distrust, and anxiety; each life experience a trigger of this

16  defendant's abuse and exploitation that will require further

17  therapy and support to manage and live through.

18           Jane, herself, talks about how she knows that

19  what happened to her will affect her social life and makes her

20  want to stay inside and not come out and see the outside

21  world.

22           Because of this defendant, Jane feels as though

23  she has a bleak future ahead of her.  She talks about not

24  seeing herself ever having a husband, and she worries that she

25  will not attract good people to herself because of the abuse

1  she endured and because her abuse lives forever online.

2          Jane talks about being afraid to even have

3  children of her own one day because of her fear that they

4  could experience what happened to her.

5          Rather than a life full of love and family and

6  friends, Jane talks about having a lonely future and doesn't

7  even believe she will make it very far into adulthood.

8          This is what this defendant's actions have

9  stolen from her.  This defendant has taken away her life.  He

10  has created the worst kind of prison for Jane, one which she

11  will be trapped in for life.

12          Jane's mother says, "I think about the girl she

13  was before all of this happened and what she became after

14  these things happened to her.  I can hardly recognize her.

15  Only a fragment remains of who she used to be.  She's now

16  consumed with so much darkness."

17          It is the only fair measure of justice that this

18  defendant be equally punished with a sentence of life in

19  prison.  He has stripped Jane of her ability to have any

20  semblance of a normal life; of a life without constant fear,

21  anger, and pain.  This is never going to be done for Jane.

22  She will never outlive this.  These scars will never heal.

23  Every day being aware of people looking at her abuse online

24  will be a fresh scar or reopening of the wound that this

25  defendant inflicted.

1          As Jane's mother put it, "A child forced into a

2  basement with a mattress on the floor; raped, while is videoed

3  over and over again; that is the lowest kind of prison anyone,

4  let alone a child, could ever endure."

5          When you are a sex slave for someone, you're

6  still alive in the flesh once you're free, but on the inside

7  you're the walking dead, and that is a curse that no child

8  should ever have to suffer.  This doesn't go away.  It haunts

9  you forever.  It infiltrates your life every day, your work,

10  your school, your relationships, yourself.  He did murder her,

11  and she'll never be the same again.

12          Thank you, Your Honor.

13      THE COURT:  All right.  Thanks, Miss Akalaonu.

14          All right.  Mr. Schlesinger, as the lawyer for

15  the defendant, do you wish to say anything on his behalf

16  before I sentence him?  But before you say something, I -- I'm

17  not sure -- I meant to say this earlier.  I had a lot going on

18  up here.  But I do adopt the Presentence Report and the

19  factual statements contained in the Presentence Report as my

20  own findings of fact, and I also adopt the probation officer's

21  conclusions as to the applicable guidelines, both for the

22  reasons that are stated in the Presentence Report and for the

23  reasons that I further elaborated on earlier in my ruling on

24  the objections.  So I didn't remember if I made that record.

25          But okay, Mr. Schlesinger, as the lawyer for the

1  defendant, is there anything that you wish to say on his

2  behalf before I sentence him?

3          MR. SCHLESINGER:  I -- we don't have any evidence to

4  present.  Did the Court receive a copy of the letter written

5  by Mr. Eckstrom?

6          THE COURT:  I sure did.  It was attached to the --

7          MR. SCHLESINGER:  I had --

8          THE COURT:  -- Sentencing Memorandum.

9          MR. SCHLESINGER:  I had meant for it to be there

10 among a number of letters.  I wasn't positive, so I wanted to

11 be sure that the Court had it.

12              Obviously, this is an extremely difficult case,

13 and we are not suggesting at all that the abuse was not

14 amongst the most series of any case.  In my original memo, I

15 did cite some of the sentencing factors regarding, I think,

16 2G2.2, which is distribution, and the statistics, I believe

17 they are -- would be equally applicable or close to equally to

18 2G2.1, which the Court is sentencing Mr. Eckstrom under, in

19 that almost all of these cases would involve use of a

20 computer, images of a prepubescent minor, sadistic or

21 masochistic conduct in six hundred or more images, which does

22 create -- and again, none of the child pornography guidelines

23 were established based on empirical data.  It is extremely

24 difficult to get them changed because of legislation -- it's

25 difficult to get a legislator that wants to go on record as

1  advising reduced penalties for child pornographers or

2  exploiters.  And Mr. Eckstrom is clearly an exploiter.

3              Regarding 3553 factors, the nature of the

4  offense, we agree that this is among the most serious

5  offenses.  The degree of harm increases with physical contact,

6  first of all, which is present in this case and for an

7  extended period of time, which is also a significant

8  aggravating factor.

9              Also, there were multiple victims in this case,

10  and there was distribution.  There are a couple of things that

11  I believe the Court needs to at least acknowledge that would

12  separate this from the worst cases; specifically, that --

13  although -- well, there were not more victims in a number of

14  cases I read.  There have been as many as forty victims, and

15  there were three in this case.  And most of the abuse was

16  centered on Jane Doe 1.  And that's not to say that it

17  wouldn't -- it probably would have continued, I will concede,

18  had Mr. Eckstrom not been arrested.  But those are the facts

19  before the Court.

20              He did not financially benefit from any of the

21  exploitation.  This is not a situation where he is profiting

22  from it.  And there are individuals who show no remorse for

23  their actions, who force the trial or deny the actions.  And I

24  believe that is another significant factor that would make,

25  potentially, the case worse than Mr. Eckstrom's.

1          Regarding deterrence, I know the government

2 addressed recidivism in its memo, and I think the most

3 significant factor is that recidivism does reduce with age.

4 No matter what sentence the Court imposes Mr. Eckstrom, even

5 if the Court were to impose the minimum sentence, he would be

6 a significantly older individual. And I think that as far as

7 deterrence goes, his chances of recidivism would be less.

8          I know the government mentioned the fact that

9 grandparents sometimes -- there's less reporting for older

10 individuals. Mr. Eckstrom, in all likelihood, will never have

11 the opportunity to be a grandparent. And the other thing that

12 the government did not address and I believe is significant is

13 he's going to be on a lifetime supervised release, and he will

14 be required to register as a sex offender. I have not seen

15 any statistics on this, but I believe that those two factors

16 would greatly reduce chances of recidivism.

17          Regarding -- well, I believe the most

18 significant factor is -- that distinguishes this case from, I

19 guess, the worst possible cases would be Mr. Eckstrom's

20 remorse. He did admit to his offense. Almost immediately he

21 provided the email addresses of individuals who -- to whom he

22 shared the materials with. He confessed to almost all of the

23 abuse right away. He pled guilty without the benefit of a

24 plea agreement. I believe he's acted consistent.

25          He knew this was wrong when he did it, and

 1 that's apparent from the fact that he could stop for a while

 2 and then would fall back into his previous behavior.  I can't

 3 justify that; but the fact that he knew it was wrong -- I

 4 mean, it appears to me as though he was glad that he got

 5 arrested because it stopped the conduct.  And he realized it

 6 was harming his daughter.  And I believe his action has been

 7 consistent to minimize the harm.  It's out there, as the

 8 attorney for the Civitas Project, I believe, indicated.  It's

 9 not going to get any better.  Well, perhaps with technological

10 advances, they can somehow limit the distribution.  But it's

11 out there, it's worldwide right now, and it will continue to

12 be for the foreseeable future.

13          But he did not put the victims through a trial.

14 And I know the government said he would have been convicted

15 anyway, but that's on par with his confession, which he did it

16 right away.  He is easily identifiable in the videos; that's

17 true.  But he also -- even had the victims not testified, they

18 would have had the publicity of a trial.  And the fact that

19 people could ascertain their identities from the repeated

20 references in the newspaper, and I believe that would make

21 everything that the representatives spoke about worse for the

22 victims.

23          As far as his acceptance of responsibilities,

24 the Court knows it made no difference in his guideline

25 calculation, regardless of whether he accepts responsibility

1  or not.  In order for that to matter, I think there has to be

2  some deviation from a life sentence.

3          As the Court knows, this is a very difficult

4  case to deal with the evidence.  I saw some of the evidence

5  initially to try to ascertain that Mr. Eckstrom was, in fact,

6  guilty; and I saw a lot at Thursday's presentation that was

7  presented in court, much of which I had not seen before.  It

8  was difficult for me to even go talk to him after that.  And

9  here is an individual who is one of the better clients I've

10  represented, who understands the -- I think what he's done

11  wrong, acknowledges it, wishes that it never happened; but

12  obviously, he can't undo it.

13          It amazes me that when he was divorced, he got

14  custody of his daughter.  It's hard to understand that, but a

15  lot of the factors that Jane Doe 1 is going through right now

16  are apparently not present at that point.  It's impossible for

17  the Court to know -- it's impossible for anyone to know what

18  happened, but this is a troubled -- potentially troubled

19  relationship to start with, and Mr. Eckstrom made it much

20  worse.  Again, we're not going to denying that.  But the

21  individual that I talked to, it's almost impossible for me to

22  reconcile the fact that he's the one in those videos and those

23  images.

24          His two brothers, Frank and Matt, came today.

25  His brother's fiance and his mother are here.  They're

1  extremely upset about the whole situation, but they wanted to

2  be here at least to show some support for him.

3          The other man who was here is named John Malice.

4  He's a man that Mr. Eckstrom met at Kankakee.  And the two of

5  them were able to somehow -- Mr. Malice felt strongly enough

6  about Mr. Eckstrom's support that he was willing to come in

7  just to try to support him today.

8          There's a lot of good in the individual.  Again,

9  I can't reconcile the behavior, but I do believe that his

10 consistent remorse shows that his likelihood of re-offense

11 would be minimalized, again, by the supervised release and the

12 registering as a sex offender.  So we ask the Court to

13 consider that prior to imposing sentence.

14     THE COURT:  All right.  Thank you, Mr. Schlesinger.

15          Mr. Eckstrom, do you wish to make a statement in

16 your own behalf or present any information to me in mitigation

17 of punishment?  Anything that you'd like to say, sir?

18     THE DEFENDANT:  I just want it to be understood that

19 I -- I really am remorseful.  I mean, everything I said when

20 I -- when I wrote you in that letter, everything I wrote was

21 the truth in that.  I really feel horrible for what I went

22 through -- what I put her through and what I -- what I'm here

23 for.  If I could have, I wish I could go back and have the

24 guts to turn myself in before it got bad.

25          And I am glad that I was arrested, so I -- so I

 1  stopped the damage.  And I -- I'm sorry for the damage that

 2  she's gonna have to go through for her whole life.  And

 3  honestly, I'm -- you know, I feel horrible.  I don't even know

 4  how to explain it, but I want it to be understood I feel

 5  really bad, and I know for a fact that I could never do

 6  anything like this again.

 7          I'm a different person now.  I've been locked up

 8  for two years now, and I -- you know, I've had a lot of time

 9  to think about it.  I have no intentions, whether -- no matter

10  what, I'll never turn back to the person I was before.

11          I'm -- any kind of help that I could get,

12  whether it be in prison, out of prison, or both, I'll take

13  anything I can get.  I -- (shaking head).  I won't be that

14  person I was before.

15      THE COURT:  Thank you, sir.

16      THE DEFENDANT:  Thank you.

17      THE COURT:  Miss Koster, does the government have any

18  comments or recommendations as to the sentence I should

19  impose?

20      MS. KOSTER:  Yes, Your Honor.  Regarding our

21  recommendation, as set forth in our Sentencing Memorandum, the

22  government asks the Court to impose the longest sentence

23  allowed by law in this case.

24          I'd like to take a moment to address some of

25  defense counsel's arguments.  First of all, regarding 2G2.2,

1 enhancements for use of a computer and 600-plus images, those

2 enhancements were not applied in this case. In fact,

3 Mr. Eckstrom is being held no more responsible for the fact

4 that he produced thousands of images and videos of Jane Doe 1

5 and Jane Does 2 and 3 than if he had produced a single image

6 supporting each count. He would be facing the exact same

7 sentence he's facing now. But, in fact, he didn't produce a

8 single image of Jane Doe 1 on each year or a single image of

9 Jane Doe 2 or a single image of Jane Doe 3. He produced

10 hundreds, if not thousands, of images of those three victims.

11          The fact that he wants the Court to consider, as

12 a mitigating factor in this case, that there were not more

13 victims I think is disgusting and reprehensible. And if there

14 had been more victims, Your Honor, the defendant would be

15 facing an even higher guideline sentence. The fact that he

16 didn't have an opportunity or that we don't know about more

17 children that he abused should in no way detract from the

18 punishment that is called for by the sentencing guidelines and

19 by Congress.

20          His argument about not financially benefiting

21 from his production of this material is a red herring. This

22 material is not for sale on the Internet. It is for trade.

23 By producing child pornography, Mr. Eckstrom was privy to

24 receiving child pornography from multiple, additional victims.

25 Their abusers, I should say. He traded that material. He

1  informed his daughter that he was trading the material.  He

2  was creating these videos for an audience of individuals who

3  were interested in watching him sexually abuse his daughter.

4          It wasn't enough for him to describe the abuse

5  to other people online or for other people to just hear about

6  the abuse.  He wanted to show them videos and images of him

7  abusing his daughter.  And those people out there, all across

8  the United States in these 29 states who have been found with

9  the material so far, it's not enough for them to think about

10  little kids being abused, they want to watch it happen.  And

11  he made that possible for them.

12          Regarding his remorse, the defendant writes to

13  Your Honor, "I was once a loving, responsible father.  I had

14  full custody for many years and raised a loving, smart,

15  respectful honor student as a single parent.  I definitely

16  made some stupid decisions, but that didn't get in the way of

17  being a caring father.  Every nice day and weekend was

18  dedicated to my daughter.  We would go after -- go bike

19  riding, go for nature hikes, to the beach, the zoo, museums,

20  etc.  I did try to make my daughter have a happy childhood, in

21  spite of the mistakes I made."  That doesn't sound like

22  remorse, Your Honor, of a person who is comprehending the

23  enormity of the abuse that he caused.

24          Yes, he did admit to the offense, but it was an

25  offense that he had videotaped and photographed day after day,

1   year after year, and he had distributed the materials to

2   others.  He knew that when police came knocking on his door.

3   He knew his goose was cooked.  And so yes, he told the truth,

4   in part.

5            But let's be clear about a few things.  The

6   defendant has not truly fully accepted responsibility in this

7   case.  Just last week his attorney was telling me that he

8   denies engaging in anal sex with his daughter.  Well, we

9   showed you pictures and videos of that.  He denies using force

10  against his daughter, and that is written in defense counsel's

11  Sentencing Memorandums and it's also in Dr. Hillman's (sic)

12  report, that the defendant repeatedly denied ever using force

13  against his daughter.  Well, Your Honor saw that happening,

14  knows that's not true.

15           He also, still to this day, denies ever touching

16  Jane Doe 3.  And she has reported to law enforcement that

17  that, in fact, happened.

18           So although he's been given full credit for

19  acceptance of responsibility under the guidelines, but that

20  he's truly fully accepted full responsibility, Your Honor, I

21  think is debatable.

22           Defense counsel said that it was almost -- or it

23  is almost impossible for him to reconcile the individual that

24  he has spoken to with the man seen sexually abusing Jane Doe 1

25  and Jane Doe 2 and Jane Doe 3 in the videos and images that he

1    produced.  I'm sure that his family does have a similar

2    reaction.  This is what this defendant and all child sexual

3    abusers strive to do; and that is, to hide their feelings,

4    their true attraction to children; to make everyone think that

5    they would be the last person you would ever suspect of

6    sexually abusing a child.  Why?  So they can get access to

7    their victims.  Why?  So when the victims report the sexual

8    abuse, if that happens, which is rare, unfortunately, but if

9    that happens, then the child will be disbelieved, not the

10   offender.  The offender will be believed, and people will be

11   so hesitant to believe that he could do something so horrible,

12   that they don't even want to report the abuse to police.  We

13   saw that in the whole Penn State scandal, where adults

14   witnessed the abuse -- an adult, reported that abuse to other

15   adults; and these informed, intelligent human beings

16   nonetheless did not report the abuse to law enforcement.  This

17   is their MO, become the last person anybody would ever suspect

18   so that you can continue to engage in the conduct.

19              This doesn't speak well of the defendant as a

20   person.  It doesn't support his requests for a below-guideline

21   sentence, the fact that he's able to hide from his family,

22   from everybody who knows him, the true desire that he has,

23   that he will always have, and that true desire is to sexually

24   abuse, molest, and rape children.

25              We ask Your Honor for a guideline sentence, for

1  a sentence that is the only sentence in this case that truly

2  accomplishes the factors set forth maintaining this 3553(a).

3  We ask Your Honor to sentence the defendant to a

4  life-equivalent sentence.  Thank you.

5          THE COURT:  All right.  As we know, the Supreme Court

6  has modified the Federal Sentencing Act and made the

7  Sentencing Guidelines advisory.  Prior to "United States v.

8  Booker," the guidelines were mandatory, and the judges, like

9  myself, had to follow the guidelines.  But Booker demoted the

10  guidelines from a mandatory document to advisory instead.

11          So I certainly have to take the sentencing

12  guidelines into consideration when I render a sentence, but

13  I'm also required to consider all of the other factors under

14  3553(a) in arriving at what is hopefully a reasonable and

15  appropriate sentence given all the circumstances.

16          I cannot arrive at a sentence with a thumb on

17  the scale in favor of the guidelines; in other words, the

18  guidelines are neither more important nor less important than

19  all of the other factors.  So in addition to the sentencing

20  guidelines, I have to take into account the nature of the

21  circumstances of the offense, the history and characteristics

22  of the defendant.  The sentence that I impose must reflect the

23  seriousness of the offense, it must promote respect for the

24  law, and it must provide just punishment for the offense.  And

25  I have to be concerned in imposing a sentence that will deter

1  criminal activity, both specific deterrence, protecting the

2  public from further crimes of the defendant, himself; but also

3  the concept of general deterrence, so that the sentence will

4  adequately deter criminal activity in general.

5           The sentence that I give must attempt to avoid

6  unwarranted sentencing disparities among similarly situated

7  defendants.  And ultimately, the goal is to arrive at a

8  sentence that is sufficient, but not greater than necessary,

9  to achieve the statutory goals of sentencing.

10          In preparing for the sentencing hearing, as I

11 mentioned at the outset of the hearing, I reviewed all of the

12 material that was presented to me; but in particular, the

13 defendant filed a Supplemental Sentencing Memorandum, wherein

14 there were several letters attached.  The first letter was

15 from the defendant, himself.  I also received a letter from a

16 Sharon Knight.  I received a letter from somebody within the

17 jail ministry; his name is just Greg.  I received a letter

18 from a Doyle Buckner, who's the chaplain at the Kankakee

19 facility.  I received a letter from another person in -- or

20 member of the prison ministry.  His name is J. Bournes.  I

21 received a letter from Marcy Brinkman, who is the defendant's

22 aunt and godmother.  I received a letter from Laura Reaux

23 (phonetic).  That's the defendant's second cousin.  And I also

24 received a letter from the defendant's mother, Ella Branks

25 (phonetic).  That's how you pronounce it.  And then I received

1 a letter from Kent Mohr, M-O-H-R. He is with the prison

2 ministries, as well. And then attached to that were several

3 certifications and certificates of achievement that the

4 defendant obtained while he has been incarcerated pretrial.

5          I also reviewed all of the victims' statements,

6 and so I'll allude to many of these things as I go through my

7 statement of reasons here.

8          I have used the 2014 guidelines, and no part --

9 nobody has objected to the use of those guidelines. I will

10 say at the outset that this -- I feel this case is the

11 single-most disturbing case that I've had in 12 or 13 years as

12 a judge. The victims' statements are really distressing.

13 I'll reference a couple of them and won't belabor the point,

14 but I do think what comes out from them is a young lady who

15 has low self-esteem, for obvious reasons.

16          She answers one question: "How do you think the

17 existence of the images and videos of the sexual abuse will

18 impact your future?"

19          And she writes that, "I see a lonely future."

20 And she tells me that, "I don't think I'm going to make it

21 very far."

22          Those are just profoundly sad statements from a

23 victim, but no surprise, given the gravity of the conduct at

24 issue in this case.

25          She tells me, in Document 70-3, that the abuse

1  she suffered was, quote, absolutely horrible.  I felt

2  helpless.  I was afraid that he would kill me if I told

3  anybody, so I did my best to cover it up by telling everybody

4  how great he was, referring to the defendant.

5          She tells me in that same document that the

6  defendant, in her mind, is very manipulative and evil, and

7  that he never was a father, he never will be to her.  She

8  tells me that, "My father started touching me not long after I

9  moved in with him.  I'd say about age eight or nine."  And she

10  tells me, in answer to another question that, "My father was

11  manipulative and told me things like, 'Everything we're doing

12  is normal, people used to do it all the time.'"  She tells me

13  that, "My father made promises and offered me gifts to get me

14  to do what he said, and he'd give me candy and chocolate and

15  other things so I'd listen to him."

16          The promises he made were often about these

17  gifts, but she goes on to say that, "He also used threats;

18  such as, telling me that if I ever got pregnant, he'd use

19  a" -- pardon me for saying this -- "use a coat hanger to give

20  me an abortion."  That's what the victim says.

21          So on and on it goes.  I won't belabor the

22  point, but suffice it to say that the Victim Impact Statement

23  in this case is among the most distressing and troubling I've

24  ever received.

25          The defendant was granted custody of his

1  daughter in December of 2008, and it seems rather apparent

2  that almost immediately the sexual abuse of her began.  And

3  for the next five years, he repeatedly sexually abused his own

4  daughter and videotaped it, and he was hurting her while he

5  was doing it.  My review of the tape shows her in anguish and

6  repeatedly asking him to stop and that it was hurting her, but

7  he didn't stop.  He would continue on a routine basis.

8              He then would put these videos online for others

9  to watch.  And as the Government's PowerPoint makes clear,

10 there have been 77 different investigations that have been

11 spawned based on these images alone.  There's more than 10,000

12 separate depictions of the victim that have been found around

13 the country.  Those are just defendants who have happened to

14 have been caught.  Undoubtedly, there are thousands and

15 thousands more depictions of the victim out there in

16 cyberspace, as it were, all over the world.  So the breadth of

17 the crime is truly astonishing.

18             And, you know, on Pages 8 through 12 of the

19 Presentence Report, all of the various acts that were done to

20 the victim by the defendant, her father, are detailed, and I

21 won't repeat them here in open court, but they're

22 unimaginable.

23             Two other little girls were victimized, Jane Doe

24 No. 2 and 3.  In all, there were 472 videos and 6,210 images

25 of these three little girls found on the defendant's computer.

1       The offense was aggravated by the fact that it

2  seems clear, according to Paragraph 29 of the Presentence

3  Report, that the defendant plied his daughter with marijuana,

4  and she essentially became addicted to it.  And that certainly

5  aggravates the offense, in my judgment.

6       What's particularly disturbing to me is in

7  Paragraph 24 of the Presentence Report, in an interview with

8  law enforcement, the defendant described his relationship with

9  his own daughter as, quote, a boyfriend/girlfriend

10 relationship.  This has to be one of the most disturbing

11 aspects of the case, but I think it well shows the defendant's

12 mind-set.

13      In addition to his production of child

14 pornography, he also possessed a boatload of other child

15 pornography.  I believe it was over 80,000 images were found

16 on his computer.  Some of them involve torture of victims and

17 the binding of victims and that sort of thing.

18      The victim in this case, Jane Doe No. 1, reports

19 that she was afraid that he would harm her if she ever

20 disclosed what the defendant was doing to her.  And, in fact,

21 she didn't disclose it.  So his plan worked.  By putting her

22 in fear, she never disclosed this to her own mother or to her

23 grandmother, evidently, who was living in the home with them.

24      Law enforcement only found out about the sexual

25 abuse, as far as I can tell, really, in a roundabout way

1  that's detailed in Paragraphs 5 through 20 of the Presentence

2  Report, and it was simply, what looks like to me, excellent

3  police work that led to the defendant's arrest.

4           The point here is that her comments about not

5  wanting to disclose what was being done to her, because of the

6  fear that she was in, played out over the course of those five

7  years, and the defendant was only apprehended through the

8  actions of law enforcement; again, as it's detailed in

9  Paragraphs 5 through 20 of the Presentence Report, which I

10 won't belabor at this time.

11          You know, it's true that the defendant

12 cooperated with the authorities; but speaking pragmatically,

13 what choice did he have?  There was an abundance of videotapes

14 that showed him doing the very conduct that he was being

15 accused of.  And so there was little to do but to cooperate,

16 but he did cooperate.

17          So this conduct is -- in my judgment, it's

18 dastardly.  Pick an adjective.  He stole his daughter's

19 childhood, and she's going to be affected by this and live

20 with this abuse for the duration of her life.

21          So there's some things in this world which are

22 really unforgivable; and in my judgment, doing harm to a

23 defenseless child, let alone your own child, is one of those

24 things.  So I think this case calls out for a stiff

25 punishment.  And the guidelines, themselves, deliver that, and

1 I agree with them in this case.

2        I will note that I would have given the same

3 sentence that I'm about to give regardless of how the

4 guidelines were computed.  In other words, even if I'm

5 incorrect in how I've computed the guidelines, I would still

6 give the same sentence because even if the defendant is

7 correct on all the guideline issues that we spent an hour

8 talking about this morning, he would still be at a level --

9 the defendant would still be at a Level 51, which is well

10 above the Level 43, which is the maximum of the guidelines in

11 all events.

12        Let me touch on some of the defendant's

13 principal arguments in mitigation.  I have considered the

14 letters from his family and friends, and I commend the

15 defendant for his efforts while he's been incarcerated.  The

16 letters from the prison ministry and the certificates are

17 important steps in attempting to rehabilitate oneself.  But

18 they do not, in my judgment, outweigh the nature of this case,

19 which is the most serious that one could conceivably imagine.

20        You know, he has expressed remorse in this case

21 and cooperated with the government; but again, I think that's

22 tempered by the fact that he really had very little choice

23 given the weight of the evidence against him.

24        I will note that the defendant's own upbringing

25 was horrendous.  The things that his father would do to his

1  mother in his presence, as detailed in the Presentence Report,

2  is unspeakable.  But I can't say that it justifies allowing

3  that cycle to continue to the victim in this case.

4          The defendant has raised criticism of the

5  sentencing guidelines and how they treat child pornography

6  cases, and I very much agree with that under 2G2.2.  I think

7  many of those guideline enhancements -- and I've had many

8  cases where I found that I agree that they make a lot of sense

9  in several cases, but there is a decided difference in my mind

10  between somebody who possesses child pornography on the one

11  hand, it's a bad, a horrible offense, but it's not nearly as

12  bad -- it doesn't even come in the universe of somebody who is

13  actually producing child pornography and then disseminating

14  it.  And so I understand the criticisms that are raised by the

15  defendant of the sentencing guidelines, but I think they miss

16  the mark in a case like this where it involves production over

17  a five-year period of time, just so rampant on, a day -- or

18  nearly day-in, day-out abuse of children.

19          And so I've taken all of those principal

20  arguments into mitigation in the sentence that I am about to

21  announce.

22          I also will just note for the record that I'm

23  denying the defendant's Second Supplemental Sentencing

24  Memorandum, or what they're requesting in there, that any

25  sentence of greater than thirty years be viewed as

1  unconstitutional under the Eighth Amendment of the United

2  States Constitution.  I find no cases to support that concept.

3  And as pointed out by the government in their response, there

4  are many, many Circuit Court cases that have held to the

5  contrary.  And, indeed, I believe there's a Supreme Court case

6  where the possession or distribution of a small amount of

7  cocaine, somebody received a life sentence.  And the Supreme

8  Court said that that wasn't a violation of the Eighth

9  Amendment.  So I can't conceive of how the actions in this

10  case could be an Eighth Amendment violation for the sentence

11  that I'm about to announce.

12          Counsel, have I addressed all of your principal

13  arguments in mitigation?  Mr. Schlesinger?

14       MR. SCHLESINGER:  Yes, sir.

15       THE COURT:  Does either side have any objections not

16  previously addressed or voiced?  Any further elaboration on

17  the sentence that -- I suppose I'll ask that after I formally

18  announce the sentence.

19          All right.  It is the judgment of the Court,

20  pursuant to Title 18, United States Code, Sections 3551 and

21  3553, it's the judgment of the Court that the defendant is

22  hereby committed to the custody of the Bureau of Prisons for a

23  term of 360 months on each of the Counts I through VII, a term

24  of 240 months on Count VIII, and a term of 180 months on Count

25  IX, all to be served consecutive to one another for a total

1  term of 2,880 months.

2           The defendant shall be placed on supervised

3  release for life on all counts.  The terms of the supervised

4  release are to run concurrently pursuant to 18 U.S.C 3624(e).

5  And so that's on Counts I through VII, VIII, and IX.

6           While the defendant is on supervised release, if

7  that ever occurs, pursuant to this judgment, the defendant

8  shall comply with the following mandatory conditions:  He

9  must -- he shall not commit another federal, state, or local

10  crime.  The defendant must report to the probation office in

11  the district to which the defendant is released within 72

12  hours of release from the custody of the Bureau of Prisons.

13  The defendant shall not unlawfully possess a controlled

14  substance and shall refrain from any unlawful use of a

15  controlled substance.  Defendant shall submit to a drug test

16  within 15 days of release of imprisonment and to periodic drug

17  tests thereafter as determined by the Court.  He must

18  cooperate in the collection of DNA as directed by the

19  probation officer.  Defendant shall comply with the

20  requirements of the Sex Offender Registration and Notification

21  Act.  That's under 42 U.S.C 16901, as directed by the

22  probation officer, the Bureau of Prisons, and any state sex

23  offender registration agency in which he resides, works, or is

24  a student, or was convicted of a qualifying offense.

25           The defendant shall comply with the following

1   discretionary conditions: He shall not leave the judicial

2   district without the permission of the Court or probation

3   officer. I'm imposing this condition to provide community

4   protection and offender rehabilitation and to enable the

5   probation officer a statutory duty to keep informed concerning

6   the defendant's conduct, condition, and compliance pursuant to

7   18 U.S.C 3553(a)(1),(a)(2)(B), and (C).

8           Second, the defendant shall report to the

9   probation officer in a manner and as frequently as directed by

10  the Court or probation office. I've given this condition to

11  provide community protection, offender rehabilitation, and

12  officer and offender safety and to enable the probation

13  officer to do his duty of keeping informed of the defendant's

14  conduct, condition, and compliance with supervision.

15          Three, the defendant shall not answer falsely

16  any inquiries by the probation office and should follow the

17  instructions of the probation officer as they relate to the

18  conditions imposed by the Court. I'm imposing this condition

19  to provide community protection and offender rehabilitation.

20          Next, the defendant shall work at a lawful

21  occupation, unless excused by the probation office for

22  schooling, training, or other acceptable reasons. I'm

23  imposing this condition -- if the defendant is released,

24  employment is associated with pro-social activities that

25  reduce the risk of recidivism and they provide the offender

1  with rehabilitation as indicated by the social science

2  research.

3              Next, the defendant shall notify the probation

4  officer at least ten days prior to any change in residence or

5  employment.  In the event the defendant is involuntarily

6  terminated from employment or evicted from a residence, the

7  defendant must notify the probation officer within 48 hours of

8  those facts.  I'm imposing this condition because the

9  probation officer needs to know the whereabouts of the

10 defendant.  It's necessary for community protection, officer

11 safety, and to assist with rehabilitation.

12             Next, the defendant shall not knowingly and

13 intentionally be in the presence of anyone who is illegally

14 selling, using, or distributing a controlled substance; and if

15 such activity commences when he is present, the defendant must

16 immediately leave the location.  The defendant has a history

17 of substance abuse, as detailed in the Presentence Report, and

18 frequenting places where illegal, mind-altering substances are

19 being sold, used, or distributed will increase the risk that

20 the defendant will purchase, use, or possess those substances,

21 and so that's the reason I'm giving that condition.

22             Next, the defendant shall not knowingly and

23 intentionally associate with any person engaged in criminal

24 activity.  I'm giving you this condition because the research

25 indicates that -- this sort of obvious fact, that association

1   with peers who are involved in criminal activity increases the

2   risk of recidivism.  This condition also promotes and

3   encourages pro-social relationships that are conducive to

4   law-abiding lifestyles.

5           Next, the defendant shall permit a probation

6   officer to visit him at any time at home or elsewhere and

7   shall permit confiscation of any contraband observed in plain

8   view by the probation officer.  I'm imposing this condition

9   because community contacts with the defendant, if he is ever

10  released, will help the officer to ensure compliance with the

11  court-ordered conditions and assist the defendant in

12  maintaining a law-abiding lifestyle.

13          Next, the defendant shall notify the probation

14  officer within 72 hours of being arrested or questioned by a

15  law enforcement officer.  This is being imposed for community

16  safety and offender rehabilitation.

17          Next, the defendant shall notify the probation

18  officer of any material change in his economic circumstances

19  that might affect his ability to pay any unpaid amount of

20  restitution or special assessments.  I'm imposing this

21  condition because the probation officer can assess the

22  defendant's financial information to ensure the defendant is

23  meeting financial obligations imposed by the Court to make the

24  victim in this case whole.

25          I also order the following special conditions or

 1  additional discretionary conditions, whatever the appropriate

 2  nomenclature is now:  The defendant shall register with local

 3  law enforcement agencies and the state attorney general as

 4  directed by the probation office.  Again, this is a

 5  requirement under the Sex Offender Registration and

 6  Notification Act.

 7          Next, at the direction and discretion of the

 8  probation office, the defendant shall participate in approved

 9  psychological and behavioral testing, evaluation, and

10  assessment programs for the treatment and the monitoring of

11  sex offenders and, if warranted, approved -- sex offender

12  approved and individual counseling program.  I'm able to

13  impose this condition.  If the defendant is released, this

14  offense is a very serious sex offense involving a minor, and

15  the therapeutic needs of the defendant would be met by this

16  condition.  It would help reduce recidivism and protect the

17  public.

18          Finally, I'm going to order that the

19  defendant -- by agreement of the parties, the defendant pay

20  restitution as a condition of his supervision -- as a

21  condition of the sentence, pay restitution to the victim of

22  his offense identified as Jane Doe No. 1 in the amount that

23  has been stipulated to, of $250,000, as agreed to by the

24  parties in Docket Entry No. 73.

25          The parties have asked that I include the

1  following precise language in the final judgment, which I'll

2  state on the record here first:  Pursuant to the joint motion

3  to include the restitution stipulation in judgment filed by

4  the parties on May 5, 2015, Docket Entry No. 72, the Court

5  hereby orders the defendant to immediately pay $250,000 in

6  victim restitution to the clerk of the court in this judicial

7  district.  The clerk of the court is ordered in turn to

8  disburse upon receipt any funds received from the defendant to

9  victim, Jane Doe No. 1, in care of the Marsh Law Firm, PLLC,

10  Client Trust Account.  Said payment should be made via

11  government check and mailed to following address, the Marsh

12  Law Firm, PLLC, attention Jane.  The P.O. Box is 4668,

13  No. 65135, New York, New York 10163-4668.  And the phone

14  number, to the extent that it's necessary, 212-372-3030.

15              Based on my review of the defendant's financial

16  condition, as detailed in the Presentence Report, I'm going to

17  waive the fine in this case because the defendant does not

18  have the ability to pay the fine and there is an exceedingly

19  large restitution order in this case that I believe to be

20  paramount, in any event.  So the fine will be waived in this

21  case.

22              It is further ordered that the defendant shall

23  pay the United States a total special assessment of $900,

24  which shall be due immediately.

25              Now, the sentence that I've just given is within

1   the advisory guideline range.  That range exceeds 24 months.

2   I've given a sentence within the guideline range for the

3   reasons that I've elaborated on, in detail, prior to my

4   announcement of the sentence.

5           All right.  Does either side have any objections

6   not previously addressed or need any further elaboration on

7   the sentence?

8           Miss Koster?

9           MS. KOSTER:  No, Your Honor.

10          THE COURT:  Mr. Schlesinger?

11          MR. SCHLESINGER:  No, Your Honor.

12          THE COURT:  All right.  I now order the sentence

13  imposed as stated.

14          Mr. Eckstrom, you've heard the judgment of the

15  Court imposing sentence upon you.  Pursuant to Rule 32(j) of

16  the Federal Rules of Criminal Procedure, I advise you, you can

17  appeal your conviction in this chase if you believe your

18  guilty plea was somehow involuntary or there was some other

19  defect in the proceeding or the guilty plea.

20          You also have a statutory right to appeal your

21  sentence under certain circumstances if you think it was

22  contrary to law.  With few exceptions, any notice of appeal

23  must be filed within 14 days of the judgment being entered in

24  your case, if you want to file an appeal.  And if you're

25  unable to pay for the cost of appeal, you may apply for leave

 1  of appeal in forma pauperis, which means you can pursue the

 2  appeal at no cost to you.

 3           Mr. Schlesinger, I know you're aware of this,

 4  but I just remind you of your duties to perfect an appeal,

 5  should your client wish you to do so.  You remain responsible

 6  for his representation on appeal unless you're relieved by the

 7  Court of Appeals upon motion.

 8           Okay.  Anything else from the government?

 9       MS. KOSTER:  No, Your Honor.

10       THE COURT:  Anything else from the defendant?

11       MR. SCHLESINGER:  Your Honor, we have a couple

12  requests regarding sentencing.

13       THE COURT:  Sure.

14       MR. SCHLESINGER:  We ask that the defendant be placed

15  at a facility that offers the government Sex Offender Program,

16  SOMP.  Specifically, there are facilities in Marion, Illinois,

17  and Elkton, Ohio, that do that.  Also, that he be -- that the

18  Court recommend he be -- participate in the drug program while

19  he's incarcerated.

20       THE COURT:  Okay.

21       MR. SCHLESINGER:  And that he get credit for time

22  served.

23       THE COURT:  Sure.  I'll make all three of those

24  recommendations; that he be placed in a residential drug

25  treat-- alcohol treatment program, the Sex Offender Program as

1  well, and that he be given credit for time served to the

2  extent possible.  I suppose a preference would be if Marion or

3  Elkton don't offer the ARDAP, that that would be a preference.

4  Is that right, Mr. Schlesinger?

5          MR. SCHLESINGER:  The preference to go for the sex

6  offender program over ARDAP, yes.

7          THE COURT:  Okay.  So I'll detail all of that in the

8  judgment commitment, but I'll recommend Marion, Illinois, or

9  Elkton, Ohio, so the defendant can take advantage of the

10 Bureau of Prisons Sex Offender Treatment Program.

11             All right.  Anything else, Mr. Schlesinger?

12         MR. SCHLESINGER:  No, Your Honor.

13         THE COURT:  All right.  Good luck, Mr. Eckstrom.

14         THE DEFENDANT:  Thank you, Your Honor.  God bless.

15         THE COURT:  Let me just note for the record,

16 Miss Akalaonu, thank you so much for your presentation and for

17 your efforts on behalf of the victim.

18         MS. AKALAONU:  Thank you, Your Honor.

19     (The hearing concludes at 12:55 p.m.)

20                     --oo0oo--

21

22

23

24

25

1                    C E R T I F I C A T E

2    I certify that the foregoing is a correct transcript of the

3    record of proceedings in the above-entitled matter.

4

5

6

7

8



9    PAMELA S. OWEN_____ 19, 2015

10   PAMELA S. OWEN, CSR, RPR
     Contract Court Reporter

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

## $

**$100 (1)**
41:6
**$25,000 (1)**
7:1
**$250,000 (4)**
40:10;41:5;80:23;
81:5
**$30,000 (1)**
7:3
**$900 (2)**
41:6;81:23

## A

**ability (3)**
53:19;79:19;81:18
**Abizer (1)**
3:9
**able (12)**
10:21;23:17;24:24;
35:20;37:6;44:8;
45:23;49:13;51:17;
60:5;65:21;80:12
**abortion (1)**
69:20
**above (2)**
14:7;73:10
**absolutely (1)**
69:1
**abundance (1)**
72:13
**Abuse (50)**
37:16,18;38:4;
45:12,16;46:2,11,13;
47:18,21,23;48:13,
17;49:1,7,8,12,15,19;
50:4,7,8,19;51:15;
52:3,10,16,25;53:1,
23;55:13;56:15;
57:23;63:3,4,6,23;
65:8,12,14,14,16,24;
68:17,25;70:2;71:25;
72:20;74:18;78:17
**abused (9)**
44:4;45:25;46:7;
49:12,25;50:24;
62:17;63:10;70:3
**abuser (1)**
45:24
**abusers (2)**
62:25;65:3
**abusing (4)**
46:10;63:7;64:24;
65:6
**abusive (1)**
50:14
**academic (1)**
14:12
**acceptable (1)**
77:22

**acceptance (3)**
38:25;58:23;64:19
**accepted (2)**
64:6,20
**accepting (1)**
41:4
**accepts (1)**
58:25
**access (5)**
11:19,21;49:13;
51:22;65:6
**accomplishes (1)**
66:2
**according (1)**
71:2
**account (2)**
66:20;81:10
**accurate (4)**
12:11;39:11,13;
41:10
**accused (1)**
72:15
**achieve (1)**
67:9
**achieved (1)**
20:11
**achievement (1)**
68:3
**acknowledge (2)**
28:2;56:11
**acknowledges (1)**
59:11
**across (4)**
12:24;40:5;44:4;
63:7
**act (14)**
15:16,17,25;18:23;
19:4,10,13;31:1,5,6;
34:8;66:6;76:21;80:6
**acted (1)**
57:24
**action (1)**
58:6
**actions (7)**
50:15;52:8;53:8;
56:23,23;72:8;75:9
**activities (2)**
28:15;77:24
**activity (13)**
25:2;27:10,19;
28:10,12;29:11,19;
37:11;67:1,4;78:15,
24;79:1
**acts (2)**
46:6;70:19
**actual (2)**
38:21;39:2
**actually (4)**
35:21,22;45:24;
74:13
**add (1)**
29:21
**added (1)**

**18:20**
**addenda (5)**
11:5,5,17,23;12:10
**addendum (12)**
4:11,13;8:2,12;
11:10,13,25;14:24;
15:2;21:3;27:6;30:9
**addicted (1)**
71:4
**adding (1)**
25:24
**addition (9)**
8:8,21;9:23;11:25;
15:20;20:10,23;
66:19;71:13
**additional (7)**
12:1;13:23;14:25;
30:10;37:1;62:24;
80:1
**address (8)**
13:11;21:23;22:1;
30:22;36:24;57:12;
61:24;81:11
**addressed (7)**
11:1;31:14;42:3;
57:2;75:12,16;82:6
**addresses (3)**
42:2;43:2;57:21
**adequately (1)**
67:4
**adjective (1)**
72:18
**adjudged (1)**
4:3
**adjustment (1)**
36:7
**adjustments (3)**
16:12;18:6,14
**admit (3)**
27:21;57:20;63:24
**admitted (3)**
28:4;42:24,25
**adopt (4)**
35:8;38:15;54:18,
20
**adult (1)**
65:14
**adulthood (1)**
53:7
**adults (2)**
65:13,15
**advance (1)**
9:18
**advances (1)**
58:10
**advantage (2)**
51:9;84:9
**advise (1)**
82:16
**advising (1)**
56:1
**advisory (3)**
66:7,10;82:1

**affect (2)**
52:19;79:19
**affected (1)**
72:19
**affecting (1)**
48:4
**afraid (4)**
50:6;53:2;69:2;
71:19
**again (28)**
6:5;10:25;13:10;
17:11;25:21;27:4;
31:10;34:6,14,21,24;
35:10;36:13,18;38:2;
39:6;46:6;52:5;54:3,
11;55:22;59:20;60:8,
11;61:6;72:8;73:21;
80:4
**against (7)**
19:19;27:12;31:8;
32:22;64:10,13;
73:23
**age (8)**
17:7;23:8,13;26:7;
37:4,5;57:3;69:9
**agencies (1)**
80:3
**agency (1)**
76:23
**agent (1)**
8:17
**aggravated (1)**
71:1
**aggravates (1)**
71:5
**aggravating (1)**
56:8
**ago (3)**
5:10;9:2;36:8
**agree (18)**
5:16;9:19;10:2;
12:8;17:25;25:3,7;
31:16;33:18;34:11,
17;36:9;40:7,8;56:4;
73:1;74:6,8
**agreed (6)**
39:25;40:9,12,16;
41:5;80:23
**agreement (7)**
7:19;16:23;40:20,
25;41:4;57:24;80:19
**ahead (2)**
47:13;52:23
**air (1)**
48:11
**Akalaonu (8)**
3:18;45:1,3,4;
47:14;54:13;84:16,
18
**alcohol (1)**
83:25
**alive (1)**
54:6

**allegations (1)**
24:11
**allocution (1)**
14:18
**allow (2)**
7:13;41:19
**allowed (2)**
48:14;61:23
**allowing (1)**
74:2
**allude (1)**
68:6
**almost (7)**
55:19;57:20,22;
59:21;64:22,23;70:2
**alone (3)**
54:4;70:11;72:23
**along (2)**
5:9;51:6
**alternate (1)**
16:12
**alternative (2)**
18:6;25:4
**alternatively (1)**
19:2
**although (3)**
23:18;56:13;64:18
**always (6)**
26:25;28:1;49:24;
50:3;52:2;65:23
**amazes (1)**
59:13
**amend (1)**
7:14
**Amendment (5)**
9:10;10:24;75:1,9,
10
**among (6)**
28:2;52:2;55:10;
56:4;67:6;69:23
**amongst (1)**
55:14
**amount (8)**
6:25;40:7,9,12,15;
75:6;79:19;80:22
**amounts (1)**
29:11
**anal (3)**
16:16;46:5;64:8
**analysis (1)**
26:10
**Andrew (1)**
4:25
**Andy (8)**
4:25;5:6,12,24,25;
6:9,14;7:11
**Andy's (3)**
5:13,18;7:19
**anger (4)**
48:4,15;50:1;53:21
**angry (2)**
48:6,20
**anguish (1)**

70:5
**announce (3)**
74:21;75:11,18
**announcement (1)**
82:4
**anticipate (2)**
5:21;40:4
**anticipated (1)**
5:13
**anxiety (3)**
48:16;49:25;52:15
**apologize (1)**
35:17
**apparent (2)**
58:1;70:1
**apparently (1)**
59:16
**appeal (13)**
11:18,18,20;20:5;
82:17,20,22,24,25;
83:1,2,4,6
**Appeals (1)**
83:7
**appear (1)**
46:18
**appeared (1)**
3:22
**appears (2)**
28:6;58:4
**Appendix (1)**
25:15
**applicable (3)**
23:2;54:21;55:17
**Application (14)**
18:10,13,23;20:23;
21:8;23:10;24:20;
26:6,17;28:24;29:24;
31:12;38:7,11
**applications (1)**
25:21
**applied (15)**
15:20;16:15;18:20,
25;19:1;20:11;21:6;
22:24;23:8,9;26:2;
27:22;31:18;37:10;
62:2
**applies (5)**
20:8,23;29:18;
35:13;36:17
**apply (16)**
17:3,5,8,15,18;
18:2;21:16;22:21;
23:11;24:9;27:1,25;
28:18;31:4,18;82:25
**applying (4)**
25:4,9;26:22,23
**apportion (1)**
6:23
**apportioned (1)**
7:6
**apprehended (1)**
72:7
**approach (1)**

46:21
**appropriate (7)**
7:15;20:25;22:7;
26:19;32:1;66:15;
80:1
**appropriately (3)**
26:2;27:3;32:4
**approved (3)**
80:8,11,12
**approves (1)**
28:14
**Approximately (2)**
5:10;38:4
**ARDAP (2)**
84:3,6
**areas (1)**
13:19
**argue (2)**
13:20;30:14
**arguing (1)**
13:10
**argument (2)**
44:13;62:20
**arguments (6)**
13:8,11;61:25;
73:13;74:20;75:13
**around (2)**
49:2;70:12
**aroused (1)**
24:4
**arrest (1)**
72:3
**arrested (4)**
56:18;58:5;60:25;
79:14
**arrive (2)**
66:16;67:7
**arriving (1)**
66:14
**ascertain (2)**
58:19;59:5
**aspects (1)**
71:11
**assess (2)**
32:25;79:21
**assessed (1)**
29:18
**assessment (5)**
25:8;31:16;41:6;
80:10;81:23
**assessments (1)**
79:20
**assignment (1)**
51:24
**assist (2)**
78:11;79:11
**associate (1)**
78:23
**associated (1)**
77:24
**association (1)**
78:25
**assume (2)**

11:12;22:19
**astonishing (1)**
70:17
**Attached (6)**
4:16;8:4;9:15;
55:6;67:14;68:2
**attachments (2)**
10:3,6
**attempt (2)**
51:11;67:5
**attempting (1)**
73:17
**attention (1)**
81:12
**attorney (4)**
3:19;58:8;64:7;
80:3
**attorneys (3)**
3:12;5:13,19
**attract (1)**
52:25
**attraction (1)**
65:4
**audience (2)**
46:8;63:2
**aunt (1)**
67:22
**authorities (1)**
72:12
**authority (1)**
28:20
**automatic (1)**
7:17
**avoid (1)**
67:5
**aware (3)**
40:14;53:23;83:3
**away (7)**
21:20;50:22;52:4;
53:9;54:8;57:23;
58:16
**awful (1)**
20:22

**B**

**b1 (4)**
17:5,5,21;18:17
**b2 (4)**
17:15;18:16,24;
19:11
**b4 (2)**
18:22;20:10
**b5 (3)**
17:5,7;18:17
**back (9)**
3:22;4:4;8:24;
28:23;44:19,20;58:2;
60:23;61:10
**bad (5)**
50:3;60:24;61:5;
74:11,12
**ball (1)**

37:23
**Barahmand (7)**
3:12,14;40:23,24;
41:2;44:25;45:1
**based (21)**
15:14,23;17:19;
19:3,20;21:13;23:8,
25;24:24;27:20,24;
28:19;30:24;31:18;
32:8;37:4;38:22;
39:13;55:23;70:11;
81:15
**basement (1)**
54:2
**bases (1)**
32:25
**basic (1)**
27:23
**basically (1)**
22:18
**basis (10)**
13:21;16:1,16,17;
17:21;24:17,18;25:4;
37:12;70:7
**bath (2)**
25:10;26:13
**bathing (1)**
24:13
**bathroom (2)**
24:12;26:13
**beach (1)**
63:19
**bear (1)**
45:14
**became (2)**
53:13;71:4
**become (3)**
24:3;43:21;50:16;
65:17
**becomes (1)**
39:2
**began (1)**
70:2
**behalf (8)**
3:11,15;40:25;
45:17;54:15;55:2;
60:16;84:17
**behavior (3)**
35:13;58:2;60:9
**behavioral (1)**
80:9
**behind (1)**
51:11
**beings (1)**
65:15
**belabor (2)**
68:13;69:21;72:10
**belief (1)**
14:3
**believing (1)**
26:13
**below-guideline (1)**
65:20

**benefit (2)**
56:20;57:23
**benefiting (1)**
62:20
**best (3)**
16:13;18:7;69:3
**better (4)**
45:9;48:24;58:9;
59:9
**bike (1)**
63:18
**binder (1)**
42:18
**binding (1)**
71:17
**bit (1)**
4:14
**blanket (1)**
23:22
**bleak (1)**
52:23
**bless (1)**
84:14
**boatload (1)**
71:14
**bodily (5)**
25:18;31:10;32:11,
21;38:10
**body (3)**
23:24;24:7;47:15
**Booker (2)**
66:8,9
**both (18)**
9:19;11:4,5;12:8;
14:7,18;17:8,18;
18:24;19:1,4;28:14;
32:14;34:23;45:13;
54:21;61:12;67:1
**Bournes (1)**
67:20
**Box (1)**
81:12
**boyfriend/girlfriend (1)**
71:9
**Branks (1)**
67:24
**breadth (1)**
70:16
**break (3)**
44:18,19;48:21
**brief (3)**
9:9;12:21;44:21
**briefing (1)**
7:13
**briefly (1)**
23:6
**bring (3)**
42:13,14,14
**Brinkman (1)**
67:21
**brothers (1)**
59:24
**brother's (1)**

59:25
**brought (2)**
    8:18;19:7
**brownie (1)**
    19:15
**brutal (1)**
    51:13
**Buckner (1)**
    67:18
**build (1)**
    52:6
**Bureau (4)**
    75:22;76:12,22;
    84:10
**butt (1)**
    37:23

**C**

**calculation (2)**
    28:6;58:25
**call (3)**
    5:21;39:4,5
**callback (1)**
    5:19
**called (2)**
    36:16;62:18
**calls (1)**
    72:24
**calm (2)**
    48:5,7
**came (2)**
    59:24;64:2
**camera (4)**
    8:15;24:12,25;46:8
**can (42)**
    3:4,10;4:8;5:20;
    6:3;7:9,14,19;8:23;
    12:17,19;13:13,24;
    16:25;17:3,15;18:1;
    19:1;20:5,11;21:23;
    22:1,14;23:11;24:5,
    22;40:4;42:13;43:20;
    48:19;50:21;51:11;
    53:14;58:10;61:13;
    65:6,18;71:25;79:21;
    82:16;83:1;84:9
**candy (1)**
    69:14
**cap (1)**
    39:1
**captured (1)**
    38:10
**care (2)**
    45:24;81:9
**career (2)**
    29:1,13
**caring (1)**
    63:17
**carved (1)**
    29:3
**case (68)**
    5:14,15;6:1;7:5,6,

7;8:6,16;13:2;16:2,3,
20;18:22;19:7;20:8;
21:16;22:1,21;23:16;
24:1,11;26:2;27:2,4,
25;28:2,9,15,18,20;
29:7;38:20;40:1,9;
41:5;45:7;55:12,14;
56:6,9,15,25;57:18;
59:4;61:23;62:2,12;
64:7;66:1;68:10,11,
24;69:23;71:11,18;
72:24;73:1,18,20;
74:3,16;75:5,10;
79:24;81:17,19,21;
82:24
**cases (15)**
    10:21,25;15:19;
    16:14,15;28:13;
    55:19;56:12,14;
    57:19;74:6,8,9;75:2,4
**catch (1)**
    44:9
**categorically (2)**
    21:14,24
**category (3)**
    32:23;38:21;39:3
**caught (1)**
    70:14
**Cause (1)**
    3:5
**caused (2)**
    40:10;63:23
**causing (1)**
    48:3
**caution (1)**
    22:7
**cautious (1)**
    49:2
**cell (1)**
    51:25
**Center (1)**
    43:7
**centered (1)**
    56:16
**certain (2)**
    20:2;82:21
**certainly (3)**
    32:19;66:11;71:4
**certificates (2)**
    68:3;73:16
**certifications (1)**
    68:3
**Challenge (1)**
    10:24
**chambers (1)**
    8:17
**chance (5)**
    11:8;14:18;44:13;
    49:20;51:5
**chances (2)**
    57:7,16
**change (2)**
    78:4;79:18

**changed (3)**
    13:21;30:20;55:24
**chaplain (1)**
    67:18
**Chapter (2)**
    28:25;36:16
**characteristic (5)**
    16:11;17:13;18:4,
    15,19
**characteristics (2)**
    18:18;66:21
**characterized (1)**
    20:19
**charged (4)**
    6:25;28:11,16,19
**charges (1)**
    19:6
**charging (3)**
    3:24,25;4:1
**chase (1)**
    82:17
**check (1)**
    81:11
**Chicago (2)**
    3:13;45:5
**child (34)**
    3:25;4:1,2;12:23;
    19:4,7,13;21:16;
    24:21;26:10;35:5;
    40:6;42:18;44:8;
    45:19;46:2;48:14;
    54:1,4,7;55:22;56:1;
    62:23,24;65:2,6,9;
    71:13,14;72:23,23;
    74:5,10,13
**childhood (2)**
    63:20;72:19
**Childlaw (2)**
    3:15;45:6
**Children (6)**
    43:8;53:3;62:17;
    65:4,24;74:18
**chocolate (1)**
    69:14
**choice (2)**
    72:13;73:22
**Circuit (4)**
    16:3;17:21;18:25;
    75:4
**circumstance (1)**
    23:3
**circumstances (7)**
    7:7;27:2,2;66:15,
    21;79:18;82:21
**citation (1)**
    6:5
**cite (3)**
    16:2;37:2;55:15
**cited (2)**
    10:21;16:20
**Civitas (1)**
    3:15;45:6;58:8
**clarify (1)**

32:13
**Clark (1)**
    8:9
**clear (6)**
    23:8;43:6,16;64:5;
    70:9;71:2
**clearly (3)**
    22:13;27:22;56:2
**clerk (2)**
    81:6,7
**click (1)**
    50:22
**client (4)**
    11:4;45:20;81:10;
    83:5
**clients (1)**
    59:9
**Clinic (2)**
    3:15;45:6
**close (5)**
    24:24;35:20;40:15;
    50:16;55:17
**closed (2)**
    24:22,25
**closely (1)**
    45:9
**closer (2)**
    43:21,21
**clothed (1)**
    23:22
**clothing (3)**
    22:4,14;23:23
**coat (1)**
    69:19
**cocaine (1)**
    75:7
**Code (1)**
    75:20
**collect (1)**
    43:24
**collection (1)**
    76:18
**color (2)**
    42:14;48:18
**commences (3)**
    42:10;43:5;78:15
**commend (1)**
    73:14
**commentary (1)**
    25:15
**comments (4)**
    16:9;37:3;61:18;
    72:4
**commission (11)**
    15:17,24;18:5;
    22:20;23:10;28:7;
    29:2,14;30:25;31:5,6
**commit (1)**
    76:9
**commitment (1)**
    84:8
**committed (1)**
    75:22

**commonplace (1)**
    52:1
**community (6)**
    77:3,11,19;78:10;
    79:9,15
**compensate (1)**
    40:10
**complete (1)**
    37:13
**compliance (3)**
    77:6,14;79:10
**comply (3)**
    76:8,19,25
**complying (1)**
    10:17
**comprehending (1)**
    63:22
**computations (2)**
    14:3;38:18
**compute (1)**
    14:13
**computed (2)**
    73:4,5
**computer (8)**
    8:18;43:10;51:25;
    52:1;55:20;62:1;
    70:25;71:16
**computers (1)**
    50:20
**concede (4)**
    10:23;31:6;32:23;
    56:17
**conceded (2)**
    31:22,25
**conceding (1)**
    37:7
**conceivably (1)**
    73:19
**conceive (1)**
    75:9
**concept (2)**
    67:3;75:2
**concern (4)**
    6:21,22;7:17;11:2
**concerned (2)**
    46:15;66:25
**concerning (1)**
    77:5
**concession (1)**
    32:8
**concluded (1)**
    47:12
**concludes (1)**
    84:19
**conclusions (1)**
    54:21
**concurrently (1)**
    76:4
**condition (19)**
    8:11;26:8;77:3,6,
    10,14,18,23;78:8,21,
    24;79:2,8,21;80:13,
    16,20,21;81:16

**conditionotherwise (1)**
23:13
**conditions (6)**
76:8;77:1,18;
79:11,25;80:1
**conducive (1)**
79:3
**conduct (46)**
15:7,14,18,22,24,
25;16:13,17;17:20;
19:17,22;20:2,3,4,10,
20,23;23:14,16;26:9,
11;29:5,6,11,12,20;
30:1,4;31:6,7;34:1,8,
15;35:10;38:7,10;
40:5,5;55:21;58:5;
65:18;68:23;72:14,
17;77:6,14
**conducts (1)**
28:3
**confer (1)**
13:25
**conference (2)**
47:1,12
**confessed (1)**
57:22
**confession (2)**
24:2;58:15
**confidentiality (1)**
46:15
**confirmed (1)**
19:1
**confiscation (1)**
79:7
**confusing (1)**
16:21
**Congress (2)**
5:24;62:19
**consecutive (1)**
75:25
**consider (6)**
10:11;28:24;41:18;
60:13;62:11;66:13
**consideration (1)**
66:12
**considered (2)**
30:1;73:13
**considering (1)**
28:24
**considers (1)**
25:23
**consistent (4)**
29:24;57:24;58:7;
60:10
**constant (3)**
47:21;52:3;53:20
**constantly (3)**
49:1;50:9,18
**constitute (3)**
21:15;28:11;35:23
**Constitution (1)**
75:2
**constitutional (1)**

11:2
**consumed (1)**
53:16
**contact (4)**
15:16;16:18;28:17;
56:5
**contacts (1)**
79:9
**contained (2)**
12:9;54:19
**contention (1)**
16:6
**contents (1)**
11:9
**context (1)**
13:14
**continually (1)**
51:16
**continue (7)**
7:25;51:23;52:7;
58:11;65:18;70:7;
74:3
**continued (1)**
56:17
**continuing (1)**
44:23
**contraband (1)**
79:7
**contrary (4)**
28:6,21;75:5;82:22
**control (1)**
51:18
**controlled (3)**
76:13,15;78:14
**convicted (3)**
29:5;58:14;76:24
**conviction (5)**
27:15;29:15;30:3,
5;82:17
**convictions (1)**
30:5
**cooked (1)**
64:3
**cooperate (3)**
72:15,16;76:18
**cooperated (2)**
72:12;73:21
**cope (1)**
51:20
**copy (4)**
10:14,16;11:4;55:4
**correctly (1)**
21:7
**cost (2)**
82:25;83:2
**costs (2)**
7:2,4
**Counsel (10)**
10:17;11:18,20,24;
13:4,4;23:18;46:19;
64:22;75:12
**counseling (1)**
80:12

**counsel's (2)**
61:25;64:10
**Count (18)**
3:25;4:1;19:3,8;
28:3,4,8,8;31:17;
33:10;34:7,25;39:7,
7;42:3;62:6;75:24,24
**counted (1)**
28:16
**counting (4)**
19:22;21:16;27:23;
28:8
**countless (1)**
46:6
**country (4)**
40:5;42:7;44:4;
70:13
**counts (19)**
3:23,24;5:1;28:1,5,
9,19;30:6;37:4,5,5,
10;39:5,6,9;41:7;
75:23;76:3,5
**couple (3)**
56:10;68:13;83:11
**course (6)**
4:10;14:11;29:8;
30:2;39:1;72:6
**court (174)**
3:2,4,17,21;5:11,
11,12,22;6:2,4,7,12,
16;7:5,9,11,18,23,25;
8:15;9:12,22,24;10:1,
5,11,12,15,18;11:3,8,
12,16;12:6,8,14,16,
22;13:6,12,23;14:2,8,
11,22;16:2,22,25;
17:2,11,14,17,23;
18:8,12,16;19:24,25;
20:4,7,21:18,23;22:3,
7,11,23;23:2;24:10,
15,17;25:5,25;27:11,
18;28:18,22;30:7,18;
31:20,24;32:8,9,14;
33:9,12,21,24;34:6,
13,19;35:17;36:1,11,
21;37:2,13;38:15;
39:13,16,24;40:19,
23,25;41:3,12,14,24,
25;42:8,11,19,20,24;
43:16;44:11,17,18,
22;45:2;46:19,23;
47:2,4,10,13;54:13;
55:4,6,8,11,18;56:11,
19;57:4,5;58:24;
59:3,7,17;60:12,14;
61:15,17,22;62:11;
66:5,5;70:21;75:4,5,
8,15,19,21;76:17;
77:2,10,18;79:23;
81:4,6,7;82:10,12,15;
83:7,10,13,18,20,23;
84:7,13,15
**court-ordered (1)**

79:11
**courtroom (1)**
40:13
**Court's (7)**
17:17;22:6,8;25:8;
31:14,16;47:5
**cousin (1)**
67:23
**cover (2)**
30:16;69:3
**covered (1)**
23:22;30:12
**Crayons (1)**
20:21
**create (1)**
55:22
**created (2)**
29:3;53:10
**creating (1)**
63:2
**credit (4)**
32:18;64:18;83:21;
84:1
**cries (1)**
48:15
**crime (2)**
70:17;76:10
**crimes (1)**
67:2
**criminal (11)**
23:14,16;26:9,11;
38:21;39:3;67:1,4;
78:23;79:1;82:16
**criticism (1)**
74:4
**criticisms (1)**
74:14
**cruel (1)**
45:11
**cruelty (1)**
52:10
**cry (1)**
48:21
**crying (1)**
20:15
**cumulative (1)**
25:14
**cumulatively (2)**
18:20;42:15
**curiosity (1)**
52:14
**current (1)**
43:17
**Curriculum (1)**
5:2
**curse (1)**
54:7
**curtain (1)**
24:24
**custody (5)**
59:14;63:14;69:25;
75:22;76:12
**cyberspace (1)**

79:11
**courtroom (1)**

70:16
**cycle (1)**
74:3

**D**

**daily (2)**
37:19,20
**damage (2)**
61:1,1
**damaged (1)**
47:15
**damages (1)**
6:24
**Dangerous (1)**
27:12
**Daniel (2)**
3:6;44:23
**dark (1)**
51:20
**darkness (1)**
53:16
**dastardly (1)**
72:18
**data (1)**
55:23
**date (4)**
4:4;43:7,11,15
**dates (2)**
43:6,21
**dating (1)**
52:12
**daughter (16)**
45:16;47:7;58:6;
59:14;63:1,3,7,18,20;
64:8,10,13;70:1,4;
71:3,9
**daughter's (1)**
72:18
**day (10)**
47:22;49:23;53:3,
23;54:9;63:17,25,25;
64:15;74:17
**day-in (1)**
74:18
**day-out (1)**
74:18
**days (4)**
7:9;76:16;78:4;
82:23
**dead (1)**
54:7
**deal (1)**
59:4
**dealing (1)**
35:9
**deals (5)**
27:5,6;33:21;34:6,
14
**dealt (2)**
9:9;22:2
**death (3)**
31:10;32:11;38:9

**debatable (1)**
64:21
**December (1)**
70:1
**decide (1)**
49:21
**decided (1)**
74:9
**decides (1)**
5:25
**decision (2)**
7:20;41:3
**decisions (1)**
63:16
**dedicated (1)**
63:18
**defect (1)**
82:19
**defend (1)**
23:17
**defendant (141)**
3:7;4:3;8:25;9:7;
11:11;12:23;14:23;
19:12,14,17;20:16;
21:8;22:4,13;23:18;
24:6;26:4;29:18;
31:24;32:17,22,25;
35:11,14;37:3;38:6;
40:8,9,11,12,14,17;
41:7;42:5;43:3;44:4,
24;45:12,15;46:4,7,
10;47:14,20,24;48:3,
14,25;49:4,9,11,11,
14,18;50:2,5,8,13,14,
25;51:2,12,21;52:11,
22;53:9,18,25;54:15;
55:1;60:18;61:16;
62:14;63:12;64:6,12;
65:2,19;66:3,22;67:2,
13,15;68:4;69:4,6,25;
70:20;71:3,8,20;72:7,
11;73:6,9,15;74:4,15;
75:21;76:2,6,7,10,11,
13,15,19,25;77:8,15,
20,23;78:3,5,7,10,12,
15,16,20,22;79:5,9,
11,13,17,22;80:2,8,
13,15,19,19;81:5,8,
17,22;83:10,14;84:9,
14
**defendants (5)**
40:5;43:17,24;
67:7;70:13
**defendant's (21)**
23:20;24:2;40:4;
41:22;43:10;52:8,16;
53:8;67:21,23,24;
70:25;71:11;72:3;
73:12,24;74:23;77:6,
13;79:22;81:15
**defense (5)**
6:14;23:18;61:25;
64:10,22

**defenseless (1)**
72:23
**defer (1)**
7:9
**defined (1)**
52:9
**defines (1)**
36:3
**definitely (1)**
63:15
**definition (5)**
19:5,20;21:14;
22:22;31:13
**degree (1)**
56:5
**delay (1)**
7:19
**delineate (2)**
4:7;8:1
**delineated (1)**
26:18
**deliver (1)**
72:25
**demonstrate (1)**
28:1
**demonstrates (2)**
25:8,10
**demoted (1)**
66:9
**denied (2)**
11:1;64:12
**denies (3)**
64:8,9,15
**deny (1)**
56:23
**denying (2)**
59:20;74:23
**depends (1)**
27:1
**depict (1)**
19:16
**depicted (1)**
25:3
**depicting (2)**
43:3,9
**depiction (1)**
20:18
**depictions (5)**
15:7;20:11;34:1;
70:12,15
**depicts (1)**
20:24
**describe (1)**
63:4
**described (8)**
15:18,25;31:7,7;
34:9;37:21;38:7;71:8
**describes (2)**
16:13;18:7
**desire (2)**
65:22,23
**detail (2)**
82:3;84:7

**detailed (6)**
70:20;72:1,8;74:1;
78:17;81:16
**deter (2)**
66:25;67:4
**determination (2)**
13:24;22:6
**determine (1)**
35:24
**determined (1)**
76:17
**deterrence (4)**
57:1,7;67:1,3
**detract (1)**
62:17
**deviant (1)**
46:9
**deviation (1)**
59:2
**device (1)**
43:11
**diary (1)**
51:2
**die (1)**
51:3
**difference (3)**
7:8;58:24;74:9
**different (6)**
19:22;27:22;37:4;
43:13;61:7;70:10
**difficult (5)**
55:12,24,25;59:3,8
**dildos (2)**
20:21;37:23
**direct (1)**
10:10
**directed (6)**
11:18,20;76:18,21;
77:9;80:4
**direction (1)**
80:7
**disagree (1)**
36:1
**disbelieved (1)**
65:9
**disburse (1)**
81:8
**disc (1)**
42:19
**disclose (2)**
71:21;72:5
**disclosed (3)**
46:19;71:20,22
**discomfort (1)**
20:14
**discretion (1)**
80:7
**discretionary (2)**
77:1;80:1
**discussed (1)**
36:5
**discussion (4)**
14:12;33:22;36:7,

19
**disgusting (1)**
62:13
**disgusts (1)**
50:1
**disparities (1)**
67:6
**dispute (1)**
12:3
**disrespect (1)**
7:12
**disseminating (1)**
74:13
**distinguishes (2)**
26:20;57:18
**distraught (1)**
48:19
**distress (1)**
48:16
**distressing (2)**
68:12;69:23
**distributed (8)**
12:24,25;40:6;
42:5;43:3;49:19;
64:1;78:19
**distributing (3)**
45:19,20;78:14
**distribution (6)**
4:1;41:22;55:16;
56:10;58:10;75:6
**District (5)**
22:6,8;76:11;77:2;
81:7
**distrust (1)**
52:15
**disturbing (3)**
68:11;71:6,10
**divorced (1)**
59:13
**DNA (1)**
76:18
**Docket (5)**
5:7;9:8;39:22;
80:24;81:4
**Document (15)**
4:14,17,21;8:3,4;
9:1,3,5,15;15:3;
36:14;37:14;66:10;
68:25;69:5
**documents (2)**
4:17;12:2
**Doe (57)**
3:16;4:19,21,22;
6:9,9,23;8:6,11;13:5,
7;19:12,17;20:13,16;
21:6,7;22:12,15,24;
23:19;24:6,16;26:20,
20,22;29:10,10;
31:18;35:6,11,20;
37:2,15,16;42:2,6;
43:3,9,13;44:3;45:6;
47:6;56:16;59:15;
62:4,8,9,9;64:16,24,

25,25;70:23;71:18;
80:22;81:9
**dollars' (1)**
40:3
**done (6)**
22:17;28:18;53:21;
59:10;70:19;72:5
**door (3)**
24:22,23;64:2
**double (4)**
19:21;21:15;25:17;
29:25
**double-counting (2)**
18:24;20:5
**down (2)**
48:7,21
**Doyle (1)**
67:18
**Dr (2)**
8:9;64:11
**dress (1)**
37:22
**drug (4)**
76:15,16;83:18,24
**due (4)**
23:12;26:7;41:22;
81:24
**duration (2)**
8:7;72:20
**during (1)**
30:2
**duties (1)**
83:4
**duty (2)**
77:5,13
**dying (1)**
48:10

**E**

**earlier (3)**
10:6;54:17,23
**easily (1)**
58:16
**eats (1)**
19:14
**Eckstrom (25)**
3:6,7,22;9:17;11:8;
22:13,17;27:15;29:7;
44:23;45:18;55:5,18;
56:2,18;57:4,10;59:5,
19;60:4,15;62:3,23;
82:14;84:13
**Eckstrom's (4)**
28:2;56:25;57:19;
60:6
**economic (1)**
79:18
**Economics (1)**
4:23
**economist (1)**
8:5
**efforts (2)**

73:15;84:17
**eight (2)**
    46:3;69:9
**Eighth (5)**
    9:9;10:24;75:1,8,
    10
**either (8)**
    12:10;15:24;19:11;
    28:15;32:25;41:15;
    75:15;82:5
**elaborated (2)**
    54:23;82:3
**elaboration (2)**
    75:16;82:6
**electronic (1)**
    43:11
**Elkton (3)**
    83:17;84:3,9
**Ella (1)**
    67:24
**else (9)**
    12:11;19:24;30:14;
    41:17;44:12,14;83:8,
    10;84:11
**elsewhere (2)**
    42:7;79:6
**email (1)**
    57:21
**emailed (1)**
    5:11
**emotional (2)**
    45:11,14
**emotionally (1)**
    47:16
**emotions (2)**
    48:6,8
**empirical (1)**
    55:23
**employment (3)**
    77:24;78:5,6
**enable (2)**
    77:4,12
**encompassed (1)**
    8:12
**encounters (1)**
    48:16
**encourages (1)**
    79:3
**endlessly (1)**
    51:15
**endure (2)**
    46:5;54:4
**endured (4)**
    47:23;48:13,24;
    53:1
**enforcement (9)**
    43:9,15;64:16;
    65:16;71:8,24;72:8;
    79:15;80:3
**engage (1)**
    65:18
**engaged (1)**
    78:23

**engaging (4)**
    19:12,17;29:4;64:8
**enhance (1)**
    32:4
**enhancement (40)**
    15:5,5,14,19,20;
    16:15,17;17:21;
    18:22;19:9;21:8,15;
    22:21,24;23:7,11;
    24:20;25:4,17;26:1,
    18,22;27:6,10,22;
    28:9,19;29:3,19;
    30:23;31:17,25;33:1;
    34:15,25;35:3,4,6;
    36:16;37:10
**enhancements (15)**
    13:22;15:10,13,16;
    16:4;18:23;19:10,23;
    21:5;22:20;24:9;
    34:22;62:1,2;74:7
**enjoy (1)**
    50:21
**enjoying (1)**
    50:15
**enormity (1)**
    63:23
**enough (5)**
    41:25;45:2;60:5;
    63:4,9
**ensure (2)**
    79:10,22
**entered (1)**
    82:23
**entries (1)**
    51:3
**Entry (3)**
    5:7;80:24;81:4
**episodes (1)**
    37:20
**equally (3)**
    53:18;55:17,17
**escape (3)**
    49:8,10,10
**especially (5)**
    21:19;25:2;26:15;
    40:8;52:2
**essence (1)**
    29:13
**essentially (5)**
    9:13;20:14;29:2;
    40:2;71:4
**establish (1)**
    15:24
**established (1)**
    55:23
**etc (1)**
    63:20
**evaluation (2)**
    8:9;80:9
**even (23)**
    10:11;13:24;14:2;
    19:21;21:20;29:5;
    30:22;37:10;40:2;

47:25;49:2;52:12;
    53:2,7;57:4;58:17;
    59:8;61:3;62:15;
    65:12;73:4,6;74:12
**event (2)**
    78:5;81:20
**events (1)**
    73:11
**everybody (3)**
    40:13;65:22;69:3
**everyone (4)**
    3:4;6:24;49:13;
    65:4
**everywhere (2)**
    38:2;49:17
**evicted (1)**
    78:6
**evidence (9)**
    24:1,11;28:4;
    35:11;44:12;55:3;
    59:4,4;73:23
**evidently (1)**
    71:23
**evil (1)**
    69:6
**evolved (1)**
    13:20
**exact (1)**
    62:6
**exactly (1)**
    10:23
**example (6)**
    17:5,14;18:16;
    19:11;25:16;30:15
**examples (1)**
    20:20
**exceedingly (1)**
    81:18
**exceeds (1)**
    82:1
**excellent (1)**
    72:2
**exception (1)**
    29:3
**exceptions (1)**
    82:22
**excitement (1)**
    52:13
**excludes (1)**
    20:1
**excuse (2)**
    13:4;46:14
**excused (1)**
    77:21
**Exhibit (2)**
    42:16,25
**Exhibits (2)**
    42:17,21
**exist (1)**
    43:13
**existence (1)**
    68:17
**experience (3)**

45:11;52:15;53:4
**experienced (2)**
    45:22;52:10
**experiences (1)**
    52:11
**explain (1)**
    61:4
**exploitation (2)**
    52:16;56:21
**Exploited (2)**
    43:8;45:25
**exploiter (1)**
    56:2
**exploiters (1)**
    56:2
**expose (4)**
    22:4;23:24,24;24:7
**expressed (2)**
    41:9;73:20
**extended (2)**
    36:7;56:7
**extension (2)**
    6:15;7:21
**extent (2)**
    81:14;84:2
**extremely (2)**
    55:12,23;60:1

**F**

**face (1)**
    38:2
**facilities (1)**
    83:16
**facility (2)**
    67:19;83:15
**facing (3)**
    62:6,7,15
**fact (29)**
    5:8,14;15:23;
    17:20;21:13;27:20,
    25;28:10,11;29:15;
    54:20;57:8;58:1,3,
    18;59:5,22;61:5;
    62:2,3,7,11,15;64:17;
    65:21;71:1,20;73:22;
    78:25
**factor (5)**
    56:8,24;57:3,18;
    62:12
**factors (9)**
    37:1;41:17;55:15;
    56:3;57:15;59:15;
    66:2,13,19
**facts (4)**
    24:1;28:11;56:18;
    78:8
**factual (5)**
    12:9;13:21;19:21;
    38:16;54:19
**factually (2)**
    19:5,6
**Fair (3)**

45:11;52:15;53:4
**fall (1)**
    58:2
**falsely (1)**
    77:15
**familial (1)**
    47:3
**family (4)**
    53:5;65:1,21;73:14
**far (7)**
    39:11;53:7;57:6;
    58:23;63:9;68:21;
    71:25
**father (12)**
    37:21;38:1;45:23;
    46:4;63:13,17;69:7,8,
    10,13;70:20;73:25
**favor (1)**
    66:17
**fear (12)**
    31:9;32:2,10,20,
    24;38:6,9;52:14;
    53:3,20;71:22;72:6
**fearful (2)**
    50:3,11
**federal (4)**
    43:17;66:6;76:9;
    82:16
**feel (10)**
    47:20,25;48:6,9,
    10;50:9;60:21;61:3,
    4;68:10
**feeling (2)**
    47:17;51:1
**feelings (3)**
    48:15,22;65:3
**feels (4)**
    48:23;49:2;50:3;
    52:22
**felt (3)**
    47:25;60:5;69:1
**few (4)**
    36:8;51:7;64:5;
    82:22
**fiance (1)**
    59:25
**file (1)**
    6:2;82:24
**filed (15)**
    4:17;6:9;8:14,25;
    9:1,4,7,12;10:9;
    39:17,21;42:17;
    67:13;81:3;82:23
**filing (1)**
    13:10
**filled (1)**
    51:2
**fills (1)**
    49:25
**final (2)**
    14:4;81:1
**Finally (1)**
    80:18

**financial (3)**
79:22,23;81:15
**financially (2)**
56:20;62:20
**find (3)**
26:12;39:20;75:2
**finding (1)**
16:8
**findings (3)**
22:8;26:21;54:20
**fine (5)**
7:10;39:9;81:17,
18,20
**Firm (2)**
81:9,12
**first (13)**
4:10;5:16;10:22;
12:17;14:24;15:12;
18:13;41:19;42:2;
56:6;61:25;67:14;
81:2
**fit (1)**
25:19
**fits (1)**
29:6
**five (9)**
28:16;29:8,14;
37:5,18,19;39:8;
70:3;72:6
**five-level (5)**
27:9;28:8,19;
29:18;36:16
**five-year (1)**
74:17
**flesh (1)**
54:6
**floor (2)**
44:25;54:2
**focus (1)**
14:24
**focused (1)**
41:21
**follow (2)**
66:9;77:16
**following (5)**
76:8,25;79:25;
81:1,11
**follows (3)**
22:12;38:20;47:1
**force (14)**
31:8,14,16,19;32:1,
2,5,8,22;37:2,8;
56:23;64:9,12
**forced (2)**
46:5;54:1
**forcing (2)**
37:21;46:7
**foremost (1)**
5:16
**foreseeable (1)**
58:12
**forever (3)**
49:9;53:1;54:9

**form (1)**
50:16
**forma (1)**
83:1
**formally (1)**
75:17
**forth (5)**
11:23;12:1;18:23;
61:21;66:2
**forthwith (1)**
40:13
**forty (1)**
56:14
**forward (3)**
46:24,25;51:12
**found (5)**
6:24;22:3;42:7,9;
43:19,22;63:8;70:12,
25;71:15,24;74:8
**four (5)**
13:19;15:8,21;
32:4;37:19
**four-level (4)**
15:19,20;20:25;
33:1
**four-year (1)**
52:9
**fragment (1)**
53:15
**Frank (1)**
59:24
**frankly (1)**
27:21
**fraught (1)**
52:14
**free (1)**
54:6
**frequenting (1)**
78:18
**frequently (3)**
48:15;49:3;77:9
**fresh (1)**
53:24
**friends (6)**
50:15;51:4,7,8;
53:6;73:14
**front (1)**
9:8
**full (5)**
48:20;53:5;63:14;
64:18,20
**fully (3)**
23:22;64:6,20
**funds (1)**
81:8
**further (10)**
11:20;13:10;18:25;
22:18;52:16;54:23;
67:2;75:16;81:22;
82:6
**future (6)**
40:3;52:23;53:6;
58:12;68:18,19

## G

**gagging (1)**
37:22
**Gall (2)**
16:22,23
**gasping (1)**
48:11
**general (3)**
67:3,4;80:3
**genitals (1)**
22:5
**gets (1)**
51:25
**gifts (2)**
69:13,17
**girl (2)**
32:19;53:12
**girls (2)**
70:23,25
**girl's (1)**
23:21
**Given (15)**
7:7;21:5;27:3;
33:17;44:6;51:21;
64:18;66:15;68:23;
73:2,23;77:10;81:25;
82:2;84:1
**giving (2)**
78:21,24
**glad (2)**
58:4;60:25
**goal (1)**
67:7
**goals (1)**
67:9
**God (1)**
84:14
**godmother (1)**
67:22
**goes (5)**
4:25;37:25;57:7;
69:17,21
**gonna (1)**
61:2
**good (9)**
3:14,21;45:3;46:8;
47:19;49:19;52:25;
60:8;84:13
**goose (1)**
64:3
**gore (1)**
49:6
**gosh (1)**
39:20
**government (27)**
3:9,9;8:14,19;9:4,
12,14;11:13;13:22;
16:20;20:3;28:4;
35:22;39:18;40:18,
20;57:1,8,12;58:14;
61:17,22;73:21;75:3;

81:11;83:8,15
**Government's (6)**
10:8,25;42:16,17,
25;70:9
**grab (1)**
49:4
**graduating (1)**
45:4
**grandmother (1)**
71:23
**grandparent (1)**
57:11
**grandparents (1)**
57:9
**granted (2)**
13:25;69:25
**gravity (1)**
68:23
**great (1)**
69:4
**greater (4)**
18:2,21;67:8;74:25
**greatly (1)**
57:16
**Greg (1)**
67:17
**Group (1)**
4:24
**grow (1)**
51:23
**guess (9)**
6:21;12:17;21:25;
25:7,20;37:4,8;
46:23;57:19
**guideline (18)**
14:3;16:9;18:19,
20;25:23;27:11;28:6;
36:24;38:13,18;39:4;
58:24;62:15;65:25;
73:7;74:7;82:1,2
**guidelines (33)**
13:25;14:13;16:5,
6;17:4;23:10;25:15;
27:7;28:25;30:15;
36:17;38:19;39:1;
54:21;55:22;62:18;
64:19;66:7,8,9,10,12,
17,18,20;68:8,9;
72:25;73:4,5,10;74:5,
15
**guilty (8)**
3:23;4:3;28:20;
41:7;57:23;59:6;
82:18,19
**guts (1)**
60:24

## H

**hand (3)**
23:20;48:25;74:11
**hands (2)**
45:12;52:10

**hanger (1)**
69:19
**happen (4)**
32:16;39:22;50:4;
63:10
**happened (10)**
37:18;38:4;52:19;
53:4,13,14;59:11,18;
64:17;70:13
**happening (1)**
64:13
**happens (2)**
65:8,9
**happy (1)**
63:20
**hard (2)**
48:6;59:14
**hardly (1)**
53:14
**harm (8)**
13:1,6;17:8;40:10;
56:5;58:7;71:19;
72:22
**harming (1)**
58:6
**harms (1)**
45:10
**Hasti (1)**
3:12
**haunts (1)**
54:8
**head (1)**
61:13
**heal (1)**
53:22
**healthy (1)**
52:6
**hear (6)**
14:16;15:8;21:10;
30:18;41:15;63:5
**heard (6)**
17:23;23:4;34:4;
35:14;45:14;82:14
**hearing (10)**
6:22;9:18;11:6,14,
25;44:24;49:22;
67:10,11;84:19
**hearings's (1)**
46:16
**held (6)**
9:17;35:20;47:1;
49:22;62:3;75:4
**help (3)**
61:11;79:10;80:16
**helpless (2)**
47:24;69:2
**hereby (2)**
75:22;81:5
**herring (1)**
62:21
**herself (4)**
50:9;52:18,24,25
**hesitant (1)**

65:11
**hide (3)**
50:9;65:3,21
**higher (1)**
62:15
**hikes (1)**
63:19
**Hillman's (1)**
64:11
**himself (2)**
67:2,15
**History (5)**
37:16;38:21;39:3;
66:21;78:16
**hold (1)**
16:3
**home (5)**
47:19,21;49:3;
71:23;79:6
**Homeland (1)**
8:18
**homemade (1)**
41:22
**homes (2)**
50:20;52:5
**honestly (1)**
61:3
**Honor (57)**
3:11,14;6:13;7:24;
10:14;11:11,15;12:7,
13,15;13:17;15:11;
19:13;21:12;23:1,25;
24:19;31:22;32:7;
33:8;35:15;36:25;
39:12,15,23;40:2,22,
24;41:2,11,13,20;
42:13,23;43:2;44:6,
16;45:3;46:14;49:21;
54:12;61:20;62:14;
63:13,15,22;64:13,
20;65:25;66:3;82:9,
11;83:9,11;84:12,14,
18
**Honor's (2)**
17:25;29:23
**hope (1)**
7:11
**hopefully (1)**
66:14
**hopelessness (1)**
48:23
**hoping (1)**
48:10
**horrendous (1)**
73:25
**horrible (5)**
60:21;61:3;65:11;
69:1;74:11
**horror (1)**
49:6
**host (2)**
4:6;14:25
**hour (2)**

37:21;73:7
**hours (3)**
76:12;78:7;79:14
**human (1)**
65:15
**humiliated (1)**
50:23
**humiliating (1)**
51:13
**hundred (1)**
55:21
**hundreds (1)**
62:10
**hurtful (1)**
51:13
**hurting (3)**
48:9;70:4,6
**husband (1)**
52:24

## I

**identifiable (1)**
58:16
**identified (4)**
3:16;10:7;12:10;
80:22
**identify (3)**
12:3;20:1,4
**identities (1)**
58:19
**identity (2)**
46:18,20
**III (1)**
34:7
**illegal (1)**
78:18
**illegally (1)**
78:13
**Illinois (3)**
3:20;83:16;84:8
**illogical (1)**
22:19
**illustrate (1)**
12:22
**image (8)**
19:4,7,22;43:9;
62:5,8,8,9
**images (32)**
19:9,10,12,13,16;
40:6;41:23;42:5,9;
43:2,4,12,14,16,25;
49:12,18;50:12,19;
51:14;55:20,21;
59:23;62:1,4,10;
63:6;64:25;68:17;
70:11,24;71:15
**imagine (1)**
73:19
**immediately (5)**
57:20;70:2;78:16;
81:5,24
**Impact (6)**

4:18,20;14:17;
32:15;68:18;69:22
**important (3)**
66:18,18;73:17
**impose (6)**
22:20;57:5;61:19,
22;66:22;80:13
**imposed (4)**
77:18;79:15,23;
82:13
**imposes (1)**
57:4
**imposing (9)**
60:13;66:25;77:3,
18,23;78:8;79:8,20;
82:15
**impossible (4)**
59:16,17,21;64:23
**imprisonment (1)**
76:16
**incarcerated (3)**
68:4;73:15;83:19
**include (2)**
80:25;81:3
**included (1)**
7:3
**Including (2)**
9:16;24:1
**incorporated (1)**
28:5
**incorrect (3)**
17:17;27:16;73:5
**increase (3)**
20:25;26:5;78:19
**increased (1)**
15:8
**increases (4)**
29:14;51:22;56:5;
79:1
**indeed (1)**
75:5
**Indiana (1)**
44:8
**indicate (3)**
27:15,21;46:18
**indicated (2)**
58:8;78:1
**indicates (2)**
37:11;78:25
**indication (2)**
22:17;37:6
**indictment (3)**
3:24;19:8;42:4
**individual (6)**
57:6;59:9,21;60:8;
64:23;80:12
**individuals (6)**
12:25;44:10;56:22;
57:10,21;63:2
**infer (1)**
24:5
**infiltrates (1)**
54:9

**inflicted (2)**
45:16;53:25
**inform (1)**
5:11
**information (6)**
4:6;9:16,20;14:17;
60:16;79:22
**informed (4)**
63:1;65:15;77:5,13
**initial (2)**
28:6;38:23
**initially (1)**
59:5
**injury (5)**
25:18;31:10;32:11,
21;38:10
**inquire (1)**
6:14
**inquiries (1)**
77:16
**inside (2)**
52:20;54:6
**instances (2)**
20:13;28:16
**instant (1)**
30:3
**instead (1)**
66:10
**instructions (1)**
77:17
**intelligent (1)**
65:15
**intending (2)**
12:18;42:12
**intense (2)**
48:6;52:10
**intention (1)**
12:21
**intentionally (2)**
78:13,23
**intentions (1)**
61:9
**interested (1)**
63:3
**intern (1)**
45:5
**Internet (4)**
46:2;51:22;52:1;
62:22
**interpose (1)**
37:8
**interpret (1)**
17:11
**interpretation (2)**
17:17,25
**interview (2)**
37:15;71:7
**into (10)**
12:17;19:19;30:25;
50:6;53:7;54:1;58:2;
66:12,20;74:20
**introduce (1)**
3:10

**investigations (2)**
42:7;70:10
**involuntarily (1)**
78:5
**involuntary (1)**
82:18
**involve (3)**
34:21;55:19;71:16
**involved (5)**
8:16;15:6;17:6;
34:8;79:1
**involves (1)**
32:1;74:16
**involving (5)**
29:12,19;45:20;
80:14
**iPads (1)**
50:19
**irritation (1)**
48:16
**isolated (1)**
51:1
**issue (15)**
7:9,14;19:9;10;
10:11;18:24;20:6;
25:6;30:21,21;33:22;
34:7,10;35:9;68:24
**issues (2)**
11:2;73:7
**IX (4)**
4:1;39:7;75:25;
76:5

## J

**jail (2)**
9:17;67:17
**Jane (106)**
3:16;4:19,21,22;
6:9,9,23;8:6,11;13:5,
7;19:12,17;20:13,16;
21:6,7;22:12,15,24;
23:15,19;24:2,6,16;
26:20,20,22,23;
29:10,10;31:18;35:6,
11,20;37:2,15,16,17,
17;38:1;41:23;42:2,
6;43:3,9,13;44:3;
45:6,9,10,13,20,22,
22;46:7;47:6,19,25;
48:3,8,14,19,22;49:1,
3,5,7,10,14,25;50:2,5,
8,16,18,20;51:1,8,15,
19;52:3,6,18,22;53:2,
6,10,19,21;56:16;
59:15;62:4,5,8,9,9;
64:16,24,25,25;
70:23;71:18;80:22;
81:9,12
**Jane's (9)**
46:4;47:21;49:5,
18;51:7,10,23;53:12;
54:1

**January (1)**
3:23
**Jeff (1)**
3:8
**Jill (1)**
3:8
**Joan (2)**
3:18;45:4
**job (1)**
52:12
**John (1)**
60:3
**joint (1)**
81:2
**Judge (3)**
5:10;45:1;68:12
**judges (1)**
66:8
**judgment (12)**
71:5;72:17,22;
73:18;75:19,21;76:7;
81:1,3;82:14,23;84:8
**judicial (2)**
77:1;81:6
**justice (1)**
53:17
**justifies (1)**
74:2
**justify (1)**
58:3
**justifying (1)**
25:17

**K**

**Kankakee (2)**
60:4;67:18
**keep (2)**
45:24;77:5
**keeping (1)**
77:13
**Kent (1)**
68:1
**kidnapping (2)**
31:10;32:12
**kids (1)**
63:10
**kill (2)**
38:3;69:2
**killing (1)**
47:25
**kind (6)**
12:16;13:20;47:5;
53:10;54:3;61:11
**Kindles (1)**
50:20
**knew (8)**
26:4;38:2;49:14,
14;57:25;58:3;64:2,3
**Knight (1)**
67:16
**knocking (1)**
64:2

**knowing (2)**
37:9;49:24
**knowingly (2)**
78:12,22
**known (1)**
26:4
**knows (9)**
49:15;50:4,9,22;
52:18;58:24;59:3;
64:14;65:22
**Koster (64)**
3:8,11,18;5:6,10;
6:6,11,13,20;7:24;
9:22,23,25;10:14,15,
17;11:12,15;12:6,7,
12,13,17,21;14:17;
17:23,25;18:10,13;
20:20;23:1,4,6;24:14,
16,19;29:21,23;
31:21,22;39:11,12,
23;40:2;41:10,11,19,
20;42:1,11,13;43:1,6,
19;44:11,16;46:25;
47:6,8;61:17,20;82:8,
9;83:9

**L**

**lady (1)**
68:14
**laid (1)**
4:12
**land (1)**
12:20
**language (1)**
81:1
**lap (1)**
19:15
**large (1)**
81:19
**last (13)**
3:23;8:25;9:7;
10:9;13:18;25:6;
27:5;37:21;45:8;
48:8;64:7;65:5,17
**launch (1)**
12:16
**Laura (1)**
67:22
**law (19)**
21:14;35:22;36:3;
43:8,15;45:4,5;
61:23;64:16;65:16;
66:24;71:8,24;72:8;
79:15;80:3;81:9,12;
82:22
**law-abiding (2)**
79:4,12
**lawful (1)**
77:20
**lawyer (4)**
3:8;11:10;54:14,25
**lawyers (1)**

44:15
**lay (1)**
12:19
**laying (1)**
23:22
**least (6)**
27:5;31:25;32:16;
56:11;60:2;78:4
**leave (4)**
5:23;77:1;78:16;
82:25
**led (1)**
72:3
**left (4)**
5:18;44:24;47:17;
51:4
**legal (1)**
19:20
**legally (1)**
19:5
**legislation (1)**
55:24
**legislator (1)**
55:25
**less (4)**
17:6;57:7,9;66:18
**letter (12)**
4:21;55:4;60:20;
67:14,15,16,17,19,21,
22,24;68:1
**letters (6)**
9:16;10:4;55:10;
67:14;73:14,16
**level (16)**
14:4,4;16:12;18:6,
14;29:14;32:4;38:20,
22,23,24;39:1,2;73:8,
9,10
**levels (5)**
15:8,16,21;18:18;
26:5
**licensed (1)**
3:19
**life (29)**
8:7;13:25;39:4,9;
47:18,21;48:1,2;
50:10;51:17,20,20;
52:8,9,11,15,19;53:5,
9,11,18,20,20;54:9;
59:2;61:2;72:20;
75:7;76:3
**life-equivalent (1)**
66:4
**life-long (1)**
45:10
**lifestyle (1)**
79:12
**lifestyles (1)**
79:4
**lifetime (1)**
57:13
**likelihood (2)**
57:10;60:10

**likely (2)**
36:2;43:24
**limit (1)**
58:10
**line (1)**
32:17
**list (2)**
15:12;23:12
**listen (1)**
69:15
**literally (1)**
46:13
**little (4)**
4:14;32:19;63:10;
70:23,25;72:15;
73:22
**live (2)**
52:17;72:19
**lives (1)**
53:1
**living (1)**
71:23
**local (2)**
76:9;80:2
**location (1)**
78:16
**locked (1)**
61:7
**logic (2)**
25:19;28:7
**logical (1)**
25:19
**Loh (3)**
28:13,14,16
**lonely (3)**
51:1;53:6;68:19
**long (1)**
69:8
**longest (1)**
61:22
**long-term (1)**
51:19
**look (3)**
6:5;14:22;33:20
**looked (1)**
50:24
**looking (5)**
10:22;24:4,4;
28:25;53:23
**looks (1)**
72:2
**loss (2)**
8:5,5
**losses (1)**
40:4
**lot (7)**
48:4;54:17;59:6,
15;60:8;61:8;74:8
**love (1)**
53:5
**loving (2)**
63:13,14
**low (1)**

68:15
**lowest (1)**
54:3
**Loyola (3)**
3:15;45:4,5
**luck (1)**
84:13
**lure (1)**
30:25

**M**

**ma'am (2)**
44:25;46:24
**mailed (1)**
81:11
**maintain (2)**
17:19;25:11
**maintaining (2)**
66:2;79:12
**makes (4)**
21:19;26:15;52:19;
70:9
**making (2)**
37:13;50:15
**Malice (2)**
60:3,5
**man (4)**
45:23;60:3,4;64:24
**manage (1)**
52:17
**managed (1)**
51:8
**mandatory (3)**
66:8,10;76:8
**manipulated (1)**
22:6
**manipulative (2)**
69:6,11
**manner (1)**
77:9
**many (7)**
56:14;63:14;68:6;
74:7;7;75:4,4
**Marcy (1)**
67:21
**marijuana (4)**
30:25;31:3,12;71:3
**Marion (3)**
83:16;84:2,8
**mark (2)**
42:15;74:16
**marriage (1)**
52:12
**Marsh (2)**
81:9,11
**masochistic (10)**
15:7,21;20:3,10,20,
23;33:25;34:15;
35:10;55:21
**masturbate (1)**
24:4
**material (17)**

8:16,19;9:18;15:6;
20:9,24;41:22;43:22,
23,24;62:21,22,25;
63:1,9;67:12;79:18
**materially (1)**
12:11
**materials (3)**
22:10;57:22;64:1
**Matt (1)**
59:24
**matter (6)**
6:3;19:21;43:18;
57:4;59:1;61:9
**mattress (1)**
54:2
**maximum (2)**
14:11;73:10
**may (6)**
6:13;9:5;15:14;
30:1;81:4;82:25
**maybe (2)**
30:12;37:21
**mean (4)**
45:22,23;58:4;
60:19
**means (5)**
26:7;40:14,15;
43:12;83:1
**meant (2)**
54:17;55:9
**measure (1)**
53:17
**meeting (2)**
52:13;79:23
**meets (2)**
31:13;50:17
**member (1)**
67:20
**memo (5)**
10:9,25;30:21;
55:14;57:2
**memoranda (3)**
8:22;12:2;13:18
**Memorandum (13)**
9:1,2,5,7,14;10:4;
12:11;14:25;30:12;
55:8;61:21;67:13;
74:24
**Memorandums (1)**
64:11
**memories (1)**
49:8
**mental (2)**
23:13;26:8
**mentioned (4)**
8:2;10:6;57:8;
67:11
**met (2)**
60:4;80:15
**method (1)**
28:7
**might (1)**
79:19

**millions (1)**
40:3
**mind (2)**
69:6;74:9
**mind-altering (1)**
78:18
**mind-set (1)**
71:12
**minimalized (1)**
60:11
**minimize (1)**
58:7
**minimum (1)**
57:5
**ministries (1)**
68:2
**ministry (3)**
67:17,20;73:16
**minor (12)**
3:15;17:6;21:13;
27:1;30:25;32:2,20,
22,24;38:8;55:20;
80:14
**Minors (1)**
27:13
**minute (1)**
5:5
**minutes (1)**
36:8
**Miss (29)**
5:6;6:20;9:22;
10:15;11:12;12:6,12,
17;14:17;17:23;
20:20;23:4;29:21;
31:21;39:11;40:23;
41:10,19;42:11;
44:11,25;45:1;46:25;
47:6;54:13;61:17;
74:15;82:8;84:16
**missed (1)**
30:13
**Missing (1)**
43:8
**misstated (1)**
32:8
**mistakes (1)**
63:21
**mitigating (1)**
62:12
**mitigation (4)**
60:16;73:13;74:20;
75:13
**MO (1)**
65:17
**modified (1)**
66:6
**modify (1)**
27:17
**Mohr (1)**
68:1
**M-O-H-R (1)**
68:1
**molest (1)**

65:24
**molested (1)**
29:9
**mom (3)**
4:23;48:25;49:5
**moment (2)**
10:19;39:17;48:21;
61:24
**monitoring (1)**
80:10
**month (1)**
48:8
**months (6)**
45:8;75:23,24,24;
76:1;82:1
**more (16)**
4:14;18:14,18;
21:25;36:2;43:23,23;
55:21;56:13;62:3,12,
14,16;66:18;70:11,15
**Morning (5)**
3:4,14;31:15;45:3;
73:8
**most (12)**
28:2,3;48:10;
51:13;55:14;56:4,15;
57:2,17;69:23;71:10;
73:19
**mother (11)**
4:22;45:9,13;
48:19;51:7;53:12;
54:1;59:25;67:24;
71:22;74:1
**motherhood (1)**
52:13
**motion (4)**
39:17,21;81:2;83:7
**move (3)**
6:13;22:13;51:12
**moved (2)**
22:4;69:9
**much (8)**
20:14;21:25;39:18;
53:16;59:7,19;74:6;
84:16
**multiple (7)**
5:18;16:4;18:23;
27:25;28:9;56:9;
62:24
**murder (1)**
54:10
**museums (1)**
63:19
**must (11)**
31:5;66:22,23,24;
67:5;76:9,10,17;78:7,
15;82:23
**myself (4)**
47:25;48:12;60:24;
66:9

**N**

naked (3)
23:24;24:7,21
**name (5)**
4:25;45:3;48:17;
67:17,20
**named (1)**
60:3
**National (1)**
43:7
**nature (6)**
5:14;25:2;56:3;
63:19;66:20;73:18
**nearly (1)**
37:19,20;74:11,18
**necessary (3)**
67:8;78:10;81:14
**need (6)**
5:12;11:24;14:13;
36:25;51:19;82:6
**needs (7)**
10:11;13:23;19:25;
20:4;56:11;78:9;
80:15
**neither (1)**
66:18
**new (7)**
13:8;33:10,10;
49:3;50:15;81:13,13
**Newsom (5)**
16:20;22:1,2,12;
23:15;26:10
**newspaper (1)**
58:20
**next (14)**
33:5;37:25;43:1;
49:23,23;70:3;77:20;
78:3,12,22;79:5,13,
17;80:7
**nice (1)**
63:17
**night (2)**
9:7;13:18
**nightmares (1)**
49:1
**nine (3)**
3:23;41:7;69:9
**nine-count (1)**
3:24
**nobody (1)**
68:9
**nomenclature (1)**
80:2
**none (2)**
19:6;55:22
**Nonetheless (2)**
40:16;65:16
**nor (1)**
66:18
**normal (3)**
23:21;53:20;69:12
**Nos (1)**
42:25
**not' (1)**

38:3
**note (15)**
17:11;18:1,14;
19:2;20:10;23:10;
25:16;26:19;29:24;
38:7,11;73:2,24;
74:22;84:15
**noted (2)**
37:17,18
**notes (3)**
16:8;18:10;26:6
**notice (2)**
8:14;82:22
**Notification (2)**
76:20;80:6
**notify (1)**
78:3;7;79:13,17
**number (7)**
4:17;9:9;10:20;
39:22;55:10;56:13;
81:14
**numerous (2)**
19:9;20:13

**O**

object (4)
7:21;15:3;22:18;
37:12
**objected (3)**
21:8;27:16;68:9
**objecting (1)**
30:15
**objection (31)**
6:1,17;15:23;
17:19;20:8;21:2,3,11,
13;22:18;25:11,25;
27:5,20,24;28:23;
32:6;33:3,5,9,12,14,
16;35:1;36:4,13,14,
22;37:1,9;42:20
**objections (25)**
4:12;11:24;12:1,1;
13:9,19,25;14:22;
15:1,4;21:1;30:8,10;
34:23;35:8;36:5,11,
24;38:13,17,18;41:9;
54:24;75:15;82:5
**objects (2)**
6:14;37:23
**obligations (1)**
79:23
**observed (1)**
79:7
**obtained (1)**
68:4
**obvious (2)**
68:15;78:25
**obviously (5)**
10:22;25:1;31:3;
55:12;59:12
**occasion (3)**
29:25;30:2,4

**occupation (1)**
77:21
**occurred (3)**
30:2,4;37:12
**occurs (1)**
76:7
**off (1)**
44:24
**Offender (21)**
27:12;29:4,13;
57:14;60:12;65:10,
10;76:20,23;77:4,11,
12,19,25;79:16;80:5,
11;83:15,25;84:6,10
**offenders (2)**
29:1;80:11
**offense (41)**
13:2;14:4,4;15:6;
16:10,12;17:6,12;
18:3,6,14,15,17,18,
19,19;26:5;27:16;
29:14;30:3;32:4;
38:20,21,23,24;39:1,
2;56:4;57:20;63:24,
25;66:21,23,24;71:1,
5;74:11;76:24;80:14,
14,22
**offenses (2)**
27:24;56:5
**offer (2)**
42:12;84:3
**offered (1)**
69:13
**offers (1)**
83:15
**Office (8)**
16:14;45:6;76:10;
77:10,16,21;80:4,8
**officer (22)**
25:17,19;43:9;
76:19,22;77:3,5,9,12,
13,17;78:4,7,9,10;
79:6,8,10,14,15,18,21
**officer's (2)**
31:12;54:20
**offices (1)**
52:5
**often (2)**
47:17;69:16
**Ohio (2)**
83:17;84:9
**old (3)**
37:7,9;46:3
**older (2)**
57:6,9
**once (3)**
5:13;54:6;63:13
**one (38)**
5:1;9:9;16:13,24;
17:3,10;18:6,14,18;
19:3,4;22:5;24:10,13,
23;25:12,17;27:23;
28:13,17;30:5,22;

32:2;33:5;39:18;
43:21;48:20;50:22;
53:3,10;59:9,22;
68:16;71:10;72:23;
73:19;74:10;75:25
**oneself (1)**
73:17
**online (11)**
46:12,12;49:12,16;
50:12;51:15,24;53:1,
3;63:5;70:8
**only (21)**
6:21,25;7:17;
16:13;17:3,15;18:6,
21;28:7,17;30:19;
35:6;43:12;46:9;
49:11;51:23;53:15,
17;66:1;71:24;72:7
**oo0oo- (1)**
84:20
**open (4)**
3:2;5:23;24:23;
70:21
**opinion (1)**
7:8
**opportunity (6)**
10:12;22:11;30:13,
14;57:11;62:16
**oral (1)**
46:5
**order (7)**
7:14,17;59:1;
79:25;80:18;81:19;
82:12
**ordered (3)**
4:4;81:7,22
**orders (1)**
81:5
**original (3)**
25:22;27:14;55:14
**others (5)**
46:12;51:15;52:6;
64:2;70:8
**otherwise (2)**
26:8;50:18
**out (18)**
4:12;5:16;20:21;
25:22;29:3;32:17;
51:5;52:20;58:7,11;
61:12;63:7;68:14;
70:15;71:24;72:6,24;
75:3
**outlive (1)**
53:22
**outset (4)**
5:4,6;67:11;68:10
**outside (2)**
50:6;52:20
**outweigh (1)**
73:18
**over (22)**
6:1;11:9;13:3;
29:8;38:1,1;43:23;

44:14,25;45:8;46:6,
6;47:16;52:4,4;54:3,
3;70:16;71:15;72:6;
74:16;84:6
**overrule (9)**
20:7;25:25;28:22;
34:19,23;35:1,8;36:4,
11
**overruled (9)**
21:1;32:6;33:2,13,
15,24;34:2,13;36:22
**overwhelming (1)**
29:8
**own (12)**
9:4;24:2;46:9;
51:25;53:3;54:20;
60:16;70:3;71:9,22;
72:23;73:24

---

**P**

**page (2)**
10:23;36:14
**Pages (1)**
70:18
**paid (1)**
5:16
**pain (3)**
48:4,11;53:21
**par (1)**
58:15
**Paragraph (20)**
27:6;30:16;32:3;
33:14,16,25;34:6,
14,19,21,24;35:9;
36:4,6,14;37:25;
38:24;71:2,7
**Paragraphs (9)**
15:3;21:4,9;26:1,
18;27:4;35:3;72:1,9
**paramount (1)**
81:20
**pardon (1)**
69:19
**parent (2)**
17:7;63:15
**part (4)**
30:4;42:12;64:4;
68:8
**participate (2)**
80:8;83:18
**particular (1)**
67:12
**particularly (6)**
23:14,16;26:9,11,
16;71:6
**parties (5)**
40:17;80:19,24,25;
81:4
**parts (1)**
49:6
**past (1)**
51:11

**pattern (7)**
27:10,19;28:1,10,
11;29:11,19
**pauperis (1)**
83:1
**pay (11)**
40:8,12,15,16;
79:19;80:19,21;81:5,
18,23;82:25
**payment (1)**
81:10
**peer (1)**
50:17
**peers (2)**
50:21;79:1
**peer-to-peer (1)**
44:7
**penalties (1)**
56:1
**pending (1)**
7:19
**penetrated (1)**
35:12
**penetrating (1)**
19:19
**penetration (5)**
16:16;35:23,23,25;
36:3
**Penn (1)**
65:13
**people (13)**
41:4;42:6;44:7;
49:24;51:6;52:25;
53:23;58:19;63:5,5,
7;65:10;69:12
**people's (1)**
50:20
**percentage (1)**
44:9
**perfect (1)**
83:4
**perhaps (3)**
19:5;52:12;58:9
**period (6)**
5:24;29:8;47:17;
52:9;56:7;74:17
**periodic (1)**
76:16
**permissible (1)**
16:4
**permission (1)**
77:2
**permit (3)**
25:13;79:5,7
**permits (1)**
5:25
**permitted (3)**
11:19,21;17:20
**person (19)**
5:2;31:8,9,9;32:10,
11;38:9;44:2;45:25;
50:17;61:7,10,14;
63:22;65:5,17,20;

67:19;78:23
**phase (2)**
41:15;52:14
**phases (1)**
52:12
**phone (2)**
51:25;81:13
**phones (2)**
50:19;52:5
**phonetic (2)**
67:23,25
**photograph (4)**
24:7;35:24;36:2;
44:3
**photographed (1)**
63:25
**photographs (4)**
19:18;23:19,21;
35:16
**photos (1)**
23:23
**physical (5)**
23:13;26:8;38:4;
45:10;56:5
**physically (1)**
47:15
**pick (3)**
44:19,20;72:18
**picture (2)**
22:15;50:24
**pictures (9)**
22:14;46:1,10,11;
49:15,16;50:6,12;
64:9
**place (3)**
32:19;47:22;51:3
**placed (5)**
11:17;38:6;76:2;
83:14,24
**placement (1)**
24:25
**places (1)**
78:18
**placing (5)**
31:8;32:10,24;
38:8;46:12
**plain (1)**
79:7
**plan (3)**
13:3,9;71:21
**play (2)**
12:21;41:23
**played (1)**
72:6
**playing (1)**
42:11
**plea (4)**
4:3;57:24;82:18,19
**plead (1)**
28:20
**pleasure (1)**
46:9
**pled (4)**

3:23;28:17;41:7;
57:23
**plied (1)**
71:3
**PLLC (2)**
81:9,12
**plots (1)**
49:6
**plug (1)**
37:23
**pm (1)**
84:19
**PO (1)**
81:12
**point (11)**
13:15;19:6;21:18;
31:23,25;32:13;44:6;
59:16;68:13;69:22;
72:4
**pointed (2)**
20:21;75:3
**points (2)**
20:16;38:25
**police (5)**
25:16,18;64:2;
65:12;72:3
**pornographers (1)**
56:1
**pornography (21)**
3:25;4:1,2;12:23;
19:4,8;21:17;35:5;
40:6;42:18;44:8;
45:19;48:14;55:22;
62:23,24;71:14,15;
74:5,10,13
**portrays (2)**
15:6;20:9
**position (3)**
13:13;21:15;28:21
**positive (1)**
55:10
**possess (4)**
43:19,24;76:13;
78:20
**possessed (2)**
43:18;71:14
**possesses (1)**
74:10
**possessing (2)**
45:19,21
**possession (4)**
4:2;5:1;6:24;75:6
**possible (5)**
13:23;20:3;57:19;
63:11;84:2
**possibly (1)**
38:3
**potential (3)**
8:5;15:15;20:5
**potentially (2)**
56:25;59:18
**PowerPoint (6)**
12:22;41:24;42:8,

10;43:5;70:9
**pragmatically (1)**
72:12
**precise (1)**
81:1
**precisely (1)**
29:6
**preference (3)**
84:2,3,5
**pregnant (1)**
69:18
**preparation (2)**
4:4,9
**prepared (2)**
5:3;8:9
**preparing (2)**
7:2;67:10
**prepubescent (1)**
55:20
**prerogative (1)**
40:7
**presence (2)**
74:1;78:13
**present (13)**
3:7;14:17;15:9;
25:3;41:16;44:12,14;
45:1;55:4;56:6;
59:16;60:16;78:15
**presentation (11)**
13:3,6;41:20,24;
42:1,8,10;43:5;
46:17;59:6;84:16
**presented (2)**
59:7;67:12
**Presentence (38)**
4:5,5,10,11,13,16;
8:3,12;11:5,9,16,23;
12:9;13:9,18,21;
14:23;15:2;20:1;
21:4;26:21;27:14;
28:18;30:23;35:8;
38:15,16;54:18,19,
22;70:19;71:2,7;
72:1,9;74:1;78:17;
81:16
**pressure (1)**
48:12
**pretrial (1)**
68:4
**pretty (1)**
11:1
**preview (1)**
12:18
**previewed (1)**
46:17
**previous (1)**
58:2
**previously (9)**
29:5;35:2,7;36:12,
15,21;41:9;75:16;
82:6
**principal (3)**
73:13;74:19;75:12

**printouts (1)**
42:14
**prior (9)**
6:20;27:15;29:15;
42:19;43:11;60:13;
66:7;78:4;82:3
**prison (9)**
47:22;53:10,19;
54:3;61:12,12;67:20;
68:1;73:16
**Prisons (4)**
75:22;76:12,22;
84:10
**privacy (2)**
26:14;47:15
**privy (1)**
62:23
**probably (7)**
13:12;25:5;40:14;
44:2,4;49:17;56:17
**Probation (24)**
16:14;31:11;54:20;
76:10,19,22;77:2,5,9,
10,12,16,17,21;78:3,
7,9;79:5,8,13,17,21;
80:4,8
**problem (4)**
7:2;15:13;25:8,10
**Procedure (1)**
82:16
**proceed (1)**
14:19
**proceeding (1)**
82:19
**process (1)**
14:16
**produce (2)**
48:14;62:7
**produced (5)**
12:24;62:4,5,9;
65:1
**producing (1)**
45:19,20;62:23;
74:13
**production (5)**
3:25;35:5;62:21;
71:13;74:16
**profiting (1)**
56:21
**profoundly (1)**
68:22
**program (7)**
80:12;83:15,18,25,
25;84:6,10
**programs (2)**
44:7;80:10
**progress (1)**
23:23
**prohibit (1)**
16:6
**prohibited (6)**
16:5;25:14;29:4,
12,19,25

**project (2)**
51:24;58:8
**proliferates (1)**
43:23
**proliferation (4)**
12:23,24;41:21;
43:2
**promises (2)**
69:13,16
**promote (1)**
66:23
**promotes (1)**
79:2
**pronounce (1)**
67:25
**properly (2)**
14:13;24:9
**prosecute (1)**
44:9
**pro-social (2)**
77:24;79:3
**protect (2)**
21:21;80:16
**protected (1)**
47:20
**protecting (1)**
67:1
**protection (4)**
77:4,11,19;78:10
**provide (7)**
24:17;28:7;66:24;
77:3,11,19,25
**provided (1)**
57:21
**provides (1)**
15:18
**providing (1)**
47:19
**provision (1)**
26:3
**provisions (2)**
39:4,5
**PSR (2)**
9:23;23:9
**psychological (4)**
8:9,11;45:10;80:9
**psychologically (1)**
47:16
**PsyD (1)**
8:10
**public (2)**
67:2;80:17
**publicity (1)**
58:18
**punch (2)**
32:17;38:1
**punished (2)**
29:1;53:18
**punishment (4)**
60:17;62:18;66:24;
72:25
**purchase (1)**
78:20

**purpose (2)**
7:22;25:23
**purposes (4)**
14:14;20:4;30:1;
42:22
**pursuant (11)**
5:22;15:15;27:7;
30:23;34:7;75:20;
76:4,7;77:6;81:2;
82:15
**pursue (3)**
5:25;6:3;83:1
**pushed (2)**
22:16;23:24;24:6
**pushing (1)**
23:20
**put (8)**
49:12;50:12;51:11,
14;54:1;58:13;60:22;
70:8
**putting (1)**
19:18;32:2;71:21

## Q

**qualified (1)**
20:2
**qualify (2)**
17:11;22:12
**qualifying (1)**
76:24
**quarter (1)**
44:19
**question-and-answer (1)**
4:20
**quintessence (1)**
20:18
**quote (3)**
7:11;69:1;71:9
**quoting (1)**
37:17

## R

**rage (1)**
48:20
**raise (2)**
20:5;21:12
**raised (9)**
11:24;14:23;30:8,
11;36:24;38:13;
63:14;74:4,14
**rampant (1)**
74:17
**range (6)**
39:4,8,9;82:1,1,2
**rape (1)**
65:24
**raped (3)**
29:9;46:4;54:2
**rare (1)**
65:8
**rather (6)**

29:17;47:19;50:15;
52:13;53:5;70:1
**reached (1)**
40:20
**reaction (2)**
49:7;65:2
**read (2)**
10:21;56:14
**reading (1)**
18:9
**reality (1)**
51:21
**realized (1)**
58:5
**really (8)**
10:11;60:19,21;
61:5;68:12;71:25;
72:22;73:22
**reason (3)**
22:21;38:11;78:21
**reasonable (2)**
14:19;66:14
**reasons (15)**
24:8;26:23;27:3;
34:20;35:1,7;36:12,
15,21;54:22,23;68:7,
15;77:22;82:3
**Reaux (1)**
67:22
**recall (1)**
35:15
**recalled (1)**
38:1
**receipt (2)**
39:17;81:8
**receive (3)**
5:20;11:4;55:4
**received (18)**
4:5;5:19;8:21,23;
11:13;40:6;43:8;
67:15,16,17,19,21,22,
24,25;69:24;75:7;
81:8
**receiving (2)**
6:14;62:24
**recess (1)**
44:21
**recidivism (7)**
57:2,3,7,16;77:25;
79:2;80:16
**recognize (2)**
50:7;53:14
**recognized (1)**
50:23
**recommend (2)**
83:18;84:8
**recommendation (2)**
11:21;61:21
**recommendations (2)**
61:18;83:24
**reconcile (1)**
59:22;60:9;64:23
**record (20)**

3:5;4:7;8:1,22;
10:7;11:17;14:14;
26:19;29:7;32:24;
34:22;37:14;39:22;
42:12;44:22;54:24;
55:25;74:22;81:2;
84:15
**recording (1)**
46:11
**recounted (1)**
37:17
**recounts (1)**
32:15
**recovered (3)**
43:10,14,20
**recovery (1)**
51:18
**recreate (1)**
49:6
**red (1)**
62:21
**reduce (4)**
57:3,16;77:25;
80:16
**reduced (2)**
14:6;56:1
**refer (1)**
18:15
**reference (3)**
5:9;47:5;68:13
**referenced (3)**
9:16,24;47:3
**references (4)**
31:2;46:15,17;
58:20
**referencing (7)**
5:7;10:5;18:5,16;
37:14;38:6;46:24
**referred (1)**
47:6
**referring (2)**
18:2;69:4
**reflect (1)**
66:22
**refrain (1)**
76:14
**regain (1)**
51:17
**regard (2)**
18:22;30:2
**regarding (12)**
13:6;27:9;31:17;
37:1;55:15;56:3;
57:1,17;61:20,25;
63:12;83:12
**regardless (2)**
58:25;73:3
**register (2)**
57:14;80:2
**registering (1)**
60:12
**Registration (3)**
76:20,23;80:5

**regretted (1)**
47:22
**regularly (1)**
11:1
**rehabilitate (1)**
73:17
**rehabilitation (6)**
77:4,11,19;78:1,
11;79:16
**relate (3)**
15:4;35:3;77:17
**related (1)**
5:12
**relates (9)**
15:6,9;21:4;34:24;
35:5,10;39:25;40:21;
41:16
**relating (3)**
4:24;33:10;39:21
**relationship (6)**
47:3;51:5;52:8;
59:19;71:8,10
**relationships (4)**
50:16;52:7;54:10;
79:3
**relax (1)**
50:21
**release (8)**
39:8;57:13;60:11;
76:3,4,6,12,16
**released (4)**
76:11;77:23;79:10;
80:13
**relevant (1)**
13:1
**relieved (1)**
83:6
**rely (3)**
19:7;32:14;34:22
**remain (1)**
83:5
**remains (1)**
53:15
**remember (1)**
54:24
**remembering (1)**
21:7
**remind (1)**
83:4
**reminder (1)**
52:3
**reminds (1)**
48:17
**remorse (6)**
56:22;57:20;60:10;
63:12,22;73:20
**remorseful (1)**
60:19
**render (1)**
66:12
**re-offense (1)**
60:10
**reopening (1)**

53:24
**Repeat (3)**
27:12;29:4;70:21
**repeated (3)**
28:3;29:11;58:19
**repeatedly (6)**
29:9;48:24;51:16;
64:12;70:3,6
**repeating (1)**
41:8
**replayed (1)**
52:4
**Report (54)**
4:5,5,10,11,13,16,
23,24;5:3;6:22;8:3,4,
7,10,10,13;11:5,9,13,
16,19,22,23;12:9;
13:9,18,21;14:23;
15:2;20:1;21:4;
26:21;28:18;30:23;
35:8;38:16,16;54:18,
19,22;64:12;65:7,12,
16;70:19;71:3,7;
72:2,9;74:1;76:10;
77:8;78:17;81:16
**reported (2)**
64:16;65:14
**reporter (1)**
44:18
**reporting (1)**
57:9
**reports (1)**
71:18
**reprehensible (1)**
62:13
**representation (1)**
83:6
**representatives (1)**
58:21
**represented (1)**
59:10
**represents (1)**
45:6
**request (8)**
5:8,17,21,24;6:1,
10;7:3,3
**requested (1)**
8:19
**requesting (1)**
74:24
**requests (2)**
65:20;83:12
**require (1)**
52:16
**required (2)**
57:14;66:13
**requirement (1)**
80:5
**requirements (1)**
76:20
**research (3)**
51:24;78:2,24
**residence (2)**

78:4,6
**residential (1)**
83:24
**resides (1)**
76:23
**resolved (1)**
11:25
**respect (2)**
19:11;66:23
**respectful (1)**
63:15
**responded (1)**
6:20
**response (3)**
9:13;10:9;75:3
**responsibilities (1)**
58:23
**responsibility (5)**
38:25;58:25;64:6,
19,20
**responsible (3)**
62:3;63:13;83:5
**rest (3)**
50:10;51:20;52:7
**restitution (23)**
5:8,15,17,22,23,25;
6:10,25;7:7,12,14;
39:16,21,25;40:16,
21;41:5;79:20;80:20,
21;81:3,6,19
**result (3)**
40:4,18;45:11
**resulted (1)**
30:3
**return (2)**
5:19,20
**review (12)**
5:12;8:15,17,19,
20;10:13,19;11:9;
22:10;36:1;70:5;
81:15
**reviewed (11)**
4:10;8:1,7,10,13;
9:18;10:7;20:9;
42:19;67:11;68:5
**reviewing (1)**
10:25
**revised (1)**
30:23
**ridiculed (1)**
50:23
**riding (1)**
63:19
**right (46)**
3:5,22;7:6;9:11;
11:12,16;12:8,16;
14:10,19;17:16;
21:22;22:25;23:19;
30:17;33:3,6,10,11;
36:19,23;37:13;
38:12,15;39:16;41:3,
8,14;42:20;44:11,17;
54:13,14;57:23;

58:11,16;59:15;
60:14;66:5;75:19;
82:5,12,20;84:4,11,
13
**risk (3)**
77:25;78:19;79:2
**room (5)**
24:22,23,25;26:14;
45:15
**roundabout (1)**
71:25
**routine (1)**
70:7
**Rule (1)**
82:15
**ruled (7)**
33:4,6,14;34:2,10,
16;38:12
**Rules (1)**
82:16
**ruling (5)**
29:23;30:7;33:17;
38:11;54:23
**rulings (3)**
38:18,22;39:13
**run (2)**
21:20;76:4
**running (1)**
50:6

# S

**S&M (4)**
18:22;19:5,9,17
**sad (2)**
48:6;68:22
**sadistic (10)**
15:7,21;20:2,9,19,
22;33:25;34:14;
35:10;55:20
**sadness (1)**
50:1
**safe (2)**
45:24;47:20
**safety (4)**
51:17;77:12;78:11;
79:16
**sale (1)**
62:22
**same (24)**
15:14,24;16:1,7,12,
16;17:20;19:22,22;
25:4;33:9,19;34:6,
21;35:9;45:15;48:1,
2;49:23;54:11;62:6;
69:5;73:2,6
**sampling (1)**
8:16
**satisfied (2)**
19:5;40:18
**satisfy (2)**
19:9,10
**saw (8)**

19:13;20:12;24:11;
43:7;59:4,6;64:13;
65:13
**saying (4)**
9:10;17:2;37:19;
69:19
**scale (1)**
66:17
**scandal (1)**
65:13
**scar (1)**
53:24
**scared (3)**
47:24;49:2;50:5
**scars (1)**
53:22
**Schlesinger (101)**
3:8;6:17,19;7:6,10,
16,21;8:25;9:11,21;
10:2,3,8,16,18,20;
11:4,7,10;12:4,5,14,
15,19;13:15,17;14:6,
10,21;15:3,11;16:23;
17:1,10,16;19:24,25;
21:10,12,22,24;25:5,
7;27:8,9,14,19;30:13,
17,19;32:7;33:7,8,11,
18,19,23;34:4,5,11,
12,18;35:15,19;36:9,
10,20,23,25;38:13,
14;39:14,15;40:19,
22;41:12,13;42:22;
46:14,21;47:2,5,9;
54:14,25;55:3,7,9;
60:14;75:13,14;
82:10,11;83:3,11,14,
21;84:4,5,11,12
**school (7)**
3:19;45:5;50:15,
20;51:8,24;54:10
**schooling (1)**
77:22
**science (1)**
78:1
**seal (2)**
11:17;42:18
**sealed (2)**
11:19;46:16
**seated (1)**
3:4
**second (17)**
4:13,15;8:2,12;9:6;
16:25;18:11;21:2,3;
28:23;32:9,23;39:18;
41:15;67:23;74:23;
77:8
**secret (1)**
47:10
**secreted (1)**
24:12
**section (2)**
11:21;15:15,17;
17:22;19:10;23:10;

27:11,23;42:2
**sections (2)**
42:1;75:20
**secured (1)**
8:18
**Security (1)**
8:18
**seeing (1)**
52:24
**seeking (1)**
5:15
**seem (1)**
14:19
**seems (4)**
10:23;25:23;70:1;
71:2
**selected (1)**
8:15
**self-esteem (1)**
68:15
**selling (1)**
78:14
**semblance (1)**
53:20
**send (1)**
49:4
**sense (2)**
51:17;74:8
**sent (1)**
10:3
**sentence (49)**
8:24;13:25;18:11,
13;39:4,6;49:21,22;
53:18;54:16;55:2;
57:4,5;59:2;60:13;
61:18,22;62:17,15;
65:21,25;66:1,1,3,4,
12,15,16,22,25;67:3,
5,8;73:3,6;74:20,25;
75:7,10,17,18;80:21;
81:25;82:2,4,7,12,15,
21
**sentenced (1)**
45:18
**sentencing (41)**
3:7;4:9;8:22,25;
9:2,4,7,14;10:9;12:2,
11;13:18;14:25;16:9;
18:5;22:20;29:2;
30:11;41:15;42:19,
22;44:24;47:8;55:8,
15,18;61:21;62:18;
64:11;66:6,7,11,19;
67:6,9,10,13;74:5,15,
23;83:12
**separate (3)**
18:17;56:12;70:12
**separately (2)**
6:3;19:16
**September (1)**
8:25
**series (4)**
8:21;23:21;43:1;

55:14
**serious (9)**
25:18;28:3;31:10;
32:11,21;38:9;56:4;
73:19;80:14
**seriousness (2)**
13:2;66:23
**served (3)**
75:25;83:22;84:1
**set (4)**
12:1;18:23;61:21;
66:2
**sets (1)**
11:23
**settlement (3)**
40:7,10,17
**Seventy-three (1)**
39:23
**several (5)**
4:11;45:8;67:14;
68:2;74:9
**sex (22)**
18:23;19:4,10,13;
20:17;27:12,15;46:5;
54:5;57:14;60:12;
64:8;76:20,22;80:5,
11,11,14;83:15,25;
84:5,10
**sexual (31)**
15:16,16,17,25;
16:16,18;27:10,19;
28:10,11,15;29:4,5,
12,20,25;31:1,5,6;
34:8;45:11;46:2,6,9;
47:23;48:13;65:2,7;
68:17;70:2;71:24
**sexually (12)**
24:3;29:9;44:3;
45:25;46:7;49:11;
50:24;63:3;64:24;
65:6,23;70:3
**shaking (1)**
61:13
**shall (24)**
11:18;76:2,8,9,13,
14,15,19,25;77:1,8,
15,20;78:3,12,22;
79:5,7,13,17;80:2,8;
81:22,24
**shamed (1)**
50:23
**shared (3)**
46:12;51:15;57:22
**sharing (1)**
46:2
**Sharon (1)**
67:16
**shooting (1)**
25:16
**short (1)**
41:24
**show (5)**
19:18;42:8;56:22;

60:2;63:6
**showed (4)**
19:4;24:13;64:9;
72:14
**shower (2)**
24:24;25:9
**shows (3)**
60:10;70:5;71:11
**shy (1)**
48:5
**sic (6)**
10:23;16:23;18:18;
25:16;47:2;64:11
**sic- (1)**
16:22
**side (3)**
41:16;75:15;82:5
**Sidebar (2)**
47:1,12
**sides (2)**
9:19;14:18
**significant (5)**
56:7,24;57:3,12,18
**significantly (1)**
57:6
**similar (1)**
65:1
**similarly (2)**
51:9;67:6
**simply (1)**
72:2
**single (7)**
19:7;44:2;62:5,8,8,
9;63:15
**single-most (1)**
68:11
**sits (1)**
19:14
**situated (1)**
67:6
**situation (9)**
22:24;25:9,10,12,
20;29:7;35:7;56:21;
60:1
**situations (1)**
23:3
**six (2)**
37:5;55:21
**six-to-seven-year-old (1)**
42:3
**slave (1)**
54:5
**sleeping (11)**
21:19;22:2,9,16;
23:9,15,20;24:3,5,8;
26:10
**slide (1)**
42:15
**slides (3)**
43:1,7,21
**slightest (1)**
35:23
**small (2)**

44:9;75:6
**smallest (1)**
48:20
**smart (2)**
50:19;63:14
**smell (1)**
48:18
**smile (1)**
46:7
**Smith (1)**
4:23
**social (2)**
52:19;78:1
**society (1)**
52:2
**sold (1)**
78:19
**somebody (8)**
26:7,11,13;29:4;
67:16;74:10,12;75:7
**somehow (3)**
58:10;60:5;82:18
**someone (4)**
48:9;49:4,20;50:6,
23;54:5
**sometime (1)**
11:13
**sometimes (2)**
48:9;57:9
**somewhat (2)**
25:8,10
**somewhere (1)**
5:9
**SOMP (1)**
83:16
**sorry (6)**
15:11;16:9,21,24;
18:16;47:13;61:1
**sort (6)**
4:20;9:19;12:3;
21:20;71:17;78:25
**sorts (1)**
20:22
**sound (2)**
7:18;63:21
**Sounds (1)**
31:24
**spawned (1)**
70:11
**speak (1)**
65:19
**speaking (1)**
72:12
**special (4)**
41:6;79:20,25;
81:23
**specific (8)**
16:10;17:12;18:3,
15,17,19;19:3;67:1
**specifically (11)**
16:5,6,10;18:4;
19:18;22:3;23:11;
25:14;40:11;56:12;

83:16
**specified (1)**
18:1
**specifies (1)**
18:21
**specify (1)**
16:19
**spending (1)**
50:21
**spent (1)**
73:7
**spite (1)**
63:21
**spoke (1)**
58:21
**spoken (1)**
64:24
**stage (1)**
52:14
**stages (1)**
52:11
**stand (1)**
13:10
**start (3)**
14:15;25:22;59:19
**started (2)**
49:5;69:8
**Starting (1)**
46:3
**state (10)**
8:22;16:10;38:19;
43:17;44:8;65:13;
76:9,22;80:3;81:2
**stated (13)**
26:23;27:3;34:20,
23;35:2,7;36:12,15,
22;38:2;41:9;54:22;
82:13
**Statement (9)**
4:19,20;32:15;
37:11;45:17;49:23;
60:15;68:7;69:22
**statements (6)**
12:9;38:16;54:19;
68:5,12,22
**States (16)**
3:6;12:25;23:11;
26:3,6;31:2;43:13,
13;44:2,22;63:8,8;
66:7;75:2,20;81:23
**statistics (2)**
55:16;57:15
**Statute (1)**
31:2
**statutory (5)**
22:22;39:5;67:9;
77:5;82:20
**stay (1)**
52:20
**step (1)**
28:23
**steps (1)**
73:17

**stiff (1)**
72:24
**still (16)**
13:19;14:13;17:19;
30:23;32:14;35:16,
24;48:3,4;49:2,24;
54:6;64:15;73:5,8,9
**stipulated (1)**
80:23
**stipulation (1)**
81:3
**stole (1)**
72:18
**stolen (1)**
53:9
**stop (8)**
16:25;20:15;34:3;
48:11;50:5;58:1;
70:6,7
**stopped (2)**
58:5;61:1
**stories (1)**
49:6
**straightforward (1)**
29:17
**stretch (1)**
44:1
**strikes (1)**
24:18
**stripped (1)**
53:19
**strive (1)**
65:3
**strongly (1)**
60:5
**struck (1)**
37:3
**struggles (6)**
48:15,22;50:16;
51:10,23;52:6
**struggling (1)**
48:21
**student (4)**
3:19;45:4;63:15;
76:24
**stuff (2)**
5:5;39:18
**stupid (1)**
63:16
**sub (1)**
9:6
**subheading (1)**
37:15
**subject (2)**
31:9;38:9
**subjected (2)**
32:11,21
**subjecting (1)**
32:19
**submission (1)**
43:11
**submit (3)**
23:25;32:20;76:15

**submitted (1)**
6:23
**Subpart (1)**
38:8
**subsection (14)**
16:7,11,12;17:3,13,
14;25:15;27:17,18;
29:24;30:1;31:2,4;
32:10
**subsections (3)**
17:9,18;18:3
**substance (4)**
76:14,15;78:14,17
**substances (2)**
78:18,20
**subtracted (1)**
38:25
**suffer (1)**
54:8
**suffered (3)**
45:12;49:8;69:1
**suffice (1)**
69:22
**sufficient (1)**
67:8
**suffocating (1)**
48:12
**suggest (1)**
43:12
**suggested (3)**
13:22;20:3;31:11
**suggesting (1)**
55:13
**suggests (1)**
36:2
**Supervised (6)**
39:8;57:13;60:11;
76:2,3,6
**supervision (2)**
77:14;80:20
**supplement (1)**
30:20
**supplemental (8)**
7:13;9:2,6,14;
30:11,21;67:13;
74:23
**support (8)**
13:8;24:20;52:17;
60:2,6,7;65:20;75:2
**supporting (1)**
62:6
**supports (1)**
32:25
**suppose (2)**
75:17;84:2
**Supreme (3)**
66:5;75:5,7
**Sure (11)**
17:1,13;28:17;
46:23;23;54:17;55:6,
11;65:1;83:13,23
**surprise (1)**
68:23

**susceptible (5)**
23:14,16;26:9,11,
16
**suspect (2)**
65:5,17
**sustain (1)**
8:6
**sustained (1)**
10:24
**system (1)**
43:17

**T**

**talk (7)**
4:14;12:17;39:16,
24;48:25;50:7;59:8
**talked (1)**
59:21
**talking (3)**
19:3;34:7;73:8
**talks (7)**
48:23;50:11;51:1;
52:18,23;53:2,6
**tape (1)**
70:5
**technical (1)**
45:21
**technological (1)**
58:9
**telling (6)**
17:4;9;46:8;64:7;
69:3,18
**tells (6)**
68:20,25;69:5,8,10,
12
**tempered (1)**
73:22
**ten (2)**
39:8;78:4
**term (4)**
19:20;29:9;75:23,
23,24;76:1
**termed (1)**
9:13
**terminated (1)**
78:6
**terms (2)**
45:21;76:3
**test (1)**
76:15
**testified (1)**
58:17
**testing (1)**
80:9
**tests (1)**
76:17
**thanks (2)**
48:1;54:13
**theirs (1)**
14:8
**theories (2)**
13:23;31:11

**theory (2)**
17:4,8
**therapeutic (1)**
80:15
**therapy (2)**
51:19;52:17
**thereafter (1)**
76:17
**therefore (1)**
22:6
**thinking (1)**
26:16
**thirty (1)**
74:25
**though (4)**
28:5;40:3;52:22;
58:4
**thousands (7)**
44:7;46:1;51:14;
62:4,10;70:14,15
**threat (3)**
31:3,12;32:12
**threatened (1)**
32:2
**threatening (3)**
31:8;32:24;38:8
**threats (5)**
30:24;32:5,9,10;
69:17
**three (10)**
32:16;37:18,19;
38:4,24;56:15;62:10;
70:25;77:15;83:23
**throughout (4)**
51:16,19;52:5,7
**thumb (1)**
66:16
**Thursday (2)**
22:11;31:15
**Thursday's (1)**
59:6
**ties (1)**
37:23
**till (1)**
44:20
**time' (1)**
69:12
**times (4)**
32:16;37:18,20;
38:4
**tired (1)**
48:11
**Title (1)**
75:20
**today (13)**
5:22;9:18;10:11,
22;11:6;12:18;42:14;
45:7,14,18;49:22;
59:24;60:7
**today's (1)**
11:14
**together (1)**
18:20

**told (4)**
6:20;64:3;69:2,11
**tomorrow (1)**
49:23
**top (4)**
22:16;23:20,21;
24:6
**torture (1)**
71:16
**total (7)**
38:20,22;39:1,2;
41:6;75:25;81:23
**touch (1)**
73:12
**touching (4)**
19:14;35:21;64:15;
69:8
**trade (1)**
62:22
**traded (1)**
62:25
**trading (2)**
44:8;63:1
**training (1)**
77:22
**transition (1)**
41:14
**trapped (1)**
53:11
**trauma (1)**
45:14
**treat (2)**
29:15;74:5
**treat- (1)**
83:25
**treated (1)**
29:13
**treatment (3)**
80:10;83:25;84:10
**trial (3)**
56:23;58:13,18
**tried (2)**
30:21;51:9
**trigger (2)**
52:3,15
**trouble (1)**
16:8
**troubled (3)**
22:8;59:18,18
**troubling (1)**
69:23
**true (8)**
40:19;49:24;58:17;
64:14;65:4,22,23;
72:11
**truly (4)**
64:6,20;66:1;70:17
**trust (4)**
45:23;47:14;52:6;
81:10
**truth (2)**
60:21;64:3
**try (6)**

4:6;21:20;51:20;
59:5;60:7;63:20
**turn (6)**
13:3;44:14,25;
60:24;61:10;81:7
**two (16)**
3:12;12:2;15:15,
16;18:3,17;19:22;
25:20;26:5;34:21;
42:1;57:15;59:24;
60:4;61:8;70:23
**two-level (1)**
35:4,6

## U

**uh (1)**
28:1
**ultimately (2)**
7:20;67:7
**unable (2)**
45:14;82:25
**unaware (2)**
6:19;25:1
**unbeknownst (1)**
26:14
**unconstitutional (1)**
75:1
**under (31)**
11:17;15:5;16:17;
17:4,8,15,21;20:2;
21:5;23:22;26:3,10;
27:2,17;31:4,13;
33:1;35:4;36:7,16;
38:24;42:18;48:12;
55:18;64:19;66:13;
74:6;75:1;76:21;
80:5;82:21
**understands (1)**
59:10
**understates (1)**
20:14
**Understood (3)**
11:3;60:18;61:4
**underwear (1)**
23:25
**undo (1)**
59:12
**Undoubtedly (1)**
70:14
**unforgivable (1)**
72:22
**unfortunately (1)**
65:8
**unimaginable (2)**
45:16;70:22
**unique (1)**
23:3
**United (11)**
3:6;12:25;31:2;
43:13;44:2,22;63:8;
66:7;75:1,20;81:23
**universe (2)**

9:20;74:12
**University (2)**
4:24;45:5
**unlawful (1)**
76:14
**unlawfully (1)**
76:13
**Unless (6)**
13:8;18:20;25:14;
35:14;77:21;83:6
**unpaid (1)**
79:19
**unquote (1)**
7:11
**unspeakable (1)**
74:2
**unusually (3)**
23:12,15;26:7
**unwarranted (1)**
67:6
**up (16)**
5:20;6:5;8:18;
19:19;22:16;23:20,
24;24:6;37:22;38:22;
39:18;44:19,20;
54:18;61:7;69:3
**upbringing (1)**
73:24
**upon (9)**
15:14;23:21;13;
28:19;30:24;37:4;
81:8;82:15;83:7
**upset (1)**
60:1
**US- (1)**
16:9
**USC (9)**
5:23;15:18,25;
31:3;34:9;38:7;76:4,
21;77:7
**use (20)**
20:21;25:16;29:10;
31:14;32:1,2,5,8,21;
37:1;48:5;51:22;
52:1;55:19;62:1;
68:9;69:18,19;76:14;
78:20
**used (12)**
15:24;16:13;18:7,
21;31:17;37:8;48:5;
53:15;68:8;69:12,17;
78:19
**using (5)**
31:7;37:23;64:9,
12;78:14
**Utah (1)**
4:24

## V

**vagina (6)**
19:14,19,19,20;
35:20,21

**vaginal (1)**
16:15
**vaginally (1)**
35:12
**various (3)**
31:10;52:11;70:19
**VI (1)**
42:3
**via (1)**
81:10
**vibrator (3)**
19:18;35:12,19
**vibrators (1)**
20:21
**vic- (1)**
35:20
**victim (58)**
3:12,16;4:18,20,22,
25;5:15;7:12;8:6;
13:1,5;14:17;20:13;
21:5,6,14;22:8,13,23;
23:7,12;24:9,15,18,
25;25:11,24;26:1,2,4,
5,7,17,22,25;27:1;
35:12;40:3,9,17;
41:1;42:3;45:7;
46:16,18;68:23;
69:20,22;70:12,15,
20;71:18;74:3;79:24;
80:21;81:6,9;84:17
**victimize (1)**
51:9
**victimized (3)**
49:20;51:16;70:23
**victim-related (1)**
36:6
**victims (21)**
5:1;13:4;22:2,5;
35:21;53:21;
56:9,13,14;58:13,17,
22;62:10,13,14,24;
65:7,7;71:16,17
**victims' (3)**
44:15;68:5,12
**victim's (3)**
4:23;32:15;40:7
**video (8)**
19:13;20:12;24:22,
25;35:16;43:9;44:3;
50:24
**videoed (1)**
54:2
**videos (26)**
24:23;31:15;35:13;
37:7;41:23;42:5;
43:2,14;46:1,11,11;
49:12,15,16;50:7;
51:14;58:16;59:22;
62:4;63:2,6;64:9,25;
68:17;70:8,24
**videotaped (4)**
25:1;26:15;63:25;
70:4

**videotapes (1)**
72:13
**view (4)**
13:16;20:17;35:23;
79:8
**viewable (1)**
46:13
**viewed (3)**
35:12;51:15;74:25
**VII (5)**
3:24;39:5,7;75:23;
76:5
**VIII (4)**
3:25;39:7;75:24;
76:5
**violated (4)**
47:14;48:3;49:25;
51:13
**violation (2)**
75:8,10
**violence (11)**
15:8;20:12,18,24;
30:25;31:3,12;32:5,9,
12;34:1
**virtue (1)**
24:21
**visit (1)**
79:6
**Vitae (1)**
5:2
**vital (1)**
51:18
**Vizcarra (5)**
16:2,3;18:25;
25:12;27:21
**voiced (1)**
75:16
**voicemail (1)**
5:20
**voicemails (1)**
5:18
**voices (1)**
45:13
**Von (3)**
28:13,14,16
**vulnerable (25)**
21:5,14,20,25;22:1,
9,12,23;23:7,12;24:8,
18;25:2,9,11,22,24;
26:1,2,5,6,7,17,22,25

**W**

**waive (2)**
11:2;81:17
**waived (1)**
81:20
**walk (1)**
50:5
**walking (2)**
49:2;54:7
**wants (3)**
50:8;55:25;62:11

**warranted (1)**
80:11
**watch (4)**
24:2;43:20;63:10;
70:9
**watching (3)**
49:20,25;63:3
**way (12)**
5:9;14:12,17,19;
21:21;26:16;30:15;
44:12;51:14;62:17;
63:16;71:25
**week (10)**
5:10,20;9:2;32:16;
37:18,20;38:4;46:4,
4;64:7
**weekend (1)**
63:17
**weight (1)**
73:23
**Welcome (1)**
3:21
**weren't (1)**
23:17
**what's (3)**
12:10;29:1;71:6
**whenever (1)**
48:16
**whereabouts (1)**
78:9
**wherein (1)**
67:13
**whole (6)**
4:6;14:25;60:1;
61:2;65:13;79:24
**who's (3)**
3:18;8:9;26:11;
29:4;67:18
**widely (1)**
49:19
**wild (1)**
48:9
**willing (1)**
60:6
**wish (13)**
21:12;25:11;29:21;
31:20;41:16,17;
44:12,14;54:15;55:1;
60:15,23;83:5
**wishes (2)**
35:14;59:11
**withdraw (3)**
5:17,21;6:2
**withdrawn (1)**
5:8
**withdraws (1)**
7:12
**within (13)**
16:10,11;17:12;
18:3,19;67:16;76:11,
16;78:7;79:14;81:25;
82:2,23
**without (6)**

30:1;37:9;41:8;
53:20;57:23;77:2
**witnessed (1)**
65:14
**word (1)**
25:6
**words (4)**
45:21,22;66:17;
73:4
**work (4)**
52:1;54:9;72:3;
77:20
**worked (2)**
45:8;71:21
**works (1)**
76:23
**world (9)**
44:5;46:13;49:13;
50:3;51:4;52:5,21;
70:16;72:21
**worldwide (1)**
58:11
**worries (3)**
49:3,5;51:7;52:24
**worrying (1)**
50:18
**worse (3)**
56:25;58:21;59:20
**worst (3)**
53:10;56:12;57:19
**worth (1)**
40:3
**wound (1)**
53:24
**wrestling (1)**
20:16
**writes (2)**
63:12;68:19
**writing (1)**
49:6
**written (3)**
4:22;55:4;64:10
**wrong (5)**
4:8;8:23;57:25;
58:3;59:11
**wrote (1)**
48:8;60:20,20

**Y**

**year (7)**
3:23;37:5;46:4,5;
62:8;64:1,1
**years (16)**
17:7;29:8;39:6,7,8;
45:25;46:3;47:17,23;
48:25;61:8;63:14;
68:11;70:3;72:7;
74:25
**yelling (1)**
20:15
**yesterday (5)**
8:17;10:9;20:9,12;

24:12
**York (2)**
81:13,13
**young (2)**
42:2;68:14
**youth (1)**
52:2

**Z**

**Zanzi (1)**
3:9
**zero (1)**
39:8
**zoo (1)**
63:19

**1**

**1 (37)**
3:16;4:19,21,22;
8:6,11;13:5,7;20:16;
22:24;26:20,22;
29:10;31:4,18;37:15,
16;38:21;39:3;41:23;
42:17,24,25;43:3,9,
13;44:3;45:6;47:6;
56:16;59:15;62:4,8;
64:24;71:18;80:22;
81:9
**10- (1)**
13:5
**10,000 (1)**
70:11
**10,528 (1)**
43:12
**100 (4)**
15:4;35:3,9;36:4
**10163-4668 (1)**
81:13
**102 (6)**
21:4,9;26:1,18;
27:4;36:6
**10-minute (1)**
44:18
**11:32 (1)**
44:21
**11:45 (1)**
44:21
**111 (6)**
21:4,9;26:2,18;
27:4;36:6
**119 (3)**
27:6;36:14;38:24
**12 (3)**
17:6;68:11;70:18
**12:00 (1)**
44:20
**12:55 (1)**
84:19
**13 (1)**
68:11
**14 (1)**

82:23
**15 (2)**
39:6;76:16
**15-minute (1)**
13:6
**16901 (1)**
76:21
**18 (9)**
5:23;15:18,25;
31:3;34:9;38:7;
75:20;76:4;77:7
**180 (1)**
75:24
**1B1 (2)**
17:11;25:15
**1B1.1 (3)**
16:9;18:1,10
**1B1.10 (1)**
18:8
**1's (2)**
6:23;37:2

**2**

**2 (30)**
6:9;15:15;16:18;
17:22;19:12,17;21:6;
22:12;23:10,15;24:3;
26:6,20,24;29:10;
31:5;35:6,11;38:7,8;
41:23;42:2,6,17,24,
25;62:5,9;64:25;
70:24
**2,880 (1)**
76:1
**2:13-CR-84 (2)**
3:5;44:23
**20 (3)**
39:7;72:1,9
**2008 (1)**
70:1
**2014 (1)**
68:8
**2015 (1)**
81:4
**212-372-3030 (1)**
81:14
**22 (1)**
31:2
**2241 (5)**
15:25;31:3,7,13;
37:1
**2241a (4)**
15:18;32:23;34:9;
38:8
**24 (2)**
71:7;82:1
**240 (1)**
75:24
**25,000 (1)**
39:9
**250,000 (1)**
39:10

**29 (3)**
43:13;63:8;71:2
**2G2.1 (3)**
19:11;38:7;55:18
**2G2.1b1 (1)**
16:18
**2G2.1b2 (1)**
18:2
**2G2.1b2A (2)**
15:15;35:4
**2G2.1b2B (5)**
30:24;33:1,21;
34:8,25
**2G2.1b4 (2)**
15:5;20:8
**2G2.2 (3)**
55:16;61:25;74:6
**2's (1)**
35:20

---

**3**

**3 (18)**
6:9;21:7;22:15;
23:15,19;24:3,16;
26:20,24;29:10;
42:16,24,25;62:5,9;
64:16,25;70:24
**30 (1)**
39:6
**32j (1)**
82:15
**3551 (1)**
75:20
**3553 (2)**
56:3;75:21
**3553a (3)**
41:17;66:2,14
**3553a1a2B (1)**
77:7
**360 (1)**
75:23
**3624e (1)**
76:4
**3663d (1)**
6:5
**3664d5 (2)**
5:23;6:6
**39 (2)**
30:16;32:3
**3A1.1 (2)**
23:10;36:7
**3A1.1b1 (2)**
21:6;26:3
**3's (1)**
24:6

---

**4**

**4 (5)**
17:22;25:16;28:25;
29:24;36:16
**41 (2)**

15:3;33:3
**42 (1)**
76:21
**43 (7)**
14:6,7,11;38:20;
39:1,2;73:10
**4668 (1)**
81:12
**472 (1)**
70:24
**48 (1)**
78:7
**49 (2)**
33:5,12
**4a (2)**
18:1,10
**4B1.5 (4)**
27:7,12,17;29:24
**4B1.5b (2)**
28:24;29:18
**4d5 (1)**
6:7

---

**5**

**5 (4)**
39:7;72:1,9;81:4
**51 (5)**
14:4,8;15:4;33:14;
73:9
**55 (1)**
38:23
**57 (1)**
9:1
**58 (2)**
14:8;38:24
**59 (2)**
33:16,20

---

**6**

**6 (2)**
5:12;36:14
**6,210 (1)**
70:24
**600-plus (1)**
62:1
**61 (2)**
15:4;33:25
**65135 (1)**
81:13
**69 (1)**
34:6

---

**7**

**7 (1)**
5:12
**70-1 (1)**
4:17
**70-2 (1)**
4:18
**70-3 (2)**

4:19;68:25
**70-4 (1)**
4:21
**70-5 (2)**
4:23;5:12
**70-6 (3)**
4:24;5:3,7
**70-7 (1)**
5:2
**71 (4)**
15:3,4;34:14,19
**72 (3)**
76:11;79:14;81:4
**73 (1)**
80:24
**75 (2)**
9:3;36:14
**77 (3)**
4:14;8:3;70:10
**77-1 (1)**
8:4
**77-2 (2)**
8:8;37:14
**78 (1)**
9:5
**79 (1)**
34:21
**7th (5)**
3:23;9:5;16:3;
17:21;18:25

---

**8**

**8 (1)**
70:18
**80 (1)**
9:15
**80,000 (1)**
71:15
**81 (1)**
34:21
**89 (2)**
15:4;34:24

---

**9**

**90 (1)**
7:9
**90-day (2)**
5:24;6:15
**98 (1)**
35:3